IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 06-0026 |
| | ) | Electronically Filed |
| CYRIL H. WECHT | ) | |

**<u>MEMORANDUM ORDER RE: MOTION TO SUPPRESS (DOC. NO. 55)</u>**

After careful consideration of defendant's Motion for a Suppression Hearing and to Suppress All Evidence Gained by the Government as a Result of Illegal Searches (doc. no. 55), the government's response thereto (doc. no. 177), defendant's reply to the government's response (doc. no. 182), the applications for search warrants and supporting affidavits of probable cause, and the search warrants themselves, the Court rules: (1) that the search warrants were valid and that the probable cause recited in the related affidavits was more than adequate; (2) to the extent defendant is requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), that no *Franks* hearing is necessary; (3) that the execution of the warrants as to the seizure of the computers was proper; and finally, (4) that the Court will conduct an evidentiary hearing on the execution of the warrant as to the seizure of the "boxes."  Accordingly, defendant's Motion for a Suppression Hearing and to Suppress All Evidence Gained by the Government as a Result of Illegal Searches (doc. no. 55) is DENIED in its entirety, except as to defendant's request for an evidentiary hearing on the execution of the warrant related to the "boxes."  Said hearing shall occur on **Thursday, June 8, 2006 from 8:15 a.m - 11:15 a.m.**

I.  **The Search Warrant Application Process**

  A.  **Probable Cause Existed**

In order to determine whether the search warrants were valid, the Court must first ascertain whether the probable cause asserted in the affidavits was adequate. "Probable cause for searching a particular place exists in an affidavit when the affidavit sets forth facts constituting a substantial basis for finding a fair probability that first, a crime has been committed, and second, the particular place may contain the fruits, instrumentalities or evidence of the crime committed." *United States v. Conley*, 813 F.Supp. 372, 381 (W.D. Pa. 1993), rev'd on other grounds (citing *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983)) (other citations omitted). The Court need not determine whether probable cause actually existed, but rather, whether the issuing magistrate had a "substantial basis" for finding probable cause. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001)(citations omitted).

In *Illinois v. Gates,* the United States Supreme Court instructed judicial officers reviewing an application for a search warrant to analyze the facts set forth in the affidavit of probable cause in light of the "totality of the circumstances," to determine whether probable cause to issue a warrant exists. The Court stated as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238.

This Court, in reviewing the issuing U.S. Magistrate Judge's determination of probable cause, is required to afford "great deference" to the U.S. Magistrate Judge's determination and

should not interpret the affidavits in a hyper-technical manner, but rather, should review the affidavits in a "commonsense manner" to determine whether the U.S. Magistrate Judge had a substantial basis for concluding that probable cause existed. *Id.* at 236, 238. The Court must therefore confine itself to the facts that were before the U.S. Magistrate Judge. In other words, the Court must confine itself only to the application and supporting affidavit and cannot consider extraneous information. *Hodge*, 246 F.3d at 305. In resolving questionable cases, the preference for the warrant process, and deference to the U.S. Magistrate Judge's probable cause determination, should prevail. *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). *Gates*, 462 U.S. at 236-237. Moreover, direct evidence linking the place to be searched with a crime is not required for a warrant to issue. *Jones*, 994 F.2d at 1056. Rather, "probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide" the items sought to be obtained. *Id.* at 1056.

    While defendant argues that there was no probable cause to support issuance of the search warrants, and raises numerous interesting, but ultimately irrelevant, arguments, the government asserts that under the totality of circumstances analysis set forth in *Gates,* there was sufficient information presented to the U.S. Magistrate Judge to support a finding of probable cause, and the Court agrees.

    Applying the above standard to the application for the search warrants and affidavits challenged here, the Court finds that the U.S. Magistrate Judge had a substantial basis for her determinations that there was probable cause to support the search warrants.

    Except for the descriptions of the places to be searched and items to be seized, Special

Agent Bradley W. Orsini's separate affidavits of probable cause accompanying the applications for the three search warrants at issue are virtually identical.[1] As recited in the first paragraph, the averments of each affidavit are based upon his personal participation in the investigation, interviews of twenty witnesses, including current and former Deputy Coroners and other employees of the Allegheny County Coroner's Office ("ACCO"), identified in the affidavits as ACCO 1 through ACCO 16, conversations with other federal, state and local law enforcement officers, information from confidential sources, documents, photographs and reports prepared by other law enforcement agents. Affidavit, ¶ 1. The purpose of each application for a search warrant was "to search for and seize instrumentalities, fruits, and evidence of violations of Embezzlement and Theft, in violation of Title 18, United States Code, Sections 666, Scheme to Defraud of Intangible Right to Honest Services, in violation of Title 18, Unites States Code, Sections 1341, 1343, and 1346." Affidavit, ¶ 3.

Specifically, the affidavits recite that ACCO is a department of Allegheny County, Pennsylvania, which receives substantial funding from the federal government through the United States Department of Justice and through federal grants to the County and to the Commonwealth of Pennsylvania. Affidavit, ¶ 3.[2] In a summary paragraph, the affidavit sets forth a number of ways in which defendant allegedly uses the resources and personnel of Allegheny

---

[1] It appears that the initial warrant to search Eileen Young's home for the laptop computer she used for her work for the Coroner's Office, Motion to Suppress, Exhibits N and Q, was not executed because the laptop was not at her home. However, a warrant for the search for that computer at the Coroner's Office was issued the next day, based on the same affidavit and information that justified the initial warrant. Motion to Suppress, at 19 n.11, and Exhibit X; Defendant's Reply Brief at 7-8.

[2] There are two paragraph 3s in each affidavit, an inconsequential and no doubt inadvertent error.

County in violation of the above cited "federal anti-corruption statutes" (as well as criminal and ethical laws of the Commonwealth of Pennsylvania), which are: use of ACCO staff for private business and personal matters; use of the ACCO Histology and Photography Labs for private business matters; use of ACCO funds, office space and parking space for private business matters, and attempted concealment and removal of evidence. Affidavit, ¶ 5. Paragraphs 6 through 23 of the affidavits describe the matters summarized in more detail, and list the sources of the information.

For example, paragraph 6 states that 13 current and former ACCO Deputy Coroners and other employees provided information that defendant uses the Deputy Coroners as chauffeurs for his private business, for defendant, his associates and others, for which he receives financial benefits, as well as for routine personal matters, and required them to place high priority on those matters, which were known as "Wecht details." Affidavit, ¶¶ 6 -11.  The affidavit further stated that ACCO employees provided information that defendant used the Histology Lab to perform private autopsies for which he received financial benefit, used the Photography Lab to take photographs at private seminars for which he received financial benefit, and used his ACCO secretaries almost exclusively for private business work  for which he received financial benefit, such as typing expert reports, thank you notes for ACCO photographers for their work at private seminars, and envelopes for mailings regarding private seminars for which he received financial benefits. Affidavit, ¶¶ 12-18.

The affidavits stated that certain ACCO employees (identified by their designated ACCO numbers) knew that defendant's secretaries placed private business information on ACCO 16's laptop computer, which she took home every night, and on a desktop computer at ACCO which

contained logs of private business services performed by ACCO employees at defendant's behest, and that "approximately 20 boxes of files reflecting private autopsy work for the financial benefit of" defendant were hurriedly removed from the ACCO offices to defendant's private pathology office after it had become public that a criminal probe of defendant's use of County resources for private financial gain had begun . Afffidavit, ¶¶ 8, 16, 20-21. These two computers, along with any information storage discs, CDs, zip drives, cartridges and other storage media, and the "approximately 20 boxes" of files related to defendant's private autopsies were listed as the items to be seized in the three respective applications for warrants, which the U.S. Magistrate Judge granted.

Each search warrant issued by U.S. Magistrate Judge Hay sets forth the endorsement that "I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for issuance of this warrant." The Court agrees and finds that the averments of the affidavit set forth adequate facts and sources of those facts for the U.S. Magistrate Judge to reasonably conclude that probable cause existed that particularly described fruits, instrumentalities or evidence of crimes reasonably likely to be found at the places described therein.

**B.     Good Faith Exception Applies**

Further, the evidence obtained through the searches is admissible under the good faith exception to the exclusionary rule as elucidated in *United States v. Leon*, 468 897 (1984).

In *Hodge*, the United States Court of Appeals for the Third Circuit further explained the *Leon* good faith exception as follows:

> The good faith exception instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority. The test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate authorization." The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.

246 F.3d at 307.

The United States Supreme Court in *Leon* identified four situations where an officer's reliance on a warrant would <u>not</u> be reasonable: (1) where issuing officer issued the warrant upon reliance on a deliberately or recklessly false affidavit; (2) when the issuing officer abandoned his/her judicial role and did not perform duties in a neutral and detached manner; (3) when the warrant was based on an affidavit so lacking probable cause as to make any belief in it completely unreasonable; <u>or</u> (4) when the warrant was facially deficient in that it did not particularize the place to be searched or things to be seized. *Id* at 308.

While defendant argues with passion numerous allegations as to the first situation set forth in the *Leon* case, defendant articulates no particular facts that would support situations 2, 3, or 4 above. Without deciding whether the allegations would support a judicial finding that the first *Leon* situation is present in this case, the Court finds that situations 2, 3 or 4 "exceptions to the *Leon* exception" are not present. For the reasons that follow in the next section, the Court finds that to the extent defendant seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), in order to establish the first "exception to the *Leon* exception," said request will be denied.

### C.     No Need for *Franks* Hearing

In *Franks*, the United States Supreme Court provided a limited opportunity for defendant to dispute the truthfulness of an affiant's statements in an affidavit of probable cause. *United States v. Conley*, 856 F.Supp. 1034, 1040 (W.D. Pa. 1994). Pursuant to the dictates of *Franks* and its progeny, the Fourth Amendment requires that a hearing be held at defendant's request only where he or she makes a substantial preliminary showing that the affiant included in a search warrant affidavit a false statement, knowingly or intentionally, or with reckless disregard for the truth, and that the challenged false statements were essential to the Court's finding of probable cause. *Franks,* at 155-156; *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988). Although *Franks* dealt only with misstatements, the *Franks* test also applies to situations where affiants have allegedly omitted material information from affidavits. *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993). Where a defendant demonstrates that the affiant made a misrepresentation, the Court must determine if the misrepresentation was material, and if so, whether the affidavit would still state probable cause if the correct information were included. *Frost*, at 742-43. To the extent a defendant demonstrates that there were omissions in the affidavits, the Court must determine whether the omissions were material, and if so, whether the affidavits would have provided probable cause if the omitted material had been disclosed. *Calisto*, 838 F.2d at 715.

In order to succeed in a request for a hearing, defendant's attack must be "more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks,* at 171. Rather, defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks,* at 171.

**Material Misstatements and Omissions Alleged**

Defendant's suppression motion claims that Special Agent Orsini's affidavits are peppered with misrepresentations that he made in order to bolster the probable cause and obtain the search warrants under false pretenses, and deliberately omitted material facts that would have made a difference in the U.S. Magistrate Judge's probable cause determination. Specifically, defendant alleges in his Motion to Suppress that the following material misrepresentations and omissions are contained in Orsini's affidavits.

The only evidence submitted in support of the search warrants "was Orsini's affidavits. No other evidence was presented . . ." to the U.S. Magistrate Judge.  Motion to Suppress at ¶ 2. (Of course, it is usually, if not almost always, the case that the only evidence in support of a search warrant is that provided by an affiant who attests to the truth of the averments offered to support probable cause; hence the "four corners" jurisprudence has developed to test the sufficiency of the affidavit.).  Orsini also is alleged to have committed certain improprieties on other assignments in other states for which he was disciplined, in matters completely unrelated to the prosecution and investigation herein. Motion to Suppress ¶ 3-4.

The "central anchor" of the "yarn" that Orsini "spun" in his affidavits "was that Dr. Wecht was somehow furtively concealing that he did private work for others in addition to discharging his duties as coroner," when in fact, Dr. Wecht has been "openly doing [such private work] for decades," and his private work has been well and widely known, nationally and locally, for decades.  Motion to Suppress at ¶¶ 12-15.  Similarly, Orsini's affidavits stated that defendant Wecht had not filed certain required financial disclosure statements as required by state law,

which "implies that Dr. Wecht remained non-compliant with state law so as to conceal certain aspects of his private work," when Orsini knew that defendant Wecht had in fact filed numerous financial disclosures that listed income form Wecht Pahtology. Motion to Suppress at ¶¶ 12-20.

Defendant asserts that Orsini's misstatements about Dr. Wecht's alleged concealment of his private practice "were deliberately false, known to be false when made; and deliberately supported by misleading, false and incomplete statements." Motion to Suppress ¶ 14.

Defendant also asserts the deliberate omission of the identity of a "confidential informant" (who is mentioned in the affidavits as one of many sources of Orsini's information), namely, the Allegheny County District Attorney. Defendant offers the following "facts" in an attempt to meet the substantial preliminary showing that would necessitate a *Franks* hearing: (i) this entire investigation and prosecution was instigated and motivated by a political vendetta by the District Attorney; (ii) the District Attorney influenced the U.S. Attorney for the Western District of Pennsylvania to adopt his vendetta; (iii) the District Attorney must be the confidential informant that Orsini alludes to in his affidavit; (iv) in order to keep the District Attorney's identity secret, Orsini deliberately "concealed" his identity, and agreed to "do his bidding." Motion to Suppress ¶ 21.

Assuming, *but only for the sake of argument* on this pending Motion to Suppress, that these alleged misrepresentations and omissions are false and misleading, they simply are *not* the stuff of which *Franks* hearings are made, because they are *not material* to the determination of probable cause.[3]

---

[3] The Court is doubtful that the averments of defendant's Motion to Suppress will sustain the inferences (for instance, inferences of nefarious motives by the District Attorney, the

Provocative speculation and conclusionary proclamations about local public officials who might have gotten the United States Attorneys Office interested in how Dr. Wecht conducts his private autopsy practice and other private business affairs may make interesting reading and attract much publicity, but it does not satisfy the *legal* threshold, i.e., the substantial preliminary showing, that a defendant must make before the Court will grant a request for a *Franks* hearing. Affidavits filed in support of a search warrant are presumptively valid, and a proponent of a *Franks* hearing must make a substantial preliminary showing to prevent the misuse of such hearings for purposes of discovery or obstruction. *Franks*, 438 U.S. at 170-71; *see United States v. Harvey,* 2 F.3d 1318, 1324 (3d Cir. 1993) (ignoring any misleading information, search warrant must be upheld if it was based on probable cause); *Calisto*, 838 F.2d at 714.

The Court finds that, even if Orsini made the misstatements and omissions defendant claims, those background "facts" played no role in this Court's determination of probable cause, and is quite certain they played no role in the Magistrate Judge's presumptively correct determination of probable cause. If we delete the alleged "misstatements" from the affidavits and add the alleged "omissions," the affidavits still recite ample probable cause for the search warrants issued by the U.S. Magistrate Judge.

Accordingly, because defendant has failed to make a substantial preliminary showing to warrant a *Franks* hearing his request is DENIED, and defendant's motion to suppress as to the validity of the search warrant and the probable cause as recited in the related affidavits is

---

supposed identity of Orsini's confidential informant, and conspiracy between him and Orsini to "conceal" his identity) he attempts to place upon them. Because they are not material to the probable cause determination, in any event, the Court need not make a finding about the inferences fairly raised by the averments.

DENIED.[4]

## II. The Content and Execution of the Search Warrants as to the "Computers" and the "Boxes"

### A. Content of Search Warrants

Defendant argues that the warrants issued in this case failed to describe with particularity the items to be seized, namely the "twenty [20] boxes and contents containing private autopsy files " and the computers. The Fourth Amendment provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described. *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars,* 307 F.3d 137, 148 (3d Cir. 2002).

In *Ninety-Two Thousand Four Hundred Twenty-Two Dollars,* 307 F.3d at 148-149, the United States Court of Appeals for the Third Circuit set forth the following analysis to determine the validity of a warrant based upon whether it is too general or overbroad:

> "The particularity requirement 'makes general searches ⋯ impossible.'" *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982). A general warrant authorizes "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 404 U.S. 433 (1971). In order for a warrant to be invalidated as general, it must "vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence." *Christine*, 687 F.2d at

---

[4] Defendant raises numerous issues in this Motion to Suppress which simply are not relevant to a Motion to Suppress, other issues are argumentative, and other issues are more appropriate for a Motion to Dismiss at the appropriate scheduled time.

> 753. As we noted in *Christine*, examples of general warrants are those authorizing searches for and seizures of such vague categories of items as " 'smuggled goods,' " " 'obscene materials,' " " 'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas,' " " 'illegally obtained films,' " and " 'stolen property.' " *Id.* (citations omitted). We have contrasted a "general warrant" with a warrant that is simply overly broad. An overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized," but it authorizes the seizure of items as to which there is no probable cause. *Christine*, 687 F.2d at 753-754  An overly broad warrant, however, can be cured by redaction, that is, by "striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." *Id.* at 754. Evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies.

307 F.3d at 148-49.

The Court of Appeals further held that a warrant which authorized a search for and seizure of "receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipts, disbursement and sales journal, and correspondence, computer, computer peripheral, related instruction manual and notes, and software in order to conduct an off-site search for electronic copies," although extensive in scope was neither general nor so plainly in violation of the particularity requirement that the executing officers could not have reasonably trusted in its legality.

Like the warrant in *Ninety-Two Thousand Four Hundred Twenty-Two Dollars*, the warrants in the present case, although arguably broad, were not "general" to the point where the investigating officers were vested with "unbridled discretion" to search for and seize whatever they wished. Rather, the warrants and the affidavits in support thereof described the specific computer files and the "boxes" to be seized as follows:

- • a laptop computer manufactured by Dell, and all information and data contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kind including cd and hard), and back-up tapes;
- • a desktop computer maintained in the office of Kathy McCabe on the second floor of the ACCO and all information and data contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kind including cd and hard), and back-up tapes;
- • boxes (approximately twenty) and contents containing private autopsy files.

(doc. no. 55, exhibits 17, 18 and 19, respectively).

Further, *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the companion case to *Leon*, dictates that the good faith doctrine be applied to a case in which the warrants had been invalidated because they were overly broad. In *Sheppard*, the United States Supreme Court held that the *Leon* exception to the exclusionary rule is applicable where the executing officer reasonably believes that a search is authorized by a warrant, even if it turns out to be too broad. The Court noted that a police officer is not required to question a judge who has advised him that the warrant he possesses authorizes him to conduct the requested search because the exclusionary rule was developed to "deter unlawful searches by police, [and] not to punish the errors of magistrates and judges," and suppression is therefore inappropriate. *Ninety-Two Thousand Four Hundred Twenty-Two*, 307 F.3d at 152, citing *Sheppard*, 468 U.S. at 990, quoting *Illinois v. Gates*, 462 U.S. at 263.

Thus, the Court finds that the computers and the "boxes" search warrants were sufficiently particular and consistent with Fourth Amendment requirements.

  **B.**  **The Execution of the Search Warrant re: Computers**

The search warrant executed for the laptop computer states as follows:

**Attachment 'B' - Property to be Seized**

A laptop computer manufactured by Dell, and all information and data contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kind including cd and hard), and back-up tapes.

(doc. no. 55, exhibit 17 at 4).

The search warrant executed for Allegheny County Coroner's Office computer (ACCO) states as follows:

**Attachment 'B'- Property to be Seized**

[A] desktop computer maintained in the office of Kathy McCabe on the second floor of the ACCO and all information and data contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kind including cd and hard), and back-up tapes.

(doc. no. 55, exhibit 18 at 4).

Defendant argues that said description does not include the information stored on the computers. The Court disagrees since the language of the search warrant clearly includes said information. The Court further finds no defect in the execution of said search warrants.

**C.   The Execution of the Search Warrant re: "Boxes"**

The "boxes" search warrant states as follows:

**Attachment 'B' - Property to be Seized**
Boxes (approximately twenty) and contents containing private autopsy files.

(doc. no. 55, exhibit 19 at 3).

The related application states concerning the "boxes" as follows:

**Attempted Concealment and Removal of Evidence**
According to ACCO 11, Young was very rushed and upset about having to move the boxes quickly. According to ACCO 11, the materials he helped move consisted of approximately 20 boxes of files reflecting private autopsy

> work for the financial benefit of WECHT. The boxes are labeled on the outside with computer printed labels identifying the names of the decedents.
>
> * * *
>
> **Items to be Seized**
>
> This application seeks issuance of warrant to seize approximately twenty boxes of private autopsy files located at the office of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B".
>
> Based upon the foregoing information, there is probable cause to believe that in the premises described in Attachment "A", there are approximately twenty boxes of private autopsy files located at the offices of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B" related to the above described evidence, which are fruits, instruments and evidence of the crimes of Embezzlemtent and Theft, in violation of Title 18, United States Code, Section 66, and a Scheme to Defraud of Intangible Right to Honest Services, in violation of Title 18, United States Code, Section 1341, 1343, and 1346.

(doc. no. 55, exhibit 16 at 8-10).

Defendant argues that agent Orsini was not present on the day the warrant was executed, that there were approximately unlabeled 60 boxes in the office to be searched (not 20 labeled boxes as Orsini had sworn), and that Dr. Wecht wife, Sigrid Wecht, Esquire (whose law office was located in the place to be search), observed that the agents were not able to determine which boxes were described in the warrant and that the agents asked her to direct them to the "boxes", to which Mrs. Wecht stated that she was not aware of which 20 boxes the warrant was intended to cover. According to Mrs. Wecht, the agents called agent Orsini on the phone and thereafter split into teams and opened up boxes to see what was in them and decided which ones they would take from different locations on the premises and having done so, they removed 29 unlabeled boxes which contained Dr. Wecht's private autopsy files in accordion folders,

including files on various high profile matters including the deaths of Marilyn Monroe, Elvis Presley, Tammy Wynette, Kurt Cobain, and other notable celebrities and public figures. According to defendant, the "boxes" that were taken were the result of an unconstitutional general search, which was not done with the good faith belief that they contained evidence of federal crimes.

The Court believes that an evidentiary hearing is required to make the factual determination necessary to evaluate the validity of the execution of this part of the search warrant under *Christine* and *Ninety-Two Thousand Four Hundred Twenty-Two Dollars*. The evidentiary hearing will be limited to this narrow issue.

**SO ORDERED** this 31st day of May, 2006.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record