IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| CYRIL H. WECHT | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE:
DENIAL OF DEFENDANT'S MOTION TO SUPPRESS (DOC. NO. 55)
29 BOXES CONTAINING PRIVATE AUTOPSY FILES**

**I.      Introduction**

The search warrant issued by United States Magistrate Judge Amy Reynolds Hay at Miscellaneous Docket No. 05-153m authorized F.B.I. Special Agents to go to the private office of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania ("Penn Avenue Office"), to search for and seize "Boxes (approximately twenty) and contents containing private autopsy files."  Armed with this search warrant (hereafter, the "Penn Avenue warrant"), FBI Special Agents and supporting personnel on the Evidence Recovery Team ("ERT") went to the Penn Avenue Office of Dr. Cyril H. Wecht Pathology and Associates ("Wecht Pathology"),  where they found and seized 29 boxes and contents, which boxes the ERT identified as containing items fitting the description of items to be seized pursuant to the Penn Avenue warrant.

Defendant claims that the FBI agents and supporting personnel exceeded the scope of the Penn Avenue warrant authorizing them to search for approximately 20 boxes and contents containing private autopsy files when they found and seized 29 boxes containing files relating to his private autopsy business.  After careful consideration of the motion, response and briefs, and the testimony and evidence introduced at the evidentiary hearing, the Court finds that the search

and seizure at Wecht Pathology's Penn Avenue Office fit *squarely* within the scope of the Penn Avenue search warrant, and that the FBI agents and support personnel acted reasonably and in good faith in executing it.  The Court will, therefore, deny defendant's motion to suppress (doc. no. 55) these boxes and their contents.  (See related Orders at doc. nos. 193 and 216),

**Procedural Background**

On May 31, 2006, after careful consideration of defendant's Motion for a Suppression Hearing and to Suppress All Evidence Gained by the Government as a Result of Illegal Searches (doc. no. 55), the government's response thereto (doc. no. 177), defendant's reply (doc. no. 182), the applications for search warrants and Special Agent ("SA") Bradley Orsini's supporting affidavits of probable cause, and the search warrants themselves, this Court ruled (doc. no. 193) that the search warrants were valid and supported by adequate probable cause recited in the related affidavits, that defendant had not made the substantial preliminary showing necessary to justify a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and that the execution of the warrants as to the seizure of two computers was lawful and proper.[1]

Because there remained material factual disputes about the manner and execution of the search and seizure, and whether the actions of the agents at Wecht Pathology's Penn Avenue Office were reasonable and in good faith, this Court deemed it appropriate to conduct an evidentiary hearing regarding the execution of that warrant.  Specifically, the Court stated in its previous opinion:

> Defendant argues that agent Orsini was not present on the day the warrant was executed, that there were approximately unlabeled 60 boxes

---

[1] On June 9, 2006, this Court entered an Order (doc. no. 216) denying defendant's motion for reconsideration (doc. no. 209) of the Order of May 31, 2006.

> in the office to be searched (not 20 labeled boxes as Orsini had sworn), and that Dr. Wecht wife, Sigrid Wecht, Esquire (whose law office was located in the place to be search), observed that the agents were not able to determine which boxes were described in the warrant and that the agents asked her to direct them to the "boxes", to which Mrs. Wecht stated that she was not aware of which 20 boxes the warrant was intended to cover. According to Mrs. Wecht, the agents called agent Orsini on the phone and thereafter split into teams and opened up boxes to see what was in them and decided which ones they would take from different locations on the premises and having done so, they removed 29 unlabeled boxes which contained Dr. Wecht's private autopsy files in accordion folders, including files on various high profile matters including the deaths of Marilyn Monroe, Elvis Presley, Tammy Wynette, Kurt Cobain, and other notable celebrities and public figures. According to defendant, the "boxes" that were taken were the result of an unconstitutional general search, which was not done with the good faith belief that they contained evidence of federal crimes.
>
> The Court believes that an evidentiary hearing is required to make the factual determination necessary to evaluate the validity of the execution of this part of the search warrant under [*United States v. Christine*, 687 F.2d 749 (3d Cir. 1982)] and [*United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars,* 307 F.3d 137 (3d Cir. 2002)]. The evidentiary hearing will be limited to this narrow issue.

Memorandum Opinion of April 7, 2006, at 16-17.

The Penn Avenue warrant states that the affiant, Special Agent ("SA") Orsini, has reason to believe that the items identified in Attachment B of the warrant would be found at the Penn Avenue Offices. "Attachment 'B' - Property to be Seized," states simply: "Boxes (approximately twenty) and contents containing private autopsy files." Paragraphs 19 and 20 of SA Orsini's Application and Affidavit for the Penn Avenue warrant set forth the averments of probable cause supporting the search for the "Boxes (approximately twenty) and contents containing private autopsy files" as follows:

Attempted Concealment and Removal of Evidence

>    19.    In early February of 2005, a criminal probe of WECHT's use of county resources for private work became public. According to [Allegheny County Coroner's Office, "ACCO," employee designated as ACCO 11], sometime during the week of February 6, 2005, [Eileen] Young [defendant's secretary at ACCO] asked ACCO 11 to obtain boxes for the purpose of moving large numbers of files from her office at the ACCO. ACCO 11 provided Young with boxes into which Young loaded files reflecting WECHT'S private autopsy work. ACCO 11 moved those boxes from the ACCO to WECHT'S private pathology offices at 1119 Penn Avenue, Suite 4001, Pittsburgh, Pennsylvania after business hours. Flo Johnson provided the key to the space at 1119 Penn Avenue in to which ACCO 11 helped move the boxes. WECHT'S wife told ACCO 11 where the boxes were to be placed within the office space at 1119 Penn Avenue. According to ACCO 11, the boxes were placed in a records room on the right-hand side of the office suite's hallway. According to ACCO Deputy Coroners, *the private autopsy files contain information showing, among other things, (1) the use of the ACCO speciality labs for the private autopsies, (2) the identity of the preparer of reports used in the private autopsy cases, including Eileen Young, (3) payment for the private autopsies, (4) the identity of the decedents involved in private autopsies performed with the aid of county resources*.
>
>    20.    According to ACCO 11, Young was very rushed and upset about having to move the boxes quickly. According to ACCO 11, the materials he helped move consisted of approximately 20 boxes of files reflecting private autopsy work for the financial benefit of WECHT. The boxes are labeled on the outside with computer printed labels identifying the names of the decedents.

Application and Affidavit for Penn Avenue Search Warrant, ¶¶ 19-20 (emphasis added).

The Application and Affidavit for the Penn Avenue warrant further states:

>    24.    This application seeks issuance of warrant to seize approximately twenty boxes of private autopsy files located at the office of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B".
>
>    32.    Based upon the foregoing information, there is probable cause to believe that in the premises described in Attachment "A", there are approximately twenty boxes of private autopsy files located at the offices of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn

>Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B" related to the above described evidence, which are fruits, instruments and evidence of the crimes of Embezzlement and Theft, in violation of Title 18, United States Code, Section 66, and a Scheme to Defraud of Intangible Right to Honest Services, in violation of Title 18, United States Code, Section 1341, 1343, and 1346.

Application and Affidavit for Penn Avenue warrant, ¶¶ 24, 32 (emphasis added).

### The Evidentiary Hearing - June 8, 2006

This Court conducted an evidentiary hearing on June 8, 2006 at which SA Thomas Welsh, the Acting Supervisor for Squad 15, assigned to execute the Penn Avenue warrant, SA Brad Swim, the ERT leader for the search, and Intelligence Analyst Michael Reiner, a member of the ERT, testified for the government; defendant called Ms. Darlene Brewer, his receptionist and the Medical Transcriptionist for Wecht Pathology, and, as if on cross examination, ERT technician Robert Allen West, who assisted on the search, Coleman Bates, Jr., an FBI photographer who also assisted on the search, and SA Orsini. The parties also stipulated to the testimony of SA Michael Dzielak, who operated the laptop and contemporaneously entered information about the search and the evidence seized into an evidence recovery log on the laptop at the Penn Avenue Office of Wecht Pathology. Based on the Court's observation of the demeanor and tenor of the witnesses, consistencies and inconsistencies in their respective testimony, and the totality of the circumstances, the Court makes the following findings of fact:

**II.     Findings of Fact**

1.     **The Briefing**.  SA Orsini conducted a search team meeting on the morning of April 8, 2005.[2]  Present at this briefing were Special Agents Orsini, Swim and Dzielak,

---

[2] Two members of the team thought the meeting *might* have been the day before, just after the warrant had been signed, although their recollection was hazy. The three Special Agents

photographer Bates, IA Reiner and ERT technician West. Each member of the team reviewed the search warrant and the affidavit of probable cause, and Orsini also discussed the parameters of the search and seizure under the Penn Avenue warrant with the team members.

2. As specified in the affidavit at paragraph 20 which each team member read, ACCO employees indicated that the "private autopsy files" in the boxes they were seeking might include "(1) the use of the ACCO speciality labs for the private autopsies, (2) the identity of the preparer of reports used in the private autopsy cases, including Eileen Young, (3) payment for the private autopsies, (4) the identity of the decedents involved in private autopsies performed with the aid of county resources."

3. Additionally, SA Orsini advised the search team of the "operations plan" for execution of the Penn Avenue warrant. Orsini informed the members of the search team that: the target boxes could be moving boxes[3] because Wecht Pathology had recently moved from its Wood Street Office to the Penn Avenue Office; Orsini's source at ACCO said the boxes would have computer generated labels on the outside; Wecht Pathology shared the space at the Penn Avenue Office with the Wecht Law Firm, which included Dr. Wecht and Sigrid Wecht's shared private office and the office of Flo Johnson, a private assistant for Wecht Pathology; the searchers should not search any office that was associated with the Law Office, but should

---

who testified all indicated that the pre-search meeting was on the morning of April 8th and Orsini's notes corroborate this date. The Court finds, therefore, that the pre-search team meeting was conducted on the morning of April 8, 2006.

[3] SA Orsini did not recall saying at that meeting that the boxes were "Stumpf Moving Company" boxes, but SA Welsh testified that Orsini said the boxes could be "Stumpf" boxes. Many of the 29 boxes seized were Stumpf boxes. The Court attributes this discrepancy to the lapse of time and erosion of recall, and in any event, does not view the discrepancy as material.

confine their search to the records storage areas to the right of the entrance; the names or initials of Eileen Young, Kathy McCabe and other ACCO employees listed on an organizational chart of ACCO employees would appear on many of the documents relating to Wecht Pathology's private autopsies that had been generated by ACCO employees; the search team should identify and seize any boxes containing files relating to defendant's private autopsy business which included autopsy reports, and review, evaluation and second opinions on other pathologist's reports and opinions.

4.      **The Search**.  From the testimony and the Administrative Worksheet for Site 2, Government's Exhibit C, the search team arrived at the Penn Avenue premises at approximately 10:45 a.m., announced their presence, and were buzzed or let in by Ms. Darlene Brewer, Wecht Pathology's Medical Transcriptionist, who was the only Wecht Pathology employee there at the time.  SA Orsini was not present, as he was leading another team simultaneously executing a search at the ACCO pursuant to another search warrant, but he spoke with SA Welsh on two or three occasions[4] while the Penn Avenue warrant was being executed.  The search team wore professional business attire, not "raid jackets," and did not display any weapons.

5.      After securing the Penn Avenue Office and setting up an operations post in the conference room, taking "before" photographs, and tape-marking the four rooms that were to the right of the entrance way to be searched (A, B, C and D), the search commenced at approximately 11:30 a.m.  Sigrid R. Wecht, Esquire, Dr. Wecht's wife, arrived at the office at 11:15 a.m.  Only the records rooms to the right of the entrance were searched, and each of the 29

---

[4] Orsini recalled three telephone calls; Swim recalled two telephone calls.  The Court does not deem this discrepancy to be material.

boxes taken were located in one of those four rooms. Robert Allen West, Support Services Technician, drew a not-to-scale sketch of the Penn Avenue Office on the day of the search. Government's Suppression Hearing Exhibit F is a copy of the sketch; a copy marked with Darlene Brewer's initials on the room she identified as the shared office of Dr. and Ms. Wecht is attached as Appendix A.

6.  SA Welsh interviewed Ms. Wecht[5] and Ms. Brewer. Ms. Wecht informed him that Wecht Pathology had recently (in late January or early February, 2005) moved its offices from its former location at 14 Wood Street to 1119 Penn Avenue, and informed SA Welsh that the boxes in the storage rooms were from the earlier Wood Street to Penn Avenue move. Neither Ms. Wecht nor Ms. Brewer knew of any boxes that had been moved from the ACCO to Penn Avenue.

7.  Ms. Brewer also informed SA Welsh that she transcribed "private autopsies" for Dr. Wecht, that he had done 314 private autopsies in 2004 which he did for surrounding counties and private individuals, and that the other employees for Wecht Pathology were Joseph Mancuso, an Autopsy Technician who assists Dr. Wecht with his autopsies, and Florence Johnson, an assistant and "filer."

8.  Regarding what boxes to seize pursuant to the Penn Avenue warrant, SA Welsh and SA Swim were the Deciders at the site, but the decision making process was a collective one; the collective included the "receiving agents" who initially decided that a box met the search

---

[5] Sigrid R. Wecht also swore out an affidavit concerning the search, which was attached as Exhibit Z to the Motion to Suppress. It was largely on the basis of the averments of Ms. Wecht's affidavit that this Court deemed it appropriate to conduct an evidentiary hearing regarding the execution of the Penn Avenue warrant. Ms. Wecht did not, however, testify at the evidentiary hearing.

criteria and brought it to the Welsh or Swim for his review, and as to at least one box, box 20, SA Orsini was consulted.

9. The procedure followed was that two team members ("receiving agents") would identify a box that they both believed fit within the scope of the Penn Avenue warrant, bring that box to SA Welsh or SA Swim in or just outside the conference room, Welsh or Swim would identify the box, and examine and list its contents for SA Dzielak to make the appropriate entry into the evidence recording log. Each box and its contents were recorded, along with descriptions of each item, the room in which each item was found, the initials of the two "receiving agents," and SA Dzielak's initials under "logged by." Suppression Hearing Government's Exhibit J, attached as Appendix B.

10. **The Boxes Seized**. SA Dzielak recorded 17 "Stumpf" moving boxes containing accordion files or folders with the names of the decedents on labels affixed to the files; 3 "Iron Mountain" records storage boxes containing accordion files or folders with the names of the decedents on labels affixed to the files; 3 Bankers boxes containing accordion files or folders with the names of the decedents on labels affixed to the files; 2 Office Depot boxes containing accordion files or folders with the names of the decedents on labels affixed to the files; 1 "Impact Copy" paper box, box 20, containing "numerous correspondence, emails, billings, for private consultations in autopsy cases"; 1 "Real Value" cardboard box containing accordion files or folders with the names of the decedents on labels affixed to the files; and 1 unidentified box containing a binder marked "Autopsy Reports and Records," 1 unlabeled file, and accordion files or folders with the names of the decedents on labels affixed to the files many of the names on the labels were famous celebrities and persons of local notoriety.   Suppression Hearing

Government's Exhibit J. Some of the boxes also contained unrelated materials, such as Scientology books in one box, but the operational plan was to seize whole boxes with all of their contents intact.

The "received by" initials "MSR (for Michael Reiner) and "BJS" (for Brian Swim) were listed for 6 of the boxes; the initials "RAW" (for Richard West) and "MSR" were listed for 21 of the boxes; the initials "CB" (for Coleman Bates) and "RAW" were listed for 2 of the boxes. SA Dzielak also recorded that all of the boxes were located in the storage room marked either A or B; none were located in the private law offices of the Wecht Law Firm.

11.     **Box 20**.  Box 20 was the Impact Copy paper box "received by" RAW and MSR, and it was, according to the Special Agents, a little unusual compared to the other files because it contained recent correspondence, emails and billings related to private consultations in current autopsy cases. Also unusual was the "legend" marked on the lid of the box, "Flo - for Wecht Law Firm." The Court has reviewed the contents of box 20, and finds that there are no letterheads, pleadings, statements, correspondence or other documents contained therein that were prepared for, generated by, reviewed by, or used by the Wecht Law Firm. Government's Trial Exhibit (doc. no. 215), G-318, Bates Nos. 1B1 - 20 - 000001 through 002837.  On the contrary, the items in box 20 all appear to have been prepared for, generated by, reviewed by, or used by Wecht Pathology, not the Wecht Law Firm: for example, invoices and billing records for reimbursement for private autopsy consultations, private limousine services and airfare.  Also, defendant did not produce any items or documents from box 20 at the hearing that would suggest they were actually items or documents of the Wecht Law Firm and not Wecht Pathology.

12.     During the search SA Welsh had two or three telephone conversations with SA

Orsini about the progress of the search, the parameters of the search, and what items to be seized. Orsini testified that SA Welsh placed three phone calls to him while he was leading the ACCO search: the first was to tell him the Penn Avenue warrant search had begun and that Ms. Brewer had let them in; the second was to inform Orsini that there were a lot of boxes there, and to discuss the items that Orsini thought should be taken, and Orsini reminded Welsh to "key in" on Eileen Young and moving boxes; the third call was about box 20, and its contents, and Orsini told Welsh to take it. SA Orsini did not recall whether the legend "for Wecht Law Office" was discussed at that time.

    SA Welsh recalled only two phone calls: the first to tell Orsini that there were numerous boxes located there, most of them containing private autopsy files, and about how to go about limiting the search for just those boxes that had been recently moved from the ACCO. Eileen Young's name came up in this context as an identifier. The second call Welsh described was about box 20, which contained "apparently ongoing" consultation work. SA Welsh recalled mentioning the legend "Flo - move to Wecht Law Firm" (although initially he stated the legend said "Flo - move to Wecht Pathology.")

    SA Swim recalled that after one of Welsh's phone conversations with Orsini, the parameters of the search were refined, and that the search was to be for boxes with contents having Eileen Young's initials, moving boxes with private autopsy files, and that the decision was made to take box 20 into evidence.

    13.    "After" photographs and testimony of all of the participating team members show that there were many boxes left at the Penn Avenue Office which the search team did not believe met the parameters of the Penn Avenue warrant. Defendant asserts there were about 60 boxes at

the Wecht Pathology office on Penn Avenue on April 8, 2006, and the testimony at the suppression hearing supports that approximate (60-70 boxes) number.

   14. **"Private autopsy files."** The Court finds, from the consistent testimony of the search team leaders and other members, and, importantly, from the language of the affidavit of probable cause which every team member read before the search commenced, that "private autopsy files" refers to files and documents relating to payment for and the use of the ACCO speciality labs for private autopsies, files containing reports and other documents used in defendant's private autopsy business, including those prepared by Eileen Young and other ACCO employees, and that "private autopsy files" includes autopsies, consultations, second opinions and evaluations of pathology reports and autopsies prepared by other persons, and the identity of the decedents involved in private autopsies performed with the aid of county resources.

   15. The Court finds that all of the 29 boxes and their contents are within the description of the Penn Avenue search warrant, namely, "Boxes (approximately twenty) and contents containing private autopsy files," and the parameters described in the affidavit and laid out by the team leaders at the search and SA Orsini prior to the search.

   16. The Court finds that the members of the search team acted reasonably and in good faith in the execution of the warrant, since they made reasonable efforts to take only evidence within the scope of the warrant, and left boxes and contents at the Penn Avenue Office that might have been private autopsy files but which were not found to have been recently moved from ACCO to Penn Avenue.

### III. Conclusions of Law

1. **Burdens of Proof and Persuasion**

The proponent of a motion to suppress bears the initial burden of showing standing, *i.e.*, of demonstrating by a preponderance of the evidence that his own Fourth Amendment rights were violated by the search or seizure. *United States v. Acosta*, 965 F.2d 1248, 1257 (3d Cir. 1992), citing *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978). Once defendant passes that threshold, "the burden of proof is on the defendant who seeks to suppress evidence" obtained pursuant to a warrant. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). However, because warrantless searches are presumptively unreasonable, *Horton v. California*, 496 U.S. 128 (1990), the government must bear the burden of proving exigent circumstances or consent by one having authority to consent to the search or seizure of the place searched or the thing seized. *United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992)

There is no question that Dr. Wecht has standing to challenge the search of his private pathology office and seizure of boxes therefrom, nor is there any question (at this point) that the Penn Avenue warrant was supported by probable cause. Accordingly, defendant has the burden of showing that the search and seizure of boxes and contents pursuant to the valid search warrant exceeded the scope of the warrant or was otherwise unlawful.

2. **Search Warrant and Affidavit Meets the Particularity Requirement and Is Not Overly Broad**. Apart from requiring probable cause, the warrant requirement of the Fourth Amendment also requires that the warrants must particularly describe, "the place to be searched, and the persons or things to be seized." *United States v. Ritter*, 416 F.3d 256, 264-65 (3d Cir.

2005). The particularity requirement of the Fourth Amendment not only prevents general searches, but also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *Id.* (citations omitted). However, "no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision." *United States v. Atwell*, 289 F.Supp. 2d 629, 634 (W.D. Pa. 2003), quoting *United States v. Christine*, 687 F.2d 749, 760 (3d Cir. 1982). The Fourth Amendment does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described. *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars,* 307 F.3d 137, 148 (3d Cir. 2002).

This Court previously held, relying on *Ninety-Two Thousand Four Hundred Twenty-Two Dollars*, that while the Penn Avenue warrant was arguably somewhat broad, it was not a "general" warrant leaving the investigating officers "unbridled discretion" to search for and seize whatever they wished. Memorandum Order of May 31, 2006 (doc. no. 193). Rather, the warrant and the affidavit in support thereof described the "boxes" with specificity by identifying the nature and identifying features of the contents of the boxes that had recently been moved from the ACCO to Penn Avenue.

3. Therefore, the only issue now before the Court is whether the search or seizure exceeded the scope of the Penn Avenue warrant authorizing the seizure of the approximately twenty boxes and contents containing private autopsy files or, stated more specifically, whether the search team's discovery of 29 boxes in the Wecht Pathology records storage rooms A and B containing files and documents relating to private autopsy business and cases fell reasonably

within the scope of the search warrant. *See United States v. Ritter*, 416 F.3d 256, 266 (3d Cir. 2005) ("Although the officers lawfully embarked upon the search of the premises with a warrant supported by probable cause, did there come a time when their execution went beyond what the warrant permitted and, thus, ran afoul of the Fourth Amendment's prohibition of unreasonable searches? [*Maryland v. Garrison*, 480 U.S. 79 (1987)] necessarily informs this inquiry. From the Supreme Court's opinion in that case, several relevant principles can be distilled, all of which focus on the conduct of a reasonable officer and the reasonableness of his belief as to whether the search at issue is proceeding beyond the four corners of the warrant."); *United States v. Kepner,* 843 F.2d 755, 763 (3d Cir. 1988). The answer to that question is a resounding yes.

4. The search team members in this case undertook the search of the Penn Avenue Office with a warrant supported by probable cause particularly describing the boxes of recently moved private autopsy files as they were reasonably known or should have been known to SA Orsini. The search team dressed and, more significantly, acted professionally in the manner and execution of their search, avoiding the private offices of the Wecht Law Firm, looking only in the boxes in the records storage rooms, and limiting the seizure to those boxes that were collectively determined to substantially match the description of the warrant and affidavit. That agents took nine more boxes than the "approximately twenty" boxes described in the Penn Avenue search warrant does not render the execution of the search warrant unreasonable, nor does it indicate the team members were rummaging through the office on a general warrant.

5. **Plain View**. Moreover, while the agents may not exceed the authority granted by the search warrant in terms of the place to be searched or the things to be seized, evidence not particularly described in a warrant nevertheless may be seized during the course of an otherwise

lawful search, if observed in plain view. *Coolidge v. New Hamphire*, 403 U.S. 443, 465-466 (1971) (plurality opinion). Assuming, for sake of argument only, that box 20 did not exactly fall within the scope of the authority granted by the Penn Avenue warrant, the box contained evidence of the crimes charged in the indictment, and the team members who lawfully examined the contents of that box, as they were obliged and entitled to do by the Penn Avenue warrant, observed the evidence in plain view and its evidentiary value was immediately appreciated.

      6.      **Good faith**.  As noted in the Memorandum Order of May 31, 2006, the good faith exception applies to seizure of evidence in good faith and reasonable reliance on a search warrant that has been approved by a magistrate judge. *Massachusetts v. Sheppard*, 468 U.S. 981 (1984) (companion case to *Leon*). Thus, even if evidence is seized which, in hindsight, should not have been under the authority of the search warrant, the good faith exception applies and the evidence is admissible if the officer acted in good faith and, objectively, acted reasonably in seizing the evidence. *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989), citing *Kepner*, 843 F.2d at 763-64. Assuming, again for the sake of argument only, that box 20 did not fall precisely within the scope of the authority granted by the Penn Avenue warrant, or any of the other twenty eight (28) boxes for that matter, the search team members acted reasonably and in good faith in relying on the warrant and affidavit, after discussion with the Special Agents who were the final arbiters, to cull the twenty-nine (29) boxes from the 60 or 70 boxes that were at the Penn Avenue Office on April 8, 2005.

For all of the foregoing reasons, the Court will deny this remaining portion of defendant's Motion to Suppress (doc. no. 55) and will enter an appropriate order.

**SO ORDERED** this 13th day of June, 2006.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc: all counsel of record