## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
                             )
    v.                     )                **Criminal No. 06-0026**
                             )                **Electronically Filed**
CYRIL H. WECHT          )

## MEMORANDUM OPINION RE: DENIAL OF DEFENDANT'S MOTION FOR RECONSIDERATION (DOC. NO. 183) OF THE COURT'S MAY 17, 2006 ORDER (DOC. NO. 152) PERTAINING TO THE ADMISSIBILITY OF GOVERNMENT'S TRIAL EXHIBITS; MEMORANDUM OPINION RE: DENIAL OF DEFENDANT'S MOTION TO MODIFY (DOC. NO. 203) COURT'S PRETRIAL ORDER DATED MARCH 1, 2006 (DOC. NO. 42); AND COURT'S RULINGS ON DEFENDANT'S UNTIMELY OBJECTIONS (DOC. NO. 211) TO GOVERNMENT'S TRIAL EXHIBITS

## I. BACKGROUND OF CRIMINAL CASE

On January 20, 2006, the government brought an 84 count indictment alleging that defendant, Dr. Cyril Wecht, committed the crimes of theft of honest services - wire fraud and mail fraud, mail fraud, wire fraud, and theft concerning an organization receiving federal funds, in violation of 18 U.S.C. § § 1341 1342, 1343 and 1346, 18 U.S.C. § § 1341 and 1342, 18 U.S.C. § § 1342 and 1343, and 18 U.S.C. § 666, respectively, when he unlawfully used his public office as the coroner of Allegheny County, Pennsylvania, for his private financial gain.  Doc. no. 1. More specifically, the indictment alleges, among other things, that defendant falsely billed his clients (through the mail) for services such as limousine rides to the airport and other private engagements, while using county coroner's office vehicles and employees to drive him to the airport and other private engagements; that defendant created false travel agency bills and false limousine reports and transmitted them via facsimile from the coroner's office to private clients

in other states; and, that defendant otherwise used the Allegheny County Coroner's Office employees to perform other personal work, including secretarial work, for his own private financial gain.  Defendant categorically denies these allegations.  The trial of this case will commence on October 16, 2006.

## II.  BACKGROUND OF PRETRIAL ORDER OF MARCH 1, 2006 (DOC. NO. 42)

### A.  Counsel for Defendant was Completely Involved in the Establishment of the Specific Dates and the Sequencing of Specific Tasks in the Pretrial Order

Counsel and the Court worked diligently to craft a three-phase pretrial order that would ensure the October 16, 2006 trial date.  Specific dates and the sequencing of specific tasks were negotiated for these three phases.  The three phases were: (1) document production, witness identification and offers of proof, identification of trial exhibits and objections thereto, and ruling on objections to trial exhibits "at or before the June 7 and 8, 2006 pretrial conference"; (2) filing of motion to suppress and motion to dismiss, filing of joint stipulations, and submission of jury instructions and voir dire questions, for consideration "at or before the July 12 and 13, 2006 pretrial conference" - - jury questionnaire will be sent to perspective jurors in July 2006; and (3) filing of motions in limine, including motions under Fed. R. Evid 104(a), for determination "at or before the September 7 and 8, 2006 pretrial conference". The final pretrial order (doc. no. 42) was consented to by counsel for defendant without objection and by counsel for the Government with objections.  See doc. no. 35.

The history of the development of the pretrial order is as follows: At the first status/scheduling conference on February 10, 2006, this Court ordered the parties to file a proposed pretrial schedule based upon three potential trial dates, by noon on February 16, 2006

-2-

(doc. no. 11).  The parties chose the latter of the three trial dates - - October 16, 2006.  Defendant

then filed a motion for extension to file pretrial motions which this Court granted and then

vacated pending the issuance of a more detailed pretrial order following the second status

conference on February 17, 2006.  Doc. nos. 13, 14 and Text Order on 2/14/06.  The parties then,

on February 16, 2006, filed a notice of filing of proposed pretrial order with agreed upon dates,

as well as alternative language where the parties could not agree.  Doc. no. 23.

At the second status conference, the Court discussed the proposed pretrial dates, the

government placed objections on the record to certain pretrial dates (since the Court was

requiring the government to make document production and disclosure of Brady/Giglio and

Jencks, months before the normal time frame), and defendant placed no objections on the record

as to the pretrial deadlines.  Based upon the discussions at the second status conference, the

Court ordered the parties to submit a revised joint proposed pretrial order by February 24, 2006

at noon.  Doc. no. 24.  Thus, the terms of the pretrial order were drafted, negotiated, revised,

submitted, and agreed-to by both counsel for defendant and counsel for government (except for

certain limited objections of the government) (doc. no. 30).  See also doc. nos. 5, 11, Text Order

of 2/10/06, Text Order of 2/14/06, doc. no. 23, and doc. no. 35.

The minute entries of these two status/scheduling conferences indicate the detailed nature

of the discussion that occurred among counsel for government, counsel for defendant, and the

Court as to specific dates and the sequencing of specific tasks set forth in the Pretrial Order - - on

February 10, 2006 (10 minutes) (adjourned for arraignment before U.S. Magistrate Judge)

("Court to set firm trial date; parties to work out a pretrial schedule and choose from one of the

following trial dates: 9/5/06, 9/11/06, or 10/16/06; drafted Proposed Pretrial Order shall be

electronically filed by 2/16/06 at noon; 2nd Status/Scheduling Conference set for 2/17/06 at

8:00 am") (see Minute Entry of 2/11/06 conference at doc. no. 11); and on <u>February 17, 2006</u> (<u>3</u>

<u>hours</u>) ("Discussed pretrial dates in detail; Government places on the record certain objections to

early pretrial dates; Revised Proposed PTO [Pretrial Order] due 2/24/06 at noon; . . . 3rd Status

Conference set for 3/17/06 at 8:15 am . . . .") (see Minute Entry of 2/17/06 Conference at doc.

no. 24).

     Between the first status conference of February 10, 2006 and the second status conference

of February 17, 2006, the Court analyzed the workload and tasks to be performed before trial by

the parties and the Court, and then the Court re-worked the jointly submitted proposed pretrial

order of the parties, filed on February 16, 2006.  Said proposed pretrial order (doc. no. 23)

provided for a single pretrial conference in September, 2006, with an agreed-to October 16, 2006,

trial date.  The Court "re-worked" the proposed pretrial order to provide for three pretrials (i.e.,

June, July, and September 2006) so that "in fairness to everybody" the sequence of tasks would

be ordered to provide for "an up front, front-end load[ing] of decision-making."  With such a

massive number of anticipated documents (primarily taken from defendant's offices and other

locations) and the resulting number of trial exhibits, a single September 2006 pretrial conference

would have jeopardized the chosen trial date.  (The subsequent conduct of counsel for defendant,

as set forth below, demonstrates that such conduct could not have been dealt with by the Court,

in a thorough and orderly manner, if that process would have started the month before the agreed-

to trial date of October 16, 2006.)  The Court's "re-worked" pretrial order was distributed and

discussed in detail at the February 17, 2006 status conference.

A review of the transcript of the February 17, 2006, second status conference is necessary to understand the context, purpose, and scope of the discussions at said conference concerning specific pretrial dates and the sequencing of pretrial tasks.  The transcript at page 2 through 9 (doc. no. 39) sets forth the following:

(Proceedings held in open court; February 17, 2006).

THE COURT:  Good morning.  Thank you all for being here.  We are obviously starting a long-term relationship, so hopefully it will go well for all of us.

I just want to give you a couple general comments about your pretrial order that you proposed and sent in to me.  I have reworked the document and I will give you a copy of the document in a few minutes, but I wanted to give you my overall comments because if I gave you the document when you came in, you would be reading that instead of listening to me, so I will give it to you in a few moments.

I will then share some thoughts on the document itself with you and then we will break and you can all caucus in your various corners and then we will get back together in 10 minutes, 15 minutes, as long as you want, but that saves the lawyers who are speaking from having other people whispering in their ear throughout the whole process, which can become pretty frustrating, at least I always found it frustrating in my many years of practice.

My first comment is to thank you for working together.  While there were some differences, they were substantive differences as opposed to style or ego differences, and I compliment you about that and just encourage you as much as possible to keep that in mind.  There's things to fight about, but not everything is worth fighting about or is necessary to fight about.  So I thank you for that.

Secondly, I think you all probably did a fairly good job from your respective positions as to how you can work in an orderly way and get your respective work done.  But -- and this is certainly understandable -- the schedule does not appreciate the work flow it proposes into the Court.  In other words, while your workload is somewhat spread out over between now and the trial date, the workload that you propose by that schedule upon the Court is impractical to hold the trial date.  And I am sure it was not intentionally done to have the trial date be unrealistic, but just the failure to appreciate that things need to come in in an orderly way over the time from now until trial so the Court can thoughtfully deal with the matters that are going to be raised, of which there are going to be a substantial number.

The Court has the Court, and the Court has a law clerk, and because there's no objection, we will obviously from time to time then use Mr. Lydon [second law clerk], but I don't have a large law firm or a large government organization to draw people from.  So that's the manpower that Congress has decided to give to me, or whoever decides these things, and so we need to change the schedule to bring the case online before the Court in an orderly way so I can give you meaningful and thoughtful decisions.  That doesn't mean they are going to be long, but I want time to think about these important matters.

So, you will see that I did have the October 16, 2006, trial date.  I want you to think about if that is a truly realistic date.  I think it is if we all work together, but I don't want to block out the three weeks I have blocked out for this trial and then find, you know, two weeks ahead of time someone is filing motions to continue.  So we need to focus on the work flow and getting things done realistically.

I believe the schedule I am going to give you does that.  I think it orders the trial in a way to focus on the pretrial, the preliminary pretrial motions that the Defendants will obviously file; it deals with the filing of exhibits in an orderly way and my ruling on those exhibits; it then works forward on the witnesses and then motions in limine would flow from that; then it flows from other pretrial matters.

I have set up in the schedule three pretrial conferences in addition to the final conference.  Those three preliminary pretrial conferences will last two days.  If we can get it done in a day each time, that's fine.  If you need three days, I will get you what you wish from a scheduling standpoint as long as you tell me ahead of time, you all have priority on my schedule as long as I know ahead of time.  But my desire is to make rulings throughout May and June and July and August and have very little left to deal with in September  because if you drop on me everything you plan to drop on me under your proposed schedule in September, you each are going to have to hire me -- each of you are going to have to pay for two extra law clerks each so I can move the paper.  And I  think in fairness to everybody, we should do this in an up front, front-end way load[ing] of decision-making.

I set aside three weeks for the trial.  You may convince me you get another week.  But if we do this in an orderly way, especially with the exhibits and moving much of the documentary evidence in through summary charts and exhibits, we can do this in a fair and efficient manner.  But what we are not going to do is show up one day and just have the Government put on witnesses and just let it roll until the last one is done and the jury and I just sit through all of this and then Defendant gets up and just rolls as long as they want to roll and by then it's probably, you

know, Christmas, New Year's, whatever.  It is not going to happen.

So I will work with you, you work with me, and we will do this in an orderly, professional, fair, and efficient way, focused on the jury so that their time is used wisely and  properly.  I think we owe that to the jury who is going to be taking time away from family and work and other matters to try this most important case.

So that's my overall comments.  Again, thank you for what you have done.  I am pretty much set on the pretrial schedule that I am going to give you.  However, if you find that I have sequenced something that should be "C" in place of "A" and I need to do some reversal of tasks, I would be pleased to hear that.  But the workload must remain fairly level coming in to me.

Let me give you a perspective.  Because the Defendant has a right, which Defendant has not exercised, to try the case within 70 days, certainly the Government in bringing the indictment must have known that that was a possibility, and so there shouldn't be any issue on the front loading of this on the Government's part.

On the Defendant's part, I noted that most of the time the Defendant wanted dates earlier than the Government, so I suspect that the front loading of the case and my decision-making probably will not be a problem to the Defendant, but certainly you have a right to discuss with me and put on the record anything you want.  So I tried to be sensitive to each of your respective positions.

I am in a position, having reviewed in great detail the indictment to today or some future day to tell you how I think from a documentary point of view this case can be synthesized into charts and other documents.  I am happy to share that with you of how I think that can be done and how the documentary evidence can be in large part stipulated to.  Obviously the Government and the Defendant will disagree possibly as to the meaning of documentary evidence, but it seems from the indictment that much of the evidence is documentary, with the dispute remaining as to the significance or the meaning or the intent of the documents.  If that's the case, then we ought to be able to front-end the decisions on the documents so that we then can proceed to other matters.

Thank you for your patience in listening to me.  If you have any questions, I will answer them.  Otherwise, I will give you the proposed pretrial schedule and then tell me how long you want – and you have me until 9:30, then you can have me later in the day.  So I will give you, as I said, as much time as you would like.

Any questions on behalf of the Government?

MR. STALLINGS:  No, No, Your Honor.

THE COURT:  On behalf of Defendant?

MS. EDDY:  No, Your Honor.

THE COURT:  I forgot, I am sorry, to put everybody on the record.  Who is here on behalf of the Government?

MR. STALLINGS:  On behalf of the Government, Stephen Stallings for the United States.  With me is Robert Cessar; with the FBI, Brad Orsini.

THE COURT:  Welcome.

MS. EDDY:  For the Defendant Cyril Wecht, Cynthia Reed Eddy, J. Alan Johnson, and Mark Rush, Your Honor.

THE COURT:  And the Defendant is with us also?

MS. EDDY:  Yes, Your Honor.

THE COURT:  Welcome to all of you.  Remind me and I will switch every other time we come here, we will have the -- the Defendants can have the jury room today and there are two lawyer conference rooms right outside this courtroom that the Government can have today.  If you -- you can all, going forward, just trade back and forth so we keep everything fair and balanced, I would appreciate that.  My deputy clerk will give you the draft pretrial order.  I look forward to your comments.  How long do you want?  You can have as long as you want.  I want to be realistic.  Do you need 20 minutes, do you need half an hour, whatever you would like?

MR. STALLINGS:  20 minutes is fine, Your Honor.

MS. EDDY:  20 minutes, Your Honor.

THE COURT:  Okay.  Then once you all have your respective positions, why don't you get together and see whether you have agreement on my suggestions or not, if you think that would be helpful.  If not, then why don't you just come in with your respective positions.  So why don't we stand in recess until 8:35, but stay in your respective place, my deputy clerk will come at 8:35 to see if you need more time.  If you do, we will certainly give it to you.  If not, then we will just reconvene in here at 8:35.  All right.  Thank you again for your hard work, I appreciate it.  We will stand in recess.  (Recess taken).

An in depth review of the 72 pages of the transcript of February 17, 2006 of the three-hour second status conference demonstrated that the discussion focused on the sequencing of specific tasks with specific dates; in particular, (a) Rule 16 document production by the government of approximately "100 boxes" (see defendant's emergency motion of 2/24/06 at doc. no. 33) (doc. no. 44) and (b) identification of government's trial exhibits ("with bates numbers and exhibit numbers") by April 21, 2006 and identification of defendant's trial exhibits by May 5, 2006.  See doc. no. 42 and Minute Entry of February 17, 2006 Conference and the transcript thereof (doc. no. 39).

Likewise, specific dates were established for counsel to meet and confer on the government's trial exhibits and defendant's trial exhibits (May 11, 2006) to determine if the parties could reach an agreement to make some of said trial exhibits into "Joint Exhibits."  There was specific discussion on whether that meeting should occur on May 10, 2006, May 11, 2006, or May 15, 2006.  See doc. no. 39, pages 36-39.  (It turned out that when the meeting occurred on May 11, 2006, counsel for defendant left in less than one-half hour.  See doc. no. 152.)

Importantly, in order to provide the Court with the necessary information to rule on the objections to trial exhibits, well in advance of the first pretrial conference, a "trial exhibit chart" was discussed.  In fact, the initial draft of the pretrial order, submitted on behalf of counsel for government and defendant (doc. no. 23), provided for a trial exhibit chart as follows in paragraph 3(c):

> All exhibits must be exchanged and marked in advance of trial. **[Defendant proposes "the government shall provide to the defendant a copy of the documents/exhibits it intends to use at trial by March 1, 2006, to be timely**

**supplemented as the government gathers additional documents/exhibits."]**  A Joint Exhibit Binder (which may be presented in more than one Volume) is to be provided to the Court by the government no later than **[Government proposes "October 10, 2006;"] [Defendant proposes "September 15, 2006;"]** exhibits that are not objected to by the defense shall be marked numerically, i.e., "G-1, G-2, G-3," etc.; the defendant's exhibits which are being objected to by the government shall be referred to in the Joint Exhibit Binder by description or summary.  <u>Additionally, a chart shall be provided to the Court, in hard copy and email form, identifying each exhibit by number and name, providing a brief description of the nature of the objection (if any), and a space for the Court's ruling on the objection(s).</u>  Objections will be resolved at or before the pretrial conference.

Doc. no. 23, pages 2 and 3 (emphasis added).  Note also that defendant wanted government to identify its trial exhibits as early as May 1, 2006 (which became April 21, 2006 in the final Pretrial Order) (see doc. no. 39 at pages 46 and doc. no. 42), over the strenuous objections of the government.

The final Pretrial Order of March 1, 2006, provided as follows:

Additionally, a trial exhibit chart shall be provided to the Court, in hard copy and email form, on or before May 15, 2006, identifying each trial exhibit by exhibit number, bates number, bar code, date of exhibit, author of exhibit, brief description of the exhibit, brief description of the nature of the objection (if any), brief description of the response thereto, and space for the Court's ruling on the objection(s).  Objections will be handled at or before the June 7 and 8, 2006 pretrial conference.

There were specific discussions concerning the need to have the objections made and the trial exhibit chart information to the Court, by May 15, 2006, so the Court would have sufficient time to review the exhibits (electronically) and be able to handle the objections "at or before the June 7 and 8, 2006 pretrial conference."  Doc. No. 42.  The transcript of the February 17, 2006 conference states as follows:

. . . But it is my intent to work through all exhibits, or 95 percent of the exhibits, on the June 7th and June 8th conference, which means I need to have things

-10-

physically in my presence so I can start the nitty-gritty work of going through these exhibits . . . in time to have a meaningful review of the documents so I am prepared for the June 7th and 8th, 2006, conference . . . But that's what I am driving to for that first conference . . . .

Doc. no. 39 at pages 17 and 18.

At the second status conference of February 17, 2006, the Court also emphasized the need for counsel to focus on the sequencing issue and to suggest changes, if any, <u>immediately</u> (i.e., between February 17, 2006 and February 24, 2006 - the due dates of the final proposed Pretrial Order - - see Minute Entry of February 17, 2006 conference at doc. no. 24). The Court stated as follows: "I am pretty much set on the pretrial schedule that I am going to give you. However, if you find that I have sequenced something that should be "C" in place of "A" and I need to do some reversal of tasks, I would be pleased to hear that. But the workload must remain fairly level coming into me." (Transcript of February 17, 2006 conference at pages 5 and 6) (doc. no. 39). What followed was silence - - neither counsel for the government, nor defendant, suggested a change of sequence between February 17, 2006 to February 24, 2006, and the Pretrial Order (doc. no. 42) was issued on March 1, 2006 with the agreed-to sequence. (Counsel for defendant now argues, in defendant's Motion to Modify (doc. no. 203) the Court's Pretrial Order, dated March 1, 2006 (doc. no. 42), filed on the eve of the June 7 and 8, 2006 pretrial conference - - at 11:40 AM on June 6, 2006 - - that the above quote of the Court invited defense counsel, months later, to seek to change the sequence, after defendant had received the substantial benefits from the Pretrial Order of March 1, 2006, as set forth below.)

Based upon the discussions at the second status conference, the Court ordered the parties to submit a revised joint proposed pretrial order by February 24, 2006 at noon. Doc. no. 24.

Again, no counsel proposed a change in sequence.  A revised proposed Pretrial Order was submitted on February 24, 2006 (with certain strenuous objections by the government and with no objections by defendant).  See doc. no. 35.  No objections were filed by defendant thereafter. Thus, the terms of the Pretrial Order were drafted, negotiated, revised, submitted, and agreed-to by both counsel for defendant and counsel for government (except for certain limited objections of the government) (doc. no. 30).  See doc. nos. 5, 11, Text Order of 2/10/06, text Order of 2/14/06, doc. no. 23, and doc. no. 35.  It was adopted by the Court as Pretrial Order of March 1, 2006.  Doc. no. 42.

### B.  Court Granted Defendant's Motion to Require Early Production of the Voluminous Documents by the Government and Ordered the Government to Pay One-Half of the Cost of Creating the Electronic Document Database

Importantly, simultaneous to the discussions relating to the Pretrial Order at that status conference of February 17, 2006, discussions were held regarding counsel for defendant's concern that the large volume of the documentary evidence would jeopardize the timetable of the first phase of the pretrial proceedings, and the Court thus directed defendant to file a motion relating to the prompt production of documents and to split the costs of creating a document database by the close of business on February 17, 2006.

By the close of business that day, defendant filed a motion for discovery to require the government to share in the expense of document reproduction.  Doc. nos. 26 and 30.  As part of that motion, defendant specifically acknowledged that the documentary evidence was approximately "100 boxes of documents as a result of the grand jury investigation as well as electronic media" (see also doc. no. 39 (transcript), page 6, lines 11-12), and argued that the costs

of bates stamping (actually used the FBI evidence log numbering system (doc. no. 39 at page 21,

line 15) and scanning all documents onto computer database should be split equally and that each

party would pay approximately $12,5000.00 to produce this database.  Doc. no. 26.

In its motion, defendant stated as follows at doc. no. 26 at ¶ 5:

The Court has suggested, and the defense agrees that the government's and
defendant's concerns and rights can be appropriately protected by the creation of a
complete control set of bates-stamped documents.

Defendant continued as follows:

This procedure assures that each party, as well as the Court, has a complete set of
documents and will aid in the efficient administration of justice.  It will aid the
parties in complying with the Joint Scheduling Order, without requiring
extensions of time related to document production.  These documents will also
provide ease and certainty of document identification for the use of the Court and
the jury.

As to defendant's recent argument in his Motion for Reconsideration (doc. no. 203, filed

June 1, 2006), that the "database" was to be "paper" and not electronic, and that government

should have produced (or more accurately re-produced) its trial exhibits in paper - - instead of

providing the trial exhibits' exhibit numbers and related bates numbers, defendant's own words

of February 17, 2006, answer the question of "electronic" or "paper" in paragraph 7 of doc.

no. 26 as follows: "The cost of Bates stamping and scanning all the documents onto computer

discs (CD), from which each party could access all documents, is approximately $25,000.00." (If

any party wanted "paper copies," "such copies were available at "$12,500.00 per set.").  The

record establishes that the parties agreed that the database was to be "electronic," and that "paper

copies" (if any) were the responsibility of the party wanting "paper copies."  See also Order of

Court of March 2, 2006 (doc. no. 44 at page 2) ("Each party shall be responsible for the cost of

their own paper copies, if they desire paper copies.")

Further, defendant's brief (doc. no. 27) in support of motion to require parties to share the expense of document production in footnote 1 talks in terms of "by electronic means" and "Court may order the government to electronically file its Rule 16 response." In this statement, defense counsel is not simply referring to a written response, but to the actual production of documents, by stating as follows: "The government would have to then scan the documents to comply with the Court's order and a copy (electronically) would then be available to the defense. If the Court utilizes this procedure, the defense would request that the documents be filed under seal."

In order to obtain the highly unusual order from this Court, requiring the government to pay one-half of the cost of creating the electronic database (doc. no. 44), defendant represented to the Court as follows (doc. no. 30 at page 2):

> This case presents special circumstances. The government acknowledged to this Honorable Court that this is not your typical case. Special circumstances include: (1) <u>the voluminous number of documents</u>; (2) the government's procedure for allowing the defense to view the documents in the presence of a government agent violates the attorney-work product and implicates the defendant's Sixth Amendment right to effective assistance of counsel; (3) <u>the defendant has a right to a speedy trial and reproducing documents in this manner facilitates defense counsel's ability to meet the joint scheduling order</u>; (4) the creation of a control set of documents, with Bates numbers, facilitates the Court's and the jury's ability to clearly identify documents; and (5) reproduction of the documents preserves the evidence and the integrity of the documents and eliminates the government's security concerns. The Court should also consider that the defendant is not requesting that the government bear the entire cost of production, but rather, that the government pay an equitable share of the cost of reproduction. (emphasis added.)

Interestingly, now defendant argues that the granting of defendant's requested order to provide the database to defense counsel in electronic format, instead of paper copies, somehow excuses defendant's refusal to comply with the pretrial requirements and schedule relating to the trial

-14-

exhibits and objections thereto, because working "in paper" is easier.  However, in the Motion to

Require Parties to Share Expense of Document Production (doc. no. 26), defendant at that time

(February 17, 2006) represented that the creation of the electronic database would ". . . aid in the

efficient administration of justice [and] aid the parties in complying with the Joint Scheduling

Order, without requiring extensions of time relating to document production."  Doc. no. 26 at ¶ 6.

On February 22, 2006, the government submitted its brief in opposition to said motion,

and on that same date, this Court entered a modified order granting defendant's motion for

discovery to require the parties to share in the expense of said document reproduction <u>in</u>

<u>electronic form</u> (doc. no. 31).  This Order of Court states as follows:

> AND NOW, to-wit, this 22nd day of February, 2006, upon consideration of
> the Defendant's Motion to Require Parties to Share in the Expense of Document
> Reproduction (doc. no. 26) and upon consideration of the government's response
> thereto (doc. no. 29), it is hereby ORDERED, ADJUDGED, and DECREED that
> the Defendant's Motion is GRANTED (as modified) and the procedure for the
> reproduction of documents and the costs relating thereto shall be shared as
> follows:
>
> The government and the defendant shall each pay one-half of the cost of
> the reproduction of the Rule 16 material by means of electronic scanning of the
> documents onto computer discs (CD's).  The cost of such reproduction shall
> include the costs of the preparation of three (3) sets of computer discs: one for the
> Court and one for each of the parties.  Said reproduction must be done in such a
> way to place Bates Nos., or other numerical system, on the documents.  Likewise,
> other documents produced in this case by the government and/or the defendants,
> including trial exhibits, must contain a similar numerical system.  This case-wide
> numerical system and related electronic scanning procedure shall apply to all
> documents produced by all parties, including trial exhibits, in a database format
> which will be easily searchable throughout the pretrial process and trial by the
> Court and the parties.  (Each party shall be responsible for the cost of their own
> paper copies, if they desire paper copies.)
>
> FURTHER, the government's duty under Rule 16 is a continuing
> responsibility.  The government shall notify the defense and arrange for the
> scanning of additional documents as soon as they come into the possession of
> investigating agencies.  The cost of the additional reproduction shall, likewise, be
> shared equally between the parties.

To do other than the above procedure would continue the use of outdated pretrial methodology.  Further, the taxpayers have heavily invested in court technology and courtroom technology.  To not implement the above procedure, including the creation of a searchable database, would deny the taxpayers the cost savings and efficiencies that should result from such investment.  Additionally, this Court is a member of the Third Circuit Technology Committee, and Chair of the Information Technology Committee of the United States District Court for the Western District of Pennsylvania, and as such, believes that to fail to use current technology would be unwise and imprudent.

A district court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005)(quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  See also, *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004)("district courts have wide ranging control over management of their dockets, the courtroom procedures, and the admission of evidence.")  The procedure outlined herein will afford the parties and the Court greater organization of an otherwise cumbersome amount of documents.  The Court therefore will exercise its inherent authority to manage this litigation.

Counsel for the parties shall submit to the Court by noon on Monday, February 27, 2006 (absent a joint request for additional time), a joint protocol, developed by their respective information technology specialists, to successfully implement the above procedure and ensure the achievement of the stated goal of this Order of Court.

On February 24, 2006, defendant filed another emergency motion for status conference and access to Rule 16 material (doc. no. 33), again stating there were "voluminous documents (100 boxes)" to be inspected and requested a status conference to discuss defendant's request to inspect the original documents "until such time as all the documents have been scanned and each party has been given such set of scanned documents."  See doc. no. 36.

On February 27, 2006, the government file a motion to reconsider (doc. no. 38) the Order of Court regarding document production and cost sharing (doc. no. 31).

At the third status conference held on February 27, 2006, the Court considered both parties' pending motions.  Doc. nos. 36 and 38.  The parties agreed to work together on the

-16-

"inspection" but in such a way as to not interfere with the electronic scanning project.  See

Minute Entry of Third Status Conference, doc. no. 40.  The Court further granted in part and

denied in part the government's motion for reconsideration (doc. no. 38).  Id. See also doc.

no. 41.

The Court then entered a Revised Order of Court (doc. no. 44), on March 2, 2006,

revising the protocol for document production and cost sharing, as follows:

> **AND NOW**, to wit, this **2nd day of March, 2006**, upon consideration of the Defendant's Motion to Require Parties to Share in the Expense of Document Reproduction (doc. no. 26), the government's response thereto (doc. no. 29), and the government's motion for reconsideration or modification of the order (doc. no. 38), it is hereby ORDERED, ADJUDGED, and DECREED that the Court's February 22, 2006 Order (doc. no. 31) is vacated and replaced by the following modified order:

> The government and the defendant shall each pay one-half of the cost of the reproduction of the Rule 16 material by means of electronic scanning of the documents onto computer discs (CD's).  The cost of such reproduction shall include the costs of the preparation of two (2) sets of computer discs:  one for each of the parties.  In addition, the cost of such reproduction shall include the costs of the preparation of a third set of computer discs to be submitted to the court containing all exhibits and other materials related to pretrial motions and for use at trial.  Said reproduction must be done in such a way to place Bates Nos., or other numerical system, on the documents.  Likewise, other documents produced in this case by the government and/or the defendants, including trial exhibits, must contain a similar numerical system.  In addition, the reproduction will be done utilizing a text-capture program, to increase the search ability of the disks.  This case-wide numerical system and related electronic scanning procedure shall apply to all documents produced by all parties, including trial exhibits, in a database format capable of being converted into an easily searchable database for use during pretrial proceedings and at trial whereby documents may be easily retrieved by virtue of bar codes, exhibit numbers, or bates numbers.   (Each party shall be responsible for the cost of their own paper copies, if they desire paper copies.)

> FURTHER, the government's duty under Rule 16 is a continuing responsibility.  The government shall notify the defense and arrange for the scanning of additional documents as soon as they come into the possession of

investigating agencies.  The costs of the additional reproduction shall, likewise, be shared equally between the parties.

To do other than the above procedure would continue the use of outdated pretrial methodology.  Further, the taxpayers have heavily invested in court technology and courtroom technology. To not implement the above procedure, including the creation of a searchable database, would deny the taxpayers the cost savings and efficiencies that should result from such investment. Additionally, this Court is a member of the Third Circuit's Judicial Council Information and Technology Committee, and Chair of the Information Technology Committee of the United States District Court for the Western District of Pennsylvania, and as such, believes that to fail to use current technology would be unwise and imprudent.

A district court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005)(*quoting Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). See also, *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004)("district courts have wide ranging control over management of their dockets, the courtroom procedures, and the admission of evidence.") The procedure outlined herein will afford the parties and the Court greater organization of an otherwise cumbersome amount of documents. The Court therefore will exercise its inherent authority to manage this litigation.

The government shall, at its discretion, select the copy service to be used to perform the scanning process described above, and shall commence the scanning process forthwith upon issuance of this order.

The parties shall jointly submit, prior to the completion of the scanning process, a proposed confidentiality order governing certain confidential information contained within the scanned documents.

Please note that the Pretrial Order of March 1, 2006, requires that all trial exhibits contain exhibit numbers and Bates Nos., plus a trial exhibit chart containing bar codes and other specific information.  The above reproduction process, including computer discs, must produce a work product that will permit the parties (at their own expense) to display their respective trial exhibits to the Court and the Jury using a bar code or other system, on the courtroom displays using the courtroom technology.  All trial exhibits must be so displayed at trial.

Importantly, at this time, February and March 2006, it was counsel for defendant who continually and vigorously and successfully argued for document production, electronic database, and cost sharing - - over strong objections of the government.  Thus, the Revised Order of Court (doc. no. 44) was intended to create, pursuant to defense counsel's request, an electronic database

-18-

- - not a paper database.  For defense counsel now, in June, 2006, to suggest that the database was to be "paper," or that government was required to produce its approximately 1350 trial exhibits to counsel for defendant in paper form on April 21, 2006, instead of a list of the government's trial exhibits with trial exhibit numbers with corresponding bates numbers, and descriptions, which thereby somehow relieved defendant from complying with the May 15, 2006 "objection" date, and permitted defendant to not file any objections to the government's trial exhibits at any time prior to the June 7 and 8, 2006 pretrial conference, is disingenuous at best.

The above review of interrelationship between the Pretrial Order (doc. no. 42), dated March 1, 2006, and the Revised Order of Court (doc. no. 44, replacing doc. no. 31), dated March 2, 2006, is important to gain any understanding of the workings of counsel and the Court at that time.  This interrelationship is demonstrated by the last paragraph of the Revised Order of Court as follows:

> Please note that the Pretrial Order of March 1, 2006, requires that all trial exhibits contain exhibit numbers and Bates Nos., plus a trial exhibit chart containing bar codes and other specific information.  The above reproduction process, including computer discs, must produce a work product that will permit the parties (at their own expense) to display their respective trial exhibits to the Court and the Jury using a bar code or other system, on the courtroom displays using the courtroom technology.  All trial exhibits must be so displayed at trial.

Further, to demonstrate that all counsel knew that the case process was going to rely on the electronic database, the Court quotes in its entirety its Order of Court regarding use of courtroom technology (doc. no. 45), entered March 15, 2006:

> The parties are hereby ordered to use trial presentation technology and courtroom technology, and trial exhibit summaries (pursuant to Rule 1006 of the Federal Rules of Evidence), to the fullest extent possible.

No objection to this Order was ever filed.

-19-

### III.  KNOWLEDGE OF LARGE NUMBER OF DOCUMENTS BY DEFENSE COUNSEL IN FEBRUARY 2006 DURING DISCUSSION OF TERMS OF PRETRIAL ORDER

From the beginning, counsel for defendant complained that there were over "100 boxes of documents" (approximately 300,000 documents) (doc. nos. 26 and 33)[1], and sought the Court's assistance to order the government to promptly produce the documents "well ahead" of the normal time schedule, as well as plead with the Court to require the government to pay one-half of the copying costs.  Despite the government's protestations, the Court granted these unusual requests of defendant - - promptly requiring the government to produce the documents, in such a way to place bates numbers., or other numerical system, on the documents, at one-half of the costs to the government.  See Order of Court (doc. no. 31), and its revision (doc. no. 44).

In return, defendant agreed (along with the government) to promptly review the produced documents and the government's trial exhibits and provide objections to the Court by May 15, 2006.  See ¶ 3c. of doc. no. 42.  It is important to note that, at no time during this process, either prior or subsequent to the entry of the Pretrial Order, did counsel for defendant raise any objection to that portion of the Pretrial Order relating to the timetable for identification of trial exhibits or the making of objections thereto, nor did defendant object to the ruling by the Court thereon "at or before the June 7 and 8, 2006 pretrial conference" See ¶ 3c.  In fact, the timing of

---

[1]In Defendant's Motion to Require Parties to Share in the Expense of Document Reproduction, defendant stated: "The government has represented that it is in possession of approximately 100 boxes of documents as a result of the grand jury investigation, as well as various forms of electronic media.  The government has also stated that it is continuing to gather documents."  Doc. no. 26.  Later, in Defendant's Emergency Motion for Status Conference and Access to Rule 16 Material, defendant stated: "Ms. Eddy explained that the defense intended to continue inspecting the voluminous documents (100 boxes) in order to timely prepare motions."  Doc. no. 33.

the identification of the government trial exhibits on April 21, 2006, the "meet and confer" of counsel on May 11, 2006, and the chart of objections and responses due on May 15, 2006, was designed expressly to provide the Court with several weeks to review the trial exhibits and objections and thus be in an informed position to rule on the objections "at or before the June 7 and 8, 2006 pretrial conferences."

## IV.  GOVERNMENT'S COMPLIANCE WITH PRETRIAL ORDER (DOC. NO. 42) AND REVISED ORDER OF COURT (DOC. NO. 44)

The government fulfilled its obligation to produce the documents through the scanning procedure.  At least, no motion to compel ever was filed by defendant after the entry of doc. nos. 42 and 44.

On schedule, on April 21, 2006, the government filed a government's Notice of Serving Preliminary Exhibit List.  Doc. no. 83.  At no time did counsel for defendant file a motion to compel relating to the adequacy of the government's compliance with its pretrial obligation (doc. no. 42) set forth in paragraph 3(c)(2) ("The government shall provide to the defendant a copy of the documents/exhibits (with bates numbers and exhibit numbers) it intends to use at trial on or before April 21, 2006, to be timely supplemented . . . .")  Defendant never filed a motion to compel the government to provide defense counsel with a paper copy of each of the approximately 1350 trial exhibits.  Defendant never filed a motion to compel complaining that the government's trial exhibit list was captioned "preliminarily."  Defendant never filed a motion to compel, or to modify the Pretrial Order, to add an additional column to the trial exhibit chart (due May 15, 2006) requiring the government to set forth its legal theory relating to each trial exhibit.  And, defense counsel never filed a motion to clarify who had responsibility to prepare

the trial exhibit chart.

Further, defense counsel never filed either a motion to modify the time schedule of the Pretrial Order (until June 6, 2006 - - at 11:40 AM, less than 21 hours before the start of the June 7, 2006 pretrial conference at 8:15 AM which had been scheduled by agreement of counsel over three (3) months earlier on March 1, 2006), nor a motion to extend any scheduled pretrial dates.

On May 5, 2006, defendant filed a Notice of Serving Preliminary Exhibit List in Accordance with this Court's March 1, 2006 Pretrial Order.  Doc. no. 119.  Defendant did not file any pleading indicating any problem with the government's document production, or with government's April 21, 2006 trial exhibit list.  Defendant also did not file any objections to the upcoming scheduled May 11, 2006 meeting of counsel "in an effort to agree on admissibility of joint exhibits."

The Pretrial Order provided for the parties to meet, after having had the opportunity to review each other's trial exhibit lists (government's trial exhibits since April 21, 2006 and defendant's trial exhibits since May 5, 2006), to reach agreement on admissibility of trial exhibits, and thereby make the "agreed-to" exhibits (i.e., joint exhibits).  Since many, if not most, of the government's trial exhibits came from the "files" of defendant, it appeared at the February 17, 2006 conference that a substantial agreement thereon was possible and so provided in the second proposed pretrial order.  See. doc. no. 23.  Such agreed-to (or "not objected to") exhibits would be "marked J-1, J-2, J-3 etc."  See doc. no. 42, ¶ 3(c)(4).

The above described trial exhibit chart was to be filed by the parties on May 15, 2006, as stated in the last two sentences of paragraph 3(c)(4) of the Pretrial Order as follows:

Additionally, a trial exhibit chart shall be provided to the Court, in hard copy and

email form, on or before **May 15, 2006**, identifying each trial exhibit by exhibit number, bates number, bar code, date of exhibit, author of exhibit, brief description of the exhibit, brief description of the nature of the objection (if any), brief description of the response thereto, and a space for the Court's ruling on the objection(s). Objections will be handled at or before the **June 7 and 8, 2006** pretrial conferences.

Again, no motion was filed by defense counsel to modify or clarify this obligation.

## V. DEFENDANT'S NON-COMPLIANCE WITH PRETRIAL ORDER (DOC. NO. 42)

On Friday, May 12, 2006, at the 7th Status Conference, the Court asked for a report of the May 11, 2006 "meet and confer" conference. See Minute Entry of May 12, 206 Proceeding, doc. no. 133. The government stated that the meeting was "unsuccessful" and that counsel for defendant left the meeting in less than one-half hour. This report was not contradicted by counsel for defendant. The Court "remind[ed] parties of the March 1, 2006 Pretrial Order requiring parties to meet and attempt to agree on joint trial exhibits . . . ." Doc. no. 133.

On May 15, 2006, the government filed Government's Notice of Providing Government Exhibits and List in Accordance with the Court's March 1, 2006, Order at Docket No. 42. Doc. no. 142. The Notice stated in paragraph 1, 2 and 3 as follows:

1. Counsel for the Government met with defendant's counsel on May 11, 2006 in an effort to reach agreement on Joint Exhibits. The defendant's counsel objected to all of the Government's proposed exhibits. Thus, the government has provided to the Court in hard-copy and e-mail form an exhibit list identifying the Government's proposed exhibits as G-1 through G-1351 in accordance with the Court's Order. A copy has been served upon the defendant's counsel as well. The summaries identified as Exhibits G-139, G-376, G-1228, G-1230, G-1238, G-1240, G-1242, G-1244, G-1289, and G-1306 have also been provided to the Court in e-mail and hard-copy form pursuant to the Court's direction at the Friday, May 12, 2006, Status Conference. (emphasis added.)
2. Scanned images of each of the Government's proposed exhibit have been reduced to disc form [approximately 240,000 documents] and will be available for viewing by the Court at the Court's convenience. The Government

will make available the necessary personnel and equipment to allow the Court's review of the scanned documents as the Court directs.  (emphasis added.)

   3.  <u>The Government in good faith reviewed defendant's proposed exhibits in advance of the May 11, 2006, meeting of counsel, and has the following position with respect to those exhibits</u> (emphasis added.):

| Ex. # | Objection |
|-------|-----------|
| 1 | Hearsay and relevance |
| 2 | Relevance |
| 3 | Authenticity (relevance unless context established) |
| 4 | Relevance |
| 5 | Relevance |
| 6 | none - - exhibit may be Joint Exhibit |
| 7 | none - - exhibit may be Joint Exhibit |
| 8 | Hearsay and relevance |
| 9 | none - - exhibit may be Joint Exhibit |
| 10 | none - - exhibit may be Joint Exhibit |
| 11 | none - - exhibit may be Joint Exhibit |
| 12 | Hearsay |
| 13 | Relevance |
| 14 | Relevance |
| 15 | Relevance |
| 16 | Relevance |
| 17-22 | Relevance |
| 23-31 | Relevance |
| 32 | Relevance |
| 33 | Relevance |
| 34 | Relevance |
| 35 | Relevance |

Since counsel for defendant refused to conduct a meaningful "meet and confer", and since counsel for defendant objected to all government trial exhibits and failed to work on the "trial exhibit chart," the government provided its trial exhibit list (together with the electronic database) to the Court with columns setting forth exhibit numbers, bates numbers, and description of author and document, but with no objections listed from defendant, because defendant failed to provide any specific objections to the government.  The government agreed to five (5) of defendant's trial exhibits and objected to 30 trial exhibits setting forth the specific objections with only one objection per exhibit.  Doc. no. 142.

From defense counsel, on May 15, 2006, there was silence - - no objections to the government's trial exhibits were filed, no motion to modify Pretrial Order, no motion for extension of time for a few days to come into compliance.  Nothing.

## VI.  <u>NO TIMELY REQUEST FOR EXTENSION OF TIME BY DEFENDANT TO ENLARGE THE MAY 15, 2006 DATE</u>

As stated above, instead of honoring the May 15, 2006 deadline; instead of filing a motion to amend the pretrial schedule relating to the trial exhibits; instead of filing a motion to extend said date, counsel for defendant ignored the May 15, 2006 date and filed no objections to the government's trial exhibits.  Thus, on May 17, 2006, the Court entered an Order (doc. no. 152) ruling that, in the absence of specific objections by the defendant to the government's trial exhibits, said exhibits would be admitted into evidence.

The text of the Order of Court (doc. no. 152) is as follows:

## A. GOVERNMENT'S TRIAL EXHIBITS

Since the Court has received no specific objection from Defendant as to Government's trial exhibits (G-1 through G-1351) (which were served upon counsel for Defendant in discovery and were set forth on the Government's "Preliminary Exhibit List" served on or about April 21, 2006 (see doc. no. 83)), as required by paragraph 3.c. of the Pretrial Order in Criminal Case (dated March 1, 2006) (doc. no. 42), Government trial exhibits G-1 through G-1351, are admitted into evidence, subject only to possible relevancy objections (see minute entry, doc. no. 133, ¶ 1) which may result solely from future rulings on the Motion to Suppress (doc. no. 55) or any Motion to Dismiss.

The Government's summary trial exhibits (G-139, G-376, G-1228, G-1230, G-1240, G-1242, G-1244, G-1289 and G-1306) will be ruled upon at the early June, 2006 Pretrial Conference.

## B. DEFENDANT'S TRIAL EXHIBITS

Since the Court has received specific objections from the Government to certain Defendant's trial exhibits (see doc. no. 142) (timely filed on May 5, 2006), the Court will rule on the objected-to defendant's trial exhibits at the early June 2006 Pretrial Conference (D1 through D5, D8, D12 through D35).

Since the Court has received no specific objection from the Government to Defendant's trial exhibits, D6, D7, D9, D10 and D11, said trial exhibits are admitted into evidence.

## C. REQUIREMENTS OF PRETRIAL ORDER OF MARCH 1, 2006 (DOC. NO. 42)

Pursuant to paragraph 3.c.(2), the Government was required to "provide to the defendant a copy of the documents/exhibits (with bates numbers and exhibit numbers) it intends to use at trial on or before **April 21, 2006**, to be timely supplemented as the government gathers additional documents/exhibits (with bates numbers and exhibit numbers)."   The Government complied with said requirement on April 21, 2006.  See doc. no. 83.

Pursuant to paragraph 3.c.(3), Defendant was required to "preliminar[ily] designate for the government the documents/exhibits (with bates numbers and exhibit numbers) it intends to use at trial on or before **May 5, 2006**, to be timely supplemented as the defendant gathers additional documents/exhibits (with bates numbers and exhibit numbers)."   Defendant complied with said requirement on May 5, 2006.  See doc. no. 119.

Pursuant to paragraph 3.c.(3), second sentence, "[c]ounsel for the parties will meet on or before **May 11, 2006** in an effort to agree upon the admissibility of joint exhibits.  Counsel for Government reported at the Seventh Status Conference on May 12, 2006, that counsel for Defendant left the meeting after less than one-half hour.  This statement was not rebutted by counsel for Defendant at said conference.  Whether a "good faith" "effort to agree upon the admissibility of joint exhibits" occurred at said May 11, 2006 meeting will be determined at a future hearing.

Irregardless, there was no agreement on the admissibility by counsel for Defendant as to any of the Government's approximately 1300 trial exhibits, and thus no "Joint Exhibit Binder  (which may be presented in more than one Volume) [was] provided to the Court by the government on or before **May 15, 2006."**

Further, the last two sentences of paragraph 3.c.(4) state as follows:

> Additionally, a trial exhibit chart shall be provided to the Court, in hard copy and email form, on or before **May 15, 2006**, identifying each trial exhibit by exhibit number, bates number, bar code, date of exhibit, author of exhibit, brief description of the exhibit, brief description of the nature of the objection (if any), brief description of the response thereto, and a space for the Court's ruling on the objection(s). Objections will be handled at or before the **June 7 and 8, 2006** pretrial conferences.

The Government in a timely manner provided "brief description of the nature of the objection (if any)" concerning Defendant's Trial Exhibits.  (doc no. 142).  The Court above has admitted into evidence Defendant's Trial Exhibits which the Government did not object to, and will rule on the objected-to trial exhibits of Defendant at the early June 2006 Pretrial Conference.    One the other hand, counsel for Defendant did <u>not</u> on May 15, 2006, nor even on May 16, 2006, provide to the Court "brief description of the nature of the objection (if any)" concerning any of the Government's trial exhibits.  Thus, the Court above has admitted said Government trial exhibits into evidence.

Finally, counsel for the parties are again reminded that they will be required to strictly comply with the pretrial requirements.  Counsel for Government and Defendant drafted and consented-to the March 1, 2006, Pretrial Order (doc. no. 42) (except to certain specific objections of the Government which are not relevant here) with specific dates and obligations as to trial exhibits, so that by May 15, 2006, the Court would know which trial exhibits were admissible without objection and which trial exhibits were objected-to with "brief description of the nature of the objection".  Thus the

Court would be able to review the objected-to trial exhibits between May 15, 2006 and the June 7 and 8, 2006 Pretrial Conference, and thereby conduct an effective and meaningful Pretrial Conference as to the objected-to trial exhibits.  (See doc. no. 43 at 3.c.(4) - -  "Objections will be handled at or before the June 7 and 8, 2006, Pretrial Conference.")

Based upon the above rulings, the only trial exhibits which will need to be considered at the June 7 and 8, 2006 Pretrial Conference are the Government's summary exhibits and the approximately 30 objected-to trial exhibits of Defendant, because all other trial exhibits of the Government and Defendant are admitted into evidence.  Since these matters can be handled on those two days, the expanded pretrial conference dates of June 5, and 6, 2006 are cancelled.

Despite the Order of Court of May 17, 2006, - - continued silence - - counsel for defendant never filed with the Court any objections to the government's trial exhibits before the June 7, 2006 pretrial conference; nor attached any such objections to any motion to modify or reconsider the May 17, 2006 Order.  The Court eventually had to order, <u>sua</u> <u>sponte</u>, defense counsel to give the objections to the Court at the June 7, 2006 conference.  See Minute Entry for Proceeding, doc. no. 213.

## VII.  <u>DEFENSE COUNSEL CHANGES TACTICS</u>

So what was defense counsel doing?  After obtaining the Orders of Court (doc. no. 42 and 44); after receiving document production of the "100 boxes", in electronic form, at one-half of the expense of the government; and after receiving accelerated "rights" to discover the government's witness list (6 weeks before trial), the government's preliminary trial exhibit list (6 months before trial), and the <u>Jencks</u> material (10 weeks before trial) (see doc. no. 42) - - all over the strenuous objection of the government (doc. no. 35) - - defense counsel abruptly changed tactics.

Instead of complying with the pretrial schedule, defendant found time to prepare and file a motion to suppress (doc. no. 55) and a motion to dismiss (doc. no. 180), well ahead of the pretrial schedule, while delaying the trial exhibits analysis and filing of objections.  Counsel for defendant filed a motion to suppress (doc. no. 55) on April 7, 2006, 66 days ahead of schedule (see doc. no. 42)  and his motion to dismiss (doc. no. 180), 17 days ahead of schedule, together with a supporting brief of 79 pages (doc. no. 207 - see also doc. no. 181).

Counsel for defendant now wants "phase two" completed first (i.e., motion to suppress and motion to dismiss), having already reaped the above benefits of "phase one" from the government without complying with defendant's obligation under "phase one" of the Pretrial Order.

How does defense counsel seek to achieve this continued non-compliance with the Pretrial Order?  Defense counsel filed (1) a Motion for Reconsideration (doc. no. 183) of the Court's May 17, 2006 Order Pertaining to the Admissibility of the Government's Exhibits (Docket No. 152), on the Friday before Memorial Day weekend, May 26, 2006, at 5:10 PM, with supporting brief filed at 5:17 PM, and (2) a Motion to Modify (doc. no. 203) the Court's Pretrial Order dated March 1, 2006 (doc. no. 42), on June 6, 2006 at 11:40 PM, 21 hours before the day of the scheduled June 7, 2006 pretrial conference.  And, defendant filed his Motion to Dismiss (doc. no. 180), on May 26, 2006, the very day the Motion for Reconsideration (relating to trial exhibits) was filed.

### A.  <u>Motion for Reconsideration (Doc. No. 183)</u>

Defendant raises numerous arguments in the Motion for Reconsideration, as follows: (a) the government provided defense counsel a trial exhibit list with exhibit numbers and

corresponding bates numbers and descriptions, but no "paper copies" - - already discussed by the Court above; (b) the government's trial exhibit list of approximately 1350 exhibits was "preliminary" (as of course was defendant's trial exhibit list - see doc. no. 119) - - already discussed by the Court above; (c) some of the government trial exhibits "were grouped together," instead of being "single exhibits" - - if true, this issue should have been discussed at May 11, 2006 "meet and confer" conference ; (d) unbelievably, in this electronic age, defense counsel did not have sufficient time to "print" government's trial exhibits and then analyze them - - the Court finds it perplexing that defendant would petition the Court for an order requiring the creation of an electronic database, at one-half of the government's expense, and then print every trial exhibit?, and defense counsel contends that "[u]nfortunately, the review of an electronic image takes longer and is more involved than the review of a hard copy of a document (see. doc. no. 183 at ¶ 10)" - - the Court questions, why?  The Court personally has reviewed the entire database of government's trial exhibits, and thus defense counsel's position is not credible and is inconsistent with prior positions of defendant; (e) the Pretrial Order requires the creation of a trial exhibit chart but "does not, however, state who was to prepare the chart nor indicate that the defense was to submit anything other than defense's exhibit chart" (doc. no. 183 at ¶ 25) - - why then did defense counsel agree to the Pretrial Order?, why did defense counsel not file a motion to clarify?, how was the Court to rule on defendant's objections to the government's trial exhibit, at the June 7 and 8, 2006 pretrial conference if defense counsel never submitted said objections to the Court?; (f) the changes from the government's first list of 1358 trial exhibits to its second list of 1351 trial exhibits confused defense counsel, and "defense counsel was forced to do an analysis and cross-reference index of over 1350 exhibits contained in each list" (doc. no. 183 at

¶ 28) - - the Court has reviewed both lists and the exhibit and bates numbers and, as stated above, the entire electronic database, and the Court did not find itself confused or overwhelmed by the task - - again at no time did the counsel for defendant file a motion to compel or motion for clarification.  Further, as set forth below, defense counsel had time to do countless non-pretrial order matters and certain "phase two" pretrial matters substantially ahead of schedule; and (g) lastly, defendant's submission of its so-called "good faith written objections were given to the government on Friday, May 26, 2006 - - somehow, after filing the "second phase" documents - Motion to Suppress and Motion to Dismiss - defense counsel now were able to overcome the foregoing obstacles and submit objections to the government - - but still none to the Court.  The objections were never given to the Court, as stated above, until the Court so directed at the June 7, 2006 pretrial conference.  Thus, it appears that defense counsel purposefully prevented the Court from ruling on defendant's objections in accordance with the agreed-to "phase one" time schedule.

Defense counsel contends that they can totally disregard the agreed-to Pretrial Order, while gaining the benefits thereof, and that the Court is without authority to remedy this conduct because to do so "will operate to deny Dr. Wecht his constitutional right of due process and fair trial . . . ."  Doc. no. 184, page 1.

In the proposed order attached to the Motion for Reconsideration, defense counsel seeks an order setting a new date for the completion of the trial exhibit chart with government now adding its responses to defendant's objections, and seeks "a further order on the methodology for resolving objections . . . ."  The parties and the Court had crafted a "methodology" (i.e., phase one), in the Pretrial Order (doc. no. 43), agreed to by the defendant, and defense counsel ignored

the agreed-to methodology.[2]

## B. <u>Motion to Modify (Doc. No. 203)</u>

Defendant reiterates the same theme in the Motion to Modify (doc. no. 203) filed on

June 6, 2006, but by that date it was impossible for the Court to review any objection and rule

thereon at the June 7, 2006 conference.  Then defense counsel turned the cards face-up, in the

proposed Order of Court, attached to the Motion to Modify, as follows:

> AND NOW, to-wit, this _____ day of June, 2006, this Court modifies its
> Pretrial Order (Document No. 42) as follows:
> 1.      Paragraph 3C is modified, such that objections to the
> Government's summary exhibits, as well as the Defendant's preliminary exhibits,
> will be heard by the Court on _____, 2006.
> 2.      Paragraph 6 of Document No. 42 is modified, such that proposed
> jury instructions, verdict slips, voir dire and proposed jury questionnaire are now
> all due on or before _____, 2006.

Not only does defense counsel in said Motion to Modify now seek to delay the rulings on

trial exhibits but also to delay the filing of and rulings on "proposed jury instructions, verdict

slips, voir dire and proposed jury questionnaire."  Under defendant's proposed Order of Court,

the trial could not occur on October 16, 2006, and probably not on October 16, 2007, and

defendant would have successfully delayed the agreed-to trial date - - but the right of the public

to have a fair, just and timely determination of the issues raised in this important public

corruption case would have been thwarted.  See the mission of the United States District Court

for the Western District of Pennsylvania at www.pawd.uscourts.gov.

In the Motion to Modify, defense counsel cites the transcript of the February 17, 2006

---

[2]Nevertheless, although the Court will not rewrite the pretrial schedule to accommodate
defense counsel's changed tactics, the Court will rule on defendant's untimely objections in
Section XI hereof.

second status conference at which the Court stated a willingness to hear any concerns relating to

the sequence of tasks in the draft Pretrial Order handed to counsel at the February 17, 2006

conference.  Defense counsel, however, fails to disclose that said statement was in the context of

counsel preparing the proposed final Pretrial Order due February 24, 2006, at noon - - not an

invitation for a last minute change, on the eve of the June 7, 2006 pretrial conference.[3]

## C. Defendant's Additional Arguments

Defense counsel makes three further arguments in the Motion for Reconsideration and

Motion to Modify.  First, defense counsel states they did not have sufficient time to focus their

attention on trial exhibits.  However, since the filing of the Pretrial Order of March 1, 2006 (doc.

no. 42), defendant has filed approximately 55 pleadings, briefs and other documents in this case,

including the motion to suppress and the motion to dismiss which, as stated above, were filed

well ahead of schedule.  In addition, defendant had time to prepare and file a brief in support of

the motion to dismiss of approximately 79 pages (doc. no. 181).  Then, after filing the motion to

dismiss and numerous other pleadings before the close of the clerk's office at 5:00 pm on Friday,

May 23, 2006, Memorial Day weekend, defendant filed the instant motion for reconsideration at

_____

[3]Defense counsel also argues, in the Motion to Modify (doc. no. 203 at ¶ 4), that defense
counsel will not respond to the government's objections to defendant's trial exhibits as follows:
>     The Defendant respectfully submits that admissibility issues concerning the
>     Defendant's preliminary exhibit list cannot be done at this time.  First, the list is
>     preliminary, which the Court contemplated in its Pretrial Order.  Second, to
>     require the Defendant at this juncture, in June, to discuss relevancy objections to
>     its exhibits would compel the Defendant to provide advance notice to the
>     Government of its defense theories.  The Defendant intends to reserve its defense
>     theories until trial, specifically, until hearing the Government's evidence against
>     the Defendant.  Such a reservation means that the defense cannot respond to
>     relevance objections asserted by the Government at this time.

Defense counsel does not explain the reason that they agreed to do so in the Pretrial Order (doc.
no. 42).

5:10 PM without attaching any objections to the government's trial exhibits and, in essence, requesting the Court to setup a new pretrial schedule to fit the convenience of defense counsel. Defense counsel has attempted to re-work the pretrial schedule and manipulate the pretrial schedule to change the order in which tasks would be performed, without leave of Court, and without a motion for extension or clarification.

Secondly, without taking any responsibility for failure of defense counsel to comply with numerous pretrial requirements, defense counsel blame the government - - compliance of defense counsel was "hindered by the government's dilatory bombardment on Dr. Wecht of over 300,000 pages of ever-changing documents."  Doc. no. 184 at page 4.  This statement is simply false.  It was defense counsel who requested to have <u>every</u> document placed into the electronic database at one-half the government's expense, and the Court so ordered; and thus that database, organized by bates numbers, is the proper reference for the government's trial exhibits.

Lastly, implicit in both defendant's Motion for Reconsideration and Motion to Modify is the proposition that working in the electronic database is overwhelming to defense counsel - - "the enormous problems created by the manner in which the government has listed exhibits." Doc. no. 184 at page 1.  Defense counsel provided no explanation as to how the Court with its very limited staff (i.e., no additional staff has been hired to assist the Court for this case) is able to work with, and maneuver through, a very functional, user-friendly electronic database, while defense counsel from a well-respected and very prestige international law firm of "nearly 1000 lawyers," in twelve (12) cities throughout the world, is overwhelmed and "hindered".

See website of this international law firm, known for the "Most Innovative Use of Technology," as follows:

* * *

Our practice is at once regional, national and international in scope, cutting edge, complex, and dynamic.

* * *

Our litigation engagements – including, among other substantive areas, insurance coverage, intellectual property, real estate, white-collar criminal, construction, professional liability, environmental, toxic tort, products liability, franchise, tax, bankruptcy and insolvency, antitrust and competition, employment, benefits, and securities – are among the largest and most attractive enjoyed by any law firm . . . .

* * *

Our intellectual property practice, with approximately 100 practicing lawyers, and our technology practice, serving growth companies in disciplines such as biotechnology, internet services, medical devices, and information systems, are examples of how this continuous process of self-evaluation has borne fruit.

* * *

Our lawyers practice at the peak of our profession.

* * *

Our Technological Advantage

In 2002, 2003 and 2004, *CIO Magazine* conferred its prestigious "CIO 100 Award" on [the Firm]. This annual list of 100 enterprises is composed largely of great global corporations that are recognized for extraordinary achievements in the technology field. [This Firm] is the only law firm in the world to receive three consecutive CIO 100 Awards, and is one of only three law firms to be recognized in the 17-year history of the Award.

In February 2004, [the Firm] was awarded American Lawyer Media's *Law Technology News* 2003 Award for "Most Innovative Use of Technology."

-35-

* * *

As [this Firm] has grown in size to approximately 1,000 lawyers, the system has enabled the firm's management to more easily review important work done by teams of lawyers in multiple offices.

. . . All [of this Firm's] offices are seamlessly linked together and utilize state-of-the-art technology which provides lawyers with access to a wide range of computer-based communications and productivity tools — accessible from the office, when traveling, and when working from home. Web-based technologies are used for both client and internal collaboration and communications, including client extranets that add value to the legal services provided by the firm. [The Firm] continuously evaluates emerging products and technology trends for their applicability to support [this Firm's] lawyers' practices and the firm's operations.

[This Firm] has a strong belief in the value of technology and is committed to using it to facilitate client service and law firm business."

## IX.  DEFENSE COUNSEL'S EFFORTS TO DELAY THE TRIAL

But defense counsel has one more card to turn over. Although the Court has consistently informed all counsel that the case will try on the agreed-to schedule, and that absent unusual circumstances, the government will not be permitted to include, in the October 16, 2006 trial, any new charges in a superceding indictment (if any) filed after June 30, 2006, defense counsel in its Motion to Modify (doc. no. 203 at page 3) states:

Additionally, it is the position of the defense that any superseding indictment filed now is not in compliance with the Pretrial Order and will necessitate a motion for relief from the current trial date in order to preserve and afford the Defendant his due process rights.

Again, the Court informs all counsel that the Court is committed to the agreed-to October 16, 2006 trial date.

-36-

## X.  POST-TRIAL CONTEMPT HEARING

After the trial, the Court will schedule a contempt hearing to adjudicate whether defense counsel's conduct in repeatedly ignoring this Court's Pretrial Order without taking appropriate steps to modify said Order constitutes contempt and, if so, what would be the appropriate penalty.  *In re Morrisey, 168 F.3d 134 (4th Cir. 1999).*

## XI.  COURT'S RULINGS ON DEFENDANT'S "GOOD FAITH" AND UNTIMELY OBJECTIONS TO THE GOVERNMENT'S TRIAL EXHIBITS

The Court received defendant's "preliminary" objections (doc. 211) to government's trial exhibits, which objections were filed at 1:59 PM on June 7, 2006, <u>after</u> the conclusion of the June 7, 2006 pretrial conference.

Defendant's objections consisted of 92 pages of objections, and these objections, described by defense counsel as "good faith written objections" (doc. no. 181 at ¶ 31), objected to 1348 of 1351 trial exhibits of the government.  Only exhibits G-12, G-13, and G-224 have no objections.  As to the other 1348 exhibits, defendant has multiple objections to each exhibit, as set forth in the following chart created by the Court:

|  | OBJECTION | GOVERNMENT EXHIBIT NUMBERS |
|---|---|---|
| 1. | Relevance (FRE 402) | All (note exceptions 12-13, 224) |
| 2. | Hearsay (FRE 802) | 10, 17-23, 32-33, 35-41, 44-end. Exceptions: 224, 377, 1271-4, 1347-9 |
| 3. | Authentication (FRE 901) | 2-5, 15-20, 22, 25-37, 41-46, 48-end Exceptions: 168, 170-171, 174, 176-177, 180, 184-85, 194, 203-17, 224, 371, 375, 1347-9 |
| 4. | Foundation | 1-11, 15-27, 30-34, 41-46, 48-end. Exceptions: 224, 371, 375, 1347-9 |
| 5. | Chain of Custody | 1-9, 51-end. Exceptions: 371, 375, 1347-9 |

| | | |
|---|---|---|
| 6. | Prejudice (FRE 403) | 131, 369, 1347-9 |
| 7. | Unknown writing/unidentified handwriting/unknown handwriting/ handwriting unknown/multiple author(s) | 17, 20- 21, 96-97, 111-114, 175, 183, 190, 229-30, 347, 399-402, 404, 583-4, 598, 607, 611, 616, 619, 632, 636, 642, 652, 658, 663, 690, 990 |
| 8. | Unsigned Letter/unsigned document | 179, 193, 428, 442, 454, 517, 520-2, 524, 526-7, 531, 642, 761, 994-9 |
| 9. | Not a single exhibit | 188-9, 196-202, 347-354, 403, 967, 982, 1226-7, 1229, 1308-22 |
| 10. | Character Evidence Not Admissible to Prove Conduct (FRE 404) | 1 |
| 11. | Duplicative/Multiple copies of doc. | 18-20, 23-27, 40-50, 55-57 |
| 12. | Government file page w/ comment | 67-96 |
| 13. | Was beyond statute of limitations | 109 |
| 14. | Incomplete | 193, 195, 378 ,411, 442, 454, 481-2, 656, 658 |
| 15. | Unmarked summary or recreation; numerous Hearsay markings/blank pages with Hearsay markings | 51-55, 58 |
| 16. | Error (FRE 1006) | 376 |
| 17. | Not a document described in exhibit list | 443-8, 455-459 |
| 18. | Redacted document | 477-8, 480, 484-5, 966 |
| 19. | Document over 10 yrs. old | 635-6 |
| 20. | Appears to be summary w/out underlying documents | 1289 |
| 21. | Issue of Law for the Court | 14 |

Interestingly, defense counsel's "good faith objections" even challenge the "foundation"

and "chain on custody" of defendant's own records, including personal tax returns, corporate tax

returns, and corporate general/profit loss ledgers (G-203 through G-223), and the "authenticity"

of the "Wecht Corporate General Ledger/Draft and Loss" documents (G-218 through G-223).

Countless other business records of Dr. Wecht are objected to on the basis of "Relevance (FRE

402); Hearsay (FRE 802); Authentication (FRE 901); Foundation; and Chain of Custody."

The Court sustains certain objections of defendant set forth in doc. no. 211, overrules

certain objections in doc. no. 211, and excludes certain trial exhibits <u>sua</u> <u>sponte</u> (although said

specific objections were not made by defense counsel), as follows:

1.   Item 1 - - ("Relevance (FRE 402)), item 2 ("Hearsay (FRE 802)"), item
3 ("Authentication (FRE 901)", item 4 ("Foundation"), and item 5 ("Chain of
Custody") Objections - - Overruled, except for any relevancy objection resulting
from any ruling in defendant's favor on motion to dismiss (doc. no. 180).  See
doc. no. 152 at page 1.  Most of the objected-to documents are business records,
government records, or defendant's personal records.

2.   Item 6 - - "Prejudice (FRE 403)" objection - - Autopsy photos (G-131)
and certain Dr. Wecht's letters to public officials (G-369, G-1347, G-1348, G-
1349) - - Court will rule on this objection as to those documents at trial or on
motion in limine.

3.   Item 7 - - "Unknown writing/unidentified handwriting/unknown
handwriting/handwritings unknown/multiple author(s)" objection.  Overruled.  A
review of said exhibits discloses that they are primarily business records and
relevant documents concerning the interface of ACCO or other county personnel
with Dr. Wecht's private autopsy work (see G-112).  This type of objection should
have been discussed and worked professionally among counsel at or before the
May 11, 2006 "meet/confer" meeting.  See Pretrial Order (doc. no. 42).

4.   Item 8 - - "Unsigned letter/unsigned document" objection - - Overruled
- - Said exhibits include letters (and drafts of letters) to and from Dr. Wecht
relating to the private work.  See ¶ 3 above (re: item 7).

5.   Item 9 - - "Not a single exhibit" objection - - Overruled - - See ¶ 3
above (re: item 7).

6.   Item 10 - - "Character Evidence Not Admissible to Prove Conduct
(FRE 404)" objection (G-1) - - Court will rule on objection at trial or on motion in

limine.

7.  Item 11 documents - - Duplicative/Multiple Copies of Doc. - - Objection sustained only as to the duplicate exhibits containing Grand Jury Exhibit Labels (unless redacted and if not otherwise a duplicate) (e.g., GJ-US-01-000714 (G-48)), but a document is not a so-called "duplication" if the handwritten notes are on the "duplicate"and not on the "original" document.

8.  Item 12 documents - - objections sustained only as to the "government file page with comment," if said page was included in the original production (e.g., GJ-US-01-001003 (G-67) and GJ-US-01-001014 (G-68)).

9.  Item 13 documents - - "Log Book" (G-109) with "Starting Date of Jan. 11, 2002" - - the "beyond statute of limitations" objection is Overruled.

10.  Item 14 documents - "Incomplete" objection - - sustained only as to allegedly "missing cover sheet relating to "faxes" from the "Coroner's Office" (G-193, G-411), if cover page was included in the original production; and sustained as to G-195 only if the "original" production included more pages. Defendant objects to Exhibit 454 as being only page 1 of (GJ-1C-70-000030) of a 2 page letter - - however, if defense counsel will "double-click" in the index on GJ-1C-70-000030, then document GJ-1C-70-000031 will appear, which is page 2 of the 2 page letter.  As to Exhibit 442, while the last page of this report, in letter format, of Dr. Wecht, dated November 8, 2001, leaves room to begin another paragraph, the document appears to be complete, at least as produced to the Grand Jury.

11.  Item 15 documents - - objections to G-51 through G-55, and G-58 on the basis of "Unmarked summary or recreation; numerous Hearsay markings/blank pages with Hearsay markings" - - Overruled - - said exhibits are business record (i.e., Wecht invoices for services rendered, cover letters, airline travel agency invoices, electronic airline tickets, "limousine service" receipts of payment, etc. - - many with "fax" markings/information).

12.  Item 16 - - "Error (FRE 1006)" objection - Overruled (except preserving defendant's Rule 403 objection).  See transcript of June 7, 2006 pretrial conference and doc. no. 213.

13.  Item 17 - - "Not a document described in exhibit list" objection, regarding G-443 through G-448 and G-455 through G-459 - - Overruled - - while the descriptions could be more complete, the descriptions are more than adequate - - this type of matter should have been discussed and worked out professionally among counsel at or before the May 11, 2006 "meet/confer" meeting.  See Pretrial

Order (doc. no. 42).

     14.  Item 18 - - "Redacted document" objection (G-477 through G-480, G-484, G-485, G-966) - Overruled - - the documents are complete except for the redaction of the name of the "deceased" or claimant, and are business records (e.g., cover letters of Dr. Wecht, statements for services of Dr. Wecht, letters requesting the services of Dr. Wecht.)  Also, the exhibits appear to be "as produced" to the government.  Further, G-966 (GJ-1C-112-000600 through -000616) is captioned, "Cyril H. Wecht, M.D., J.D., Trial Testimony and Depositions," and contains no "redactions."

     15.  Item 19 - - "Documents over 10 years old" - - objection (G-635 and G-636) - - sustained.

     16.  Item 20 - - "Appears to be summary without underlying documents" objection (G-1289) - - Overruled (except preserving defendant's Rule 403 objection).  See ¶ 12 above.  Underlying documents have been previously produced electronically and do not need to be reproduced.[4]

     17.  Item 21 - - "Issue of Law for the Court" objection (G-14) - - the Court will rule on the objection at trial or on motion in limine.

     Additionally, the Court sua sponte excludes the following trial exhibits of the government:

     1.     Objection to any exhibit containing FBI label or other marking (unless redacted or particular page is moved) other than Bates Nos. - - e.g., 1A-21-000076 (G-390)

     2.     Objection to pages of Exhibit G-1278 starting at 1A-220-000001 which do not relate to Dr. Wecht

     3.     Objection to non-Wecht portions of Allegheny County Arthur Anderson Financial Reports - - G-7, G-8, and G-9

     4.     Objection to non-Wecht portion of the general ledgers for the Western School of Business - - G-1326, G-1327, and G-1330

---

[4]At the June 7, 2006 pretrial conference, the Court admitted the following summary exhibits of the government into evidence: G-139, G-376, G-1228, G-1230, G-1238, G-1240, G-1242, G-1244 and G-1289.  The Court "preserv[ed] defendant's Rule 403 objection to exhibits G-376 and G-1289."  See doc. no. 213.

5.      The hotel letterhead of 1B1-20-002835 through -2837 (in G-318 (Box 20)).

6.      The cover letter of G-403 (GJ-1C28-000001 through -0002)

Further, the parties are directed to work together to place into individual Rule 1006

summaries, by June 30, 2006, the relevant information from the following exhibits:

a.      Wecht personal tax returns - - G-203, 204, 205, 206, 207, 208, 209, and 210
b.      Wecht Pathology Accounting Records - - G-359, 360, 361, and 362
c.      ACCO's Documents re: telephone records - - G-1331
d.      ACCO's Documents re: expenditure - - G-1332
e.      ACCO's Documents re: purchasing etc. - - G-1333
f.      ACCO's Documents re: travel reimbursement - - G-1334
g.      ACCO's Documents re: expenditure - - G-1335
h.      ACCO's Documents re: expenditure - - G-1336
i.      ACCO's Documents re: purchase records - - G-1337
j.      ACCO's Documents re: purchase records - - G-1338
k.      ACCO's Documents re: office audits- - G-1339
l.      ACCO's Documents re: office fuel and maintenance records - - G-1231
m.      ACCO's Documents re: expenditure - - G-1332
n.      ACCO's Documents re: expenditure - - G-1341
o.      Wecht Corporate Tax Returns 2004 - - G-217
p.      Wecht Corporate Tax Returns 1999 - - G-212
q.      Wecht Corporate Tax Returns 2000 - - G-213
r.      Wecht Corporate Tax Returns 2001 - - G-214
s.      Wecht Corporate Tax Returns 2002 - - G-215
t.      Wecht Corporate Tax Returns 2003 - - G-216
u.      Wecht Corporate General Ledger 1999 - - G-218
v.      Wecht Corporate General Ledger 2000 - - G-219
w.      Wecht Corporate Profit and Loss 2001 - - G-220
x.      Wecht Corporate General Ledger 2002 - - G-221
y.      Wecht Corporate General Ledger 2003 - - G-222
z.      Wecht Corporate General Ledger 2004 - - G-223

The Court rules that the underlying individual documents are admissible but should be placed into summaries.  If the parties cannot reach an agreement, the government may submit the summaries pursuant to Rule 1006.


**SO ORDERED** this 14th day of June, 2006.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All counsel of record

Stephen S. Stallings, Esquire
James r. Wilson, Esquire
United States Attorney's Office
700 Grant Street
Suite 400
Pittsburgh, PA 15219

Jerry McDevitt, Esquire
Mark Rush, Esquire
Karen I. Marryshow, Esquire
Amy Barrette, Esquire
Kirkpatrick & Lockhart Nicholson Graham
535 Smithfield Street
Henry W. Oliver Building
Pittsburgh, PA 15222-2312

Walter DeForest, Esquire, on behalf of WPXI

Joseph Rodkey, Esquire, on behalf of Post-Gazette

David Strassburger, Esquire, on behalf of Tribune Review & WTAE