IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 06-0026 |
| | ) | Electronically Filed |
| CYRIL H. WECHT | ) | |

**MEMORANDUM REGARDING SECOND PRETRIAL ORDER
(DOC. NO. 519) AS TO "BRADY/ GIGLIO/ JENCKS ACT/ IMPEACHMENT
MATERIALS - RULE 404(B)" DISCOVERY**

This Court's Second Pretrial Order (doc. no. 519) attempts to strike a fair and appropriate balance between the constitutional rights of the accused and the legitimate interests of the government, the fair and efficient administration of justice, and the public in resolving remaining disputes over production of evidence and other pretrial matters. In resolving said disputes, in particular the substance and timing of discovery disclosures by the government (see proposed pretrial orders at docs. no. 511, 512), this Court considered the respective memoranda of law in support of the competing positions (docs. no. 517, 518), the Jencks Act, Rule 16 of the Federal Rules of Criminal Procedure and the Local Rules, and the considerable body of constitutional law that informs the determination of what evidence the government shall disclose to a defendant in a criminal prosecution and the timing of said disclosures.

This Memorandum concerns the substance and timing of, as defendant frames it, "*Brady/ Giglio/* Jencks Act/ Impeachment Materials - Rule 404(b)." See "Defendant's Memorandum of Law in Support of Proposed Amended Pretrial Order (Doc. No. 512)" (doc. no. 517), at 5. The government asserts in its memorandum that it takes its disclosure obligations seriously in this and every case, and that it has already disclosed all information in its possession or control that

arguably is discoverable *Brady/ Giglio* evidence (listing numerous examples), and that any Jencks Act statements or reports, which by law do not need to be produced until after a witness has testified, will be provided to defendant each Wednesday preceding the week each witness for whom any Jencks Act materials (usually FBI Form 302 statements) exist is expected to testify. "Defendant does not believe that the government is in compliance [with *Brady*] due to its improper reliance on post-conviction standards for *Brady* violations rather than the law governing pretrial *Brady* obligations." *Id*. at 5.  Defendant also moves this Court (albeit, implicitly) to direct a "date certain for the production of Jencks material" well in advance of trial, so as to avoid potential undue delays caused by adjournments should defendant need additional time to consider any Jencks materials after the witness testifies.  *Id*. at 6.

**Relevant Discovery Standards**

As a colleague of this Court has recently summarized, governmental disclosure of evidence in criminal cases is governed and limited by Fed.R.Crim.P. 16(a)(1),[1] "with some additional material being discoverable in accordance with statutory pronouncements and the due

---

[1] Under Fed.R.Crim.P. 16(a)(1), upon defendant's request, the government must produce the following: (1) defendant's oral statements made in response to interrogation by a person defendant knew was a government agent, as well as defendant's written and recorded statements (Rule 16(a)(1)(A) and (B)); (2) defendant's prior record (Rule 16(a)(1)(D)); (3) documents and objects the government intends to use in its case-in-chief at trial or that were obtained from defendant (Rule 16(a)(1)(E)); (4) reports of physical or mental examinations and any scientific tests or experiments (Rule 16(a)(1)(F)); and (5) a summary of expert testimony the government intends to use, including the witness' opinions, the basis and reasons for those opinions and the witness' qualifications (Rule 16(a)(1)(G)).

However, unless Rule 16(a)(1) provides otherwise, the Rule does not authorize the discovery of internal government documents made by counsel for the government or other government agents in connection with investigating or prosecuting the case, nor does the Rule authorize discovery of statements made by prospective government witnesses except as provided in the Jencks Act. See Fed.R.Crim.P. 16(a)(2).

process clause of the Constitution." *United States v. Godson*, 2006 WL 3373174, *2 (W.D.Pa. 2006) (Diamond, J.), quoting *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act (18 U.S.C. § 3500) and materials available pursuant to the "*Brady* doctrine." *Id.*

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment" irrespective of the good or bad faith of the prosecutor. As the United States Court of Appeals for the Third Circuit declared, federal courts "abhor a *Brady* violation." *United States v. Pelullo*, 14 F.3d 881, 886 (3d Cir. 1994) ("*Pelullo I*") (emphasis added).

The Court of Appeals recently summarized the government's *Brady* obligations as follows:

> Under *Brady* . . . , the prosecution's suppression of evidence favorable to a criminal defendant violates due process when the evidence is material to guilt or punishment. To establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment. See, e.g., *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) ["*Pellulo II*"]. This is an objective test, meaning that no bad-faith inquiry is required. *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003). . . .
>
> . . . Evidence is "material" if there is a reasonable probability that pretrial disclosure would have produced a different result at trial. The question is not whether disclosure would have resulted in a different verdict, but whether suppression of the evidence "undermine[d] confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419 (1995) (emphasis added).

*United States v. Risha*, 445 F.3d 298, 303 and n. 5 (3d Cir. 2006) (parallel citations omitted).

Although *Brady* places an affirmative obligation on prosecutors "to learn of any favorable

evidence known to the others acting on the government's behalf in the case," it does not impose a duty on the prosecutor's office "to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *Pelullo II*, 399 F.3d at 216, citing *Merlino*, 349 F.3d at 154 (*Kyles* does not impose "a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue."). Thus, the prosecution is "only obligated to disclose information known to others acting on the government's behalf in a particular case. . . ." *Pellulo II*, 399 F.3d at 218.

*Brady* is not, however, to be understood as a general discovery rule. As the Court of Appeals for the Seventh Circuit summarized:

> Under *Brady v. Maryland*, . . . the prosecution has the duty under the due process clause to insure that criminal trials are fair by disclosing evidence favorable to the defendant upon request. . . . As a general principle, however, the due process clause has "little to say" regarding the amount of discovery which the parties in a criminal trial must be afforded. *Wardius v. Oregon*, 412 U.S. 470, 474 (1973). In fact, the Supreme Court has recently stated that there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). It is only by virtue of Rule 16 of the Federal Rules of Criminal Procedure that pretrial discovery is generally provided for in criminal cases. It is clear, however, that not even under Rule 16 is a defendant in a noncapital case entitled to lists of prospective government witnesses. See, e.g., *Weatherford v. Bursey, supra*, 429 U.S. at 559 (no requirement that prosecution reveal names of all witnesses unfavorable to defendant) . . . .

*United States v. Bouye*, 688 F.2d 471, 473-74 (7th Cir. 1981) (parallel and additional citations omitted). See also *United States v. Solomon*, 2007 WL 587805, *2 (W.D.Pa. 2007) (McVerry, J.) ("strictly speaking, *Brady* is 'not a discovery rule, but a rule of fairness and minimum prosecutorial obligation.' *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984). . . . Outside of the [Jencks Act], rules [of criminal procedure], and case law [*Brady* and its progeny],

a defendant has no general constitutional right to pretrial discovery. . . . Those rights conferred by statute, rule, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti*, 412 F.2d 407, 411 (3d Cir.), *cert. denied*, 396 U.S. 837 (1969)." additional citations omitted)

Impeachment evidence falls squarely within *Brady*. "[I]f disclosed and used effectively, impeachment evidence may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985), citing *Napue v. Illinois*, 360 U.S. 264 (1959). *Napue* stated: "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative . . . and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." 360 U.S. at 269.

In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court refined the *Brady* rule and served notice that the prosecution "team" would be viewed as an entity for disclosure purposes. The Court vacated a conviction and required a new trial where the key government witness had testified untruthfully there had been no promises made not to prosecute him. Even though the trial prosecutor had no actual knowledge of such promise, "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government." *Id.* at 154. Promises of leniency are clearly relevant to a witness' credibility and there was a "reasonable likelihood" the falsehood might have affected the judgment of the jury. *Id.*

A prosecutor now must disclose exculpatory evidence even in the absence of a request for such information by the defense. *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991), citing *United States v. Agurs*, 427 U.S. 97 (1976). A valid *Brady* "complaint" contains three

elements: (1) the prosecution suppressed evidence; (2) favorable to the accused; (3) and material to the defense. *United States v. Ramos*, 27 F.3d 65, 67 (3d Cir. 1994), citing *Perdomo*, 929 F.2d at 970. A defendant is "entitled to a new trial where 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is [defined as] a probability sufficient to undermine confidence in the outcome.' *Bagley*, 105 S.Ct. at 3383. [The] . . . *Bagley* inquiry requires consideration of the totality of the circumstances, including possible effects of non-disclosure on the defense's trial preparation. . . ." *Perdomo*, 929 F.2d at 971 (citation omitted).

In any judicial proceeding, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested [and] the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989), quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Because cross-examination is such an integral part of a defendants' constitutional right to confront and cross-examine witnesses against him, "there exists no pat distinction between impeachment and [other sorts of] exculpatory evidence under *Brady*." *Buchanan*, 891 F.2d at 1443, citing *Bagley*.

Where the defense makes a specific request and the government fails to disclose responsive evidence, non-disclosure generally will be deemed material. "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *Agurs*, 427 U.S. at 106. In that situation, the *Bagley* Court observed:

> The Government notes that an incomplete response to a specific request not only deprives the defense of certain evidence, but also *has the effect of representing to the defense that the evidence does not exist*. In reliance on this

> misleading representation, *the defense might abandon lines of independent investigation, defenses, or trial strategies* that it otherwise would have pursued.
>
> We agree that the prosecutor's failure to respond fully to a *Brady* request may impair the adversary process in this manner. . . . This possibility of impairment does not necessitate a different standard of materiality, however . . . . The reviewing court should assess the possibility that such [adverse] effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response.

473 U.S. at 682-83 (emphasis added).

*Kyles* reaffirmed the above principles of materiality, holding that the prosecution's "obligation under *Brady* . . . , to disclose evidence favorable to the defense, turns on the cumulative effect of all such evidence suppressed by the government, and we hold that the prosecutor remains responsible for gauging that effect regardless of any failure by the police to bring favorable evidence to the prosecutor's attention." 514 U.S. at 441. Moreover, *Kyles* emphasized the "affirmative obligation" on the part of the prosecution to disclose all evidence favorable to an accused, including impeachment evidence, elaborating on that affirmative obligation as follows:

> While the definition of *Bagley* materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden. On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, . . . the prosecution's responsibility for failing to disclose known, favorable evidence

> rising to a material level of importance is inescapable. . . .
>
> *   *   *
>
> [T]he prosecution cannot be subject to any disclosure obligation without at some point having the responsibility to determine when it must act. Indeed, even if due process were thought to be violated by every failure to disclose an item of exculpatory or impeachment evidence (leaving harmless error as the government's only fallback), the prosecutor would still be forced to make judgment calls about what would count as favorable evidence, owing to the very fact that the character of a piece of evidence as favorable will often turn on the context of the existing or potential evidentiary record. Since the prosecutor would have to exercise some judgment even if the State were subject to this most stringent disclosure obligation, it is hard to find merit in the State's complaint over the responsibility for judgment under the existing system, which does not tax the prosecutor with error for any failure to disclose, absent a further showing of materiality. Unless, indeed, the adversary system of prosecution is to descend to a gladiatorial level unmitigated by any prosecutorial obligation for the sake of truth, the government simply cannot avoid responsibility for knowing when the suppression of evidence has come to portend such an effect on a trial's outcome as to destroy confidence in its result.
>
> This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. See *Agurs*, 427 U.S., at 108 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. . . . The prudence of the careful prosecutor should not therefore be discouraged.

*Kyles,* 514 U.S. at 437-440 (parallel and certain other citations omitted).

Thus, as the Court of Appeals stated in *Perdomo*, the government has an obligation to examine its investigators' files, and everything in there is actually or constructively in the government's possession; the prosecution team consists not only of the prosecutors but also the various law enforcement agents and personnel involved in the investigation, so that a prosecutor's

-8-

lack of knowledge about a particular item of exculpatory evidence in an investigator's files does not excuse the failure to produce it to the defense. 929 F.2d 970.

This Court is confident the government is well aware of its continuing due process obligation to provide all exculpatory material in its files to defendants, including *Brady/ Giglio* impeachment evidence, and that it takes that obligation seriously and will discharge its duty without "tacking too close to the wind." Its agreement to turn over all Jencks Act and impeachment material in its possession well in advance of each witness's testimony demonstrates the government's good faith in that regard, as did its motion for this Court to review an FBI agent's disciplinary records in camera for a determination of whether those records were arguably discoverable *Brady* material (as the Court ruled the records to be on April 7, 2006. Order of Court (doc. no. 61)).

While defendant "believes" the government may not be in compliance with *Brady*, he does not point to any particular shortcomings, and this Court is not aware of any failure of the government to disclose material, discoverable evidence, and will not speculate about something neither it nor defendant can know. If and when defendant can point to something in particular, i.e., based upon more than his "belief" that the government is internally guided by some different standards of materiality than those set forth above, the Court will entertain appropriate motions at that time. Until such time, however, disclosures by the government in this case is governed by the foregoing rules, cases, statute and standards, and by this Court's Pretrial Orders.

**Timing**

As far as timing of disclosures goes, the Court of Appeals for the Third Circuit encourages early disclosure of all exculpatory evidence, including strictly impeachment evidence,

and does not share the view adopted by some other Courts of Appeals that the timing of disclosure of *Brady/ Giglio* impeachment material necessarily follows that of Jencks Act disclosures, i.e., at the time the witness testifies. In *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984), a *Brady/ Giglio* impeachment evidence case, the Court of Appeals stated:

> In [*United States v. Higgs,* 713 F.2d 39 (3d Cir. 1983)], this court announced that the district court has general discretionary authority to order the pretrial disclosure of *Brady* material "to ensure the effective administration of the criminal justice system." 713 F.2d at 44 n. 6. In so doing, the court perpetuated our longstanding policy of encouraging early production. (citations omitted).
>
> Today, we affirm this court's longstanding policy and applaud the district court's effort to ensure prompt compliance with *Brady*. We flatly reject the notion, espoused by the prosecution, that "it is the government, not the district court, that in the first instance is to decide when to turn over *Brady* material." . . . The district court may dictate by court order when *Brady* material must be disclosed, and absent an abuse of discretion, the government must abide by that order.

See also *United States v. Kaplan,* 554 F.2d 577, 580-81 (3d Cir. 1977) (although it found no reversible error in withholding Jencks Act statements of witnesses which also were *Brady/ Giglio* impeachment evidence until the witness testified, the Court of Appeals stated it "would have been preferable to have permitted defense counsel to examine the documents well in advance of trial. While the belated turnover is not reversible, it certainly was not desirable and we do not encourage it.")

Thus it is within the Court's discretion to direct advance disclosure of exculpatory evidence that is solely impeachment evidence in the interests of sound judicial administration and fairness, *perhaps* even statements of witnesses that are encompassed by the Jencks Act. Ordinarily, courts cannot order the government to provide "strictly" Jencks Act statements and

reports prior to the time a witness has testified on direct examination at trial. *United States v. Godson*, 2006 WL 3373174 at *2 (W.D.Pa. 2006) (Diamond, J.); *United States v. Mais*, 2006 WL 3308429, *4 (W.D.Pa. 2006) (Cercone, J.) ("this ruling [that the government shall produce all *Brady* impeachment material no later than ten calendar days prior to trial] has no bearing on the government's disclosure of information that falls solely under the Jencks Act. It is well-settled that the plain language of the Jencks Act precludes a court from compelling the disclosure of Jencks Act material prior to the completion of a government witness' testimony on direct examination."), citing *United States v. Hill*, 976 F.2d 132, 140 (3d Cir. 1992).

In light of the government's assurance that it has provided all *Brady/ Giglio* impeachment evidence in its possession and control to defendant, and will disclose all Jencks Act materials the Wednesday before the week in which each such witness is scheduled to testify, the Court finds this time frame acceptable and reasonable.

In summary: independently exculpatory *Brady* material ordinarily should be turned over to defendant as soon as the government discovers such evidence; *Brady/ Giglio* impeachment material with no independent evidentiary value should be turned over in a timely manner, to "ensure the effective administration of the criminal justice system." *Government of Virgin Islands v. Martinez*, 847 F.2d 125, 127 (3d Cir.1988). While the Court strongly encourages disclosure of such materials as soon as feasible, in no event shall it be later than the time early Jencks Act disclosures are made; "strictly" Jencks Act materials, i.e., statements or reports made by a government witness which relate to the subject matter of the witness' testimony, must be disclosed after the witness has testified under direct examination, see 18 U.S.C. § 3500(b), but early disclosure is strongly encouraged by the Court of Appeals for the Third Circuit and by this

Court, and the United States Attorneys Office customarily makes such disclosures at least a few days before trial, and in any event, the Second Pretrial order incorporates the government's "Wednesday before" proposal at ¶ 5.

                                    **SO ORDERED this 15th day of August, 2007.**

                                    s/ Arthur J. Schwab
                                    Arthur J. Schwab
                                    United States District Judge

cc:      All ECF counsel of record