IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| **CYRIL H. WECHT** | ) | |

**MEMORANDUM AND ORDER OF COURT REGARDING
PENDING MOTIONS (DOCS. NO.  524, 527, 535) RELATING TO
SUPPLEMENTAL SUPPRESSION HEARING**

**I.      Introduction.**

This case was remanded to this trial court by the United States Court of Appeals for the

Third Circuit.  *United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007).  A hearing on defendant's

Supplemental Motion to Suppress (doc. no. 509) is scheduled for September 18, 2007.

Defendant has filed a Motion to Compel (doc. no. 524) production of documents and

witnesses that he asserts are relevant, material and necessary for proper resolution of the matters

before the Court at the supplemental suppression hearing, and a Supplement Motion to Compel

(doc. no. 535).  The government has filed its response (doc. no. 526) to the motion to compel.

The government then filed a Motion for Entry of an Order Regarding Scope of September

18, 2007, Hearing and Motion to Quash Subpoenas (doc. no. 527) that have been issued by

defendant to compel the government to produce witnesses and documents at or in advance of the

supplemental suppression hearing.  On August 31, 2007, this Court directed defendant to file a

response to this motion and to make specific proffers on the documents and witnesses he seeks to

compel by subpoenas.  The Order of August 31, 2007 (doc. no. 529) directed defendant to file a

response and separate brief in opposition to said motion, which response was to include a

"separate proffer for each witness and document he seeks to compel setting forth the relevancy and materiality to any of the issues to be raised in the suppression hearing," considering the narrow scope of said hearing as stated in the Order of Court dated July 11, 2007.

The Order of July 11, 2007 (doc. no. 502), scheduled a supplemental suppression hearing and established the parameters for said hearing as follows:

*   *   *

### B.  Supplemental Hearing on Motion to Suppress

Unlike the public, the defendant has had possession of doc. no. 60, the Orsini records, since May 17, 2006, for almost 14 months (see doc. no. 168), including at the time of preparation for the June 8, 2006 hearing (doc. no. 214) on defendant's Motion to Suppress Evidence (doc. no. 55), but not when the Motion to Suppress was filed (April 11, 2006).  See *Wecht*, 2007 WL 1086308 at *12, and n.20.  Once defendant received the Orsini records, defendant did not seek to amend the Motion to Suppress, nor were the Orsini records used at the suppression hearing by defendant.  See *Wecht*, 2007 WL 1086308 at *12 and n.21. . . .

Nevertheless, out of an abundance of caution, defendant may file a supplemental motion to suppress, *focused solely on the Orsini records*, with related proposed findings of fact and conclusions of law, on or before **August 1, 2007**, and the government may file its response thereto, with proposed findings of fact and conclusions of law, on or before **August 17, 2007**.  *A supplemental suppression hearing will be conducted* . . . in which *counsel for the parties may examine Special Agent Orsini concerning said records and argue their relevancy to this case*. [FN. 2]  If either party *wishes to call any other witness, or offer any other evidence*, concerning Special Agent Orsini's credibility, *said information must be disclosed* in the foregoing scheduled moving or opposing papers. *Additionally, the suppression hearing record will be opened to receiving additional evidence from any party concerning Box 20.* See <u>Wecht</u>, 2007 WL 1086308 at *19-*20.  The testimony and exhibits from the extensive prior suppression hearing of June 8, 2006 thus will be supplemented with testimony and exhibits from this scheduled supplemental hearing, which shall inform this Court's *reconsideration of the remaining suppression issues*.

FN. 2. Regarding these records, the Court of Appeals stated the following: "We think it likely that the District Court would have permitted Wecht to

use the records [at the suppression hearing] . . . ." *Wecht*, 2007 WL
1086308 at *12.  Indeed, on August 31, 2006, this Court issued an Order
granting in part and denying in part the government's Motion in Limine
seeking to exclude Special Agent Orsini's disciplinary records at trial,
stating: "If Special Agent Orsini is called to testify, his credibility becomes
relevant, and may be attacked, *within the parameters set by"* the Federal
*Rules of Evidence*. Order of Court Re: Government's Motion in Limine at
Doc. No. 343 (doc. no. 403), at 1.[1]

Order of Court, July 11, 2007 (doc. no. 502) at 2-3 (emphasis added).

Defendant filed his Brief in Opposition to Government's Motion (doc. no. 533), which

contains proffers for the subpoenaed documents at ¶¶  1a - 1w, and 2-12, and for 14 witnesses

which, defendant informs the Court, reflects a "refined . . . witness list" for the supplemental

suppression hearing.  Defendant's Brief in Opposition to Government's Motion at 3, n.1.

---

[1]  The Order of August 31, 2006 (doc. no. 403)) denying in part the government's Motion
in Limine to Preclude Argument, Examination of Witnesses or Attempts to Introduce Evidence
Regarding Document No. 60 stated more fully as follows:

> To the extent said Motion in Limine seeks to exclude any and all references and attempts
> by defendant to introduce evidence concerning Document No. 60, said motion is
> DENIED, *subject to the Federal Rules of Evidence, including Fed.R.Evid. 403, 405 and*
> *608*.  Although the government states that it does not intend to call Special Agent Orsini
> in its case in chief, the Court knows no reason why defendant would be categorically
> precluded from calling Special Agent Orsini to testify as to relevant and material matters,
> subject to the Federal Rules of Evidence.  *If Special Agent Orsini is called to testify, his*
> *credibility becomes relevant, and may be attacked, within the parameters set by those*
> *Rules.*

> There are at least some matters set forth in the records that are the subject of
> Document No. 60 that <u>arguably</u> are probative of Orsini's truthfulness or untruthfulness,
> and some that are <u>not</u> arguably probative of Orsini's truthfulness or untruthfulness. Under
> Fed.R.Evid. 608(b), specific instances of conduct may be inquired into on cross-
> examination, at the discretion of the court, if they are probative of the witness's
> truthfulness or untruthfulness; however, the questioner must take the answer as given and
> cannot thereafter introduce extrinsic evidence about specific conduct. *United States v.*
> *Davis*, 183 F.3d 231, 257 (3d Cir. 1999) (emphasis added).

## II.      Procedural and Substantive Background.

In order to rule on the pending motions, it is necessary to determine what suppression matters have already been decided, and therefore represent the law of the case, and what remaining matters are properly before the Court in the supplemental suppression hearing.

### A. Doc. No. 193 - Memorandum Order Re: Motion to Suppress (Doc. No. 55)

After careful consideration of defendant's Motion for a Suppression Hearing and to Suppress All Evidence Gained by the Government as a Result of Illegal Searches (doc. no. 55), the government's response thereto (doc. no. 177), defendant's reply to the government's response (doc. no. 182), the applications for search warrants and supporting affidavits of probable cause, and the search warrants themselves, the Court made the following rulings in its Memorandum Order of May 31, 2006 (doc. no. 193):

> (1) that the search warrants were valid and that the probable cause recited in the related affidavits was more than adequate; (2) to the extent defendant is requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), that no *Franks* hearing is necessary; (3) that the execution of the warrants as to the seizure of the computers was proper; and finally, (4) that the Court will conduct an evidentiary hearing on the execution of the warrant as to the seizure of the "boxes." Accordingly, defendant's Motion for a Suppression Hearing and to Suppress All Evidence Gained by the Government as a Result of Illegal Searches (doc. no. 55) is DENIED in its entirety, except as to defendant's request for an evidentiary hearing on the execution of the warrant related to the "boxes."

With regard to the validity of the search warrants, this Court determined that the United States Magistrate Judge had a "substantial basis" for finding probable cause, based on the totality of the facts and circumstances asserted in the affidavits.  *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citations omitted), citing *Illinois v. Gates,* 462 U.S. 213, 236, 238-39 (1983). The Court's reasoning was as follows:

Except for the descriptions of the places to be searched and items to be seized, Special Agent Bradley W. Orsini's separate affidavits of probable cause accompanying the applications for the three search warrants at issue are virtually identical. [FN 1] As recited in the first paragraph, the averments of each affidavit are based upon his personal participation in the investigation, interviews of twenty witnesses, including current and former Deputy Coroners and other employees of the Allegheny County Coroner's Office ("ACCO"), identified in the affidavits as ACCO 1 through ACCO 16, conversations with other federal, state and local law enforcement officers, information from confidential sources, documents, photographs and reports prepared by other law enforcement agents. Affidavit, ¶ 1.

\* \* \*

[FN 1] It appears that the initial warrant to search Eileen Young's home for the laptop computer she used for her work for the Coroner's Office, Motion to Suppress, Exhibits N and Q, was not executed because the laptop was not at her home.  However, a warrant for the search for that computer at the Coroner's Office was issued the next day, based on the same affidavit and information that justified the initial warrant.  Motion to Suppress, at 19 n.11, and Exhibit X; Defendant's Reply Brief at 7-8.

Specifically, the affidavits recite that ACCO is a department of Allegheny County, Pennsylvania, which receives substantial funding from the federal government through the United States Department of Justice and through federal grants to the County and to the Commonwealth of Pennsylvania. Affidavit, ¶ 3.  In a summary paragraph, the affidavit sets forth a number of ways in which defendant allegedly uses the resources and personnel of Allegheny County in violation of the above cited "federal anti-corruption statutes" (as well as criminal and ethical laws of the Commonwealth of Pennsylvania), which are: use of ACCO staff for private business and personal matters; use of the ACCO Histology and Photography Labs for private business matters; use of ACCO funds, office space and parking space for private business matters, and attempted concealment and removal of evidence. Affidavit, ¶ 5. Paragraphs 6 through 23 of the affidavits describe the matters summarized in more detail, and list the sources of the information.

For example, paragraph 6 states that 13 current and former ACCO Deputy Coroners and other employees provided information that defendant uses the Deputy Coroners as chauffeurs for his private business, for defendant, his associates and others, for which he receives financial benefits, as well as for routine personal matters, and required them to place high priority on those matters, which were known as "Wecht details." Affidavit, ¶¶ 6 -11.  The affidavit further stated that ACCO employees provided information that defendant used the

Histology Lab to perform private autopsies  for which he received financial benefit, used the Photography Lab to take photgraphs at private seminars for which he received financial benefit, and used his ACCO secretaries almost exclusively for private business work  for which he received financial benefit, such as typing expert reports, thank you notes for ACCO photographers for their work at private seminars, and envelopes for mailings regarding private seminars for which he received financial benefits. Affidavit, ¶¶ 12-18.

The affidavits stated that certain ACCO employees (identified by their designated ACCO numbers) knew that defendant's secretaries placed private business information on ACCO 16's laptop computer, which she took home every night, and on a desktop computer at ACCO which contained logs of private business services performed by ACCO employees at defendant's behest, and that "approximately 20 boxes of files reflecting private autopsy work for the financial benefit of" defendant were hurriedly removed from the ACCO offices to defendant's private pathology office after it had become public that a criminal probe of defendant's use of County resources for private financial gain had begun . Afffidavit, ¶¶ 8, 16, 20-21. These two computers, along with any information storage discs, CDs, zip drives, cartridges and other storage media, and the "approximately 20 boxes" of files related to defendant's private autopsies were listed as the items to be seized in the three respective applications for warrants, which the U.S. Magistrate Judge granted.

. . .  The Court . . . finds that the averments of the affidavit set forth adequate facts and sources of those facts for the U.S. Magistrate Judge to reasonably conclude that probable cause existed that particularly described fruits, instrumentalities or evidence of crimes reasonably likely to be found at the places described therein.

May 31, 2006, Memorandum Order Re: Motion to Suppress (doc. no. 55).  Doc. no. 193, at 3-6.

The Court also held that even if the affidavits were somehow deficient in not adequately setting forth probable cause, the good faith exception to the exclusionary rule applied. *United States v. Leon*, 468 U.S. 897 (1984) (test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate authorization; reliance on a warrant that is not facially deficient typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith

exception).  Thus, the evidence seized pursuant to the challenged search warrants would be admissible in any event.

Next, the Court found that no *Franks* hearing was required because defendant had failed to make the requisite "substantial preliminary showing" that Special Agent Orsini had included in his search warrant affidavit any false statement, knowingly, intentionally or with reckless disregard for the truth, or that he omitted any material information from the affidavit of probable cause.  May 31, 2006, Memorandum Order Re: Motion to Suppress (doc. no. 55), citing *Franks,* at 155-156; *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988).  Doc. no. 193, at 8.  The Court's reasoning in this regard was as follows:

### Material Misstatements and Omissions Alleged

Defendant's suppression motion claims that Special Agent Orsini's affidavits are peppered with misrepresentations that he made in order to bolster the probable cause and obtain the search warrants under false pretenses, and deliberately omitted material facts that would have made a difference in the U.S. Magistrate Judge's probable cause determination. Specifically, defendant alleges in his Motion to Suppress that the following material misrepresentations and omissions are contained in Orsini's affidavits.

The only evidence submitted in support of the search warrants "was Orsini's affidavits.  No other evidence was presented . . ." to the U.S. Magistrate Judge.  Motion to Suppress at ¶ 2. . . .  Orsini also is alleged to have committed certain improprieties on other assignments in other states for which he was disciplined, in matters completely unrelated to the prosecution and investigation herein. Motion to Suppress ¶ 3-4.

The "central anchor" of the "yarn" that Orsini "spun" in his affidavits "was that Dr. Wecht was somehow furtively concealing that he did private work for others in addition to discharging his duties as coroner," when in fact, Dr. Wecht has been "openly doing [such private work] for decades," and his private work has been well and widely known, nationally and locally, for decades.  Motion to Suppress at ¶¶ 12-15.  Similarly, Orsini's affidavits stated that defendant Wecht had not filed certain required financial disclosure statements as required by state law, which "implies that Dr. Wecht remained non-compliant with state law so as

-7-

to conceal certain aspects of his private work," when Orsini knew that defendant Wecht had in fact filed numerous financial disclosures that listed income form Wecht Pahtology. Motion to Suppress at ¶¶ 12-20.

Defendant asserts that Orsini's misstatements about Dr. Wecht's alleged concealment of his private practice "were deliberately false, known to be false when made; and deliberately supported by misleading, false and incomplete statements."  Motion to Suppress ¶ 14.

Defendant also asserts the deliberate omission of the identity of a "confidential informant" (who is mentioned in the affidavits as one of many sources of Orsini's information), namely, the Allegheny County District Attorney. Defendant offers the following "facts" in an attempt to meet the substantial preliminary showing that would necessitate a *Franks* hearing: (i) this entire investigation and prosecution was instigated and motivated by a political vendetta by the District Attorney; (ii) the District Attorney influenced the U.S. Attorney for the Western District of Pennsylvania to adopt his vendetta; (iii) the District Attorney must be the confidential informant that Orsini alludes to in his affidavit; (iv) in order to keep the District Attorney's identity secret, Orsini deliberately "concealed" his identity, and agreed to "do his bidding."  Motion to Suppress ¶21.

Assuming, *but only for the sake of argument* on this pending Motion to Suppress, that these alleged misrepresentations and omissions are false and misleading, they simply are *not* the stuff of which *Franks* hearings are made, because they are *not material* to the determination of probable cause.

Provocative speculation . . . does not satisfy the *legal* threshold, i.e., the substantial preliminary showing, that a defendant must make before the Court will grant a request for a *Franks* hearing.  Affidavits filed in support of a search warrant are presumptively valid, and a proponent of a *Franks* hearing must make a substantial preliminary showing to prevent the misuse of such hearings for purposes of discovery or obstruction.  *Franks*, 438 U.S. at 170-71; *see United States v. Harvey,* 2 F.3d 1318, 1324 (3d Cir. 1993) (ignoring any misleading information, search warrant must be upheld if it was based on probable cause); *Calisto*, 838 F.2d at 714.

The Court finds that, even if Orsini made the misstatements and omissions defendant claims, those background "facts" played no role in this Court's determination of probable cause, and is quite certain they played no role in the Magistrate Judge's presumptively correct determination of probable cause.  If we delete the alleged "misstatements" from the affidavits and add the alleged "omissions," the affidavits still recite ample probable cause for the search warrants issued by the U.S. Magistrate Judge.

May 31, 2006, Memorandum Order Re: Motion to Suppress (doc. no. 55). Doc. no. 193, at 9-11.

As to the content and execution of the search warrants as to the "computers" and the "boxes," the Court held that the search warrants in question, although arguably broad, were not "general" to the point where the investigating officers were vested with "unbridled discretion" to search for and seize whatever they wished, but were sufficiently particular and consistent with Fourth Amendment requirements, and that in any event, the evidence seized pursuant thereto was admissible under the good faith exception. *Massachusetts v. Sheppard*, 468 U.S. 981 (1984) (companion case to *Leon*: good faith doctrine applies in cases in which warrants are invalidated because they are overly broad).

The Court also found no defect in the manner in which the search warrants for computers had been executed, but as to the execution of the search warrant for "boxes," specifically, whether the scope of the search exceeded the authority provided by the warrant, the Court directed an evidentiary hearing. To recap, the "boxes" search warrant identifies the "Property to be Seized" as "Boxes (approximately twenty) and contents containing private autopsy files," and offers the following probable cause to believe these items would be on the premises to be searched, as follows:

**Attempted Concealment and Removal of Evidence**

According to ACCO 11, Young was very rushed and upset about having to move the boxes quickly. According to ACCO 11, the materials he helped move consisted of approximately 20 boxes of files reflecting private autopsy work for the financial benefit of WECHT. The boxes are labeled on the outside with computer printed labels identifying the names of the decedents.

\* \* \*

**Items to be Seized**

-9-

This application seeks issuance of warrant to seize approximately twenty boxes of private autopsy files located at the office of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B".

Based upon the foregoing information, there is probable cause to believe that in the premises described in Attachment "A", there are approximately twenty boxes of private autopsy files located at the offices of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B" related to the above described evidence, which are fruits, instruments and evidence of the crimes of Embezzlement and Theft, in violation of Title 18, United States Code, Section 66, and a Scheme to Defraud of Intangible Right to Honest Services, in violation of Title 18, United States Code, Section 1341, 1343, and 1346.

Defendant had argued that agent Orsini was not present on the day the warrant was executed, that there were approximately 60 boxes in the office to be searched (not "approximately 20 boxes" as Orsini had sworn in his affidavit), and that Dr. Wecht's wife, Sigrid Wecht, Esquire (whose law office was located in the place to be search), was present when agents began to search for the "approximately 20 boxes," and that they were not able to determine which boxes were the ones described in the warrant and had to ask her to direct them to the "boxes," to which Mrs. Wecht responded that did not know which 20 boxes the warrant was intended to cover.[2]

The Court believed, largely on the basis of Mrs. Wecht's affidavit, that an evidentiary hearing was required to make the factual determination necessary to evaluate the validity of the

---

[2] As this Court noted, Mrs. Wecht's affidavit stated that "the agents called agent Orsini on the phone and thereafter split into teams and opened up boxes to see what was in them and decided which ones they would take from different locations on the premises and having done so, they removed 29 unlabeled boxes which contained Dr. Wecht's private autopsy files in accordion folders, including files on various high profile matters including the deaths of" numerous celebrities and public figures."  May 31, 2006, Memorandum Order Re: Motion to Suppress (doc. no. 55).  Doc. no. 193, at16-17.  Therefore, defendant argued, the "boxes" that were taken were the result of an unconstitutional general search, which was not done with the good faith belief that they contained evidence of federal crimes.

execution of this part of the search warrant, and scheduled a suppression hearing limited to this narrow issue.

**B.     Doc. No. 216 - Order Denying Defendant's Motion for Reconsideration and for Oral Argument (Doc. No. 209) Regarding the Court's Memorandum Order (Doc. No. 193) Re: Motion to Suppress (Doc. No. 55)**

On May 26, 2006, defendant filed a Motion for Reconsideration and for Oral Argument Regarding the Court's Memorandum Order re: Motion to Suppress (doc. no. 209) regarding the warrants to seize and search the desktop and laptop computers of Kathy McCabe and Eileen Young, arguing that the Court had misconstrued the Orsini affidavits as to the alleged content of the computers in a material way and overlooked "controlling Third Circuit authority," and requested oral argument.  The Court denied this motion for reconsideration because defendant offered "no new information relevant to the Court's substantive analysis of the underlying motion to suppress, and no new legal argument."  Doc. no. 216, at 2.

**C.     Doc. No. 220 - Findings of Fact and Conclusions of Law Re: Denial of Defendant's Motion to Suppress (Doc. No.  55) Regarding 29 Boxes Containing Private Autopsy Files**

On June 13, 2006, this Court issued findings of fact and conclusions of law regarding defendant's motion to suppress the 29 boxes containing private autopsy files, finding that the search and seizure at Wecht Pathology's Penn Avenue Office fit squarely within the scope of the Penn Avenue search warrant, and that the FBI agents and support personnel acted reasonably and in good faith in executing it.  Doc. no. 220, at 1-2.  The Court therefore denied the remaining portion of defendant's motion to suppress.  The Court's ultimate findings and conclusions of law, in pertinent part, were as follows:

## II.   Findings of Fact

*   *   *

14.     **"Private autopsy files."**  The Court finds, from the consistent testimony of the search team leaders and other members, and, importantly, from the language of the affidavit of probable cause which every team member read before the search commenced, that "private autopsy files" refers to files and documents relating to payment for and the use of the ACCO speciality labs for private autopsies, files containing reports and other documents used in defendant's private autopsy business, including those prepared by Eileen Young and other ACCO employees, and that "private autopsy files" includes autopsies, consultations, second opinions and evaluations of pathology reports and autopsies prepared by other persons, and the identity of the decedents involved in private autopsies performed with the aid of county resources.

15.     The Court finds that all of the 29 boxes and their contents are within the description of the Penn Avenue search warrant, namely, "Boxes (approximately twenty) and contents containing private autopsy files," and the parameters described in the affidavit and laid out by the team leaders at the search and SA Orsini prior to the search.

16.     The Court finds that the members of the search team acted reasonably and in good faith in the execution of the warrant, since they made reasonable efforts to take only evidence within the scope of the warrant, and left boxes and contents at the Penn Avenue Office that might have been private autopsy files but which were not found to have been recently moved from ACCO to Penn Avenue.

## III.   Conclusions of Law

*   *   *

2.     **Search Warrant and Affidavit Meets the Particularity Requirement and Is Not Overly Broad**.  . . .

This Court previously held, relying on *Ninety-Two Thousand Four Hundred Twenty-Two Dollars*, that while the Penn Avenue warrant was arguably somewhat broad, it was not a "general" warrant leaving the investigating officers "unbridled discretion" to search for and seize whatever they wished.  Memorandum Order of May 31, 2006 (doc. no. 193).  Rather, the warrant and the

affidavit in support thereof described the "boxes" with specificity by identifying the nature and identifying features of the contents of the boxes that had recently been moved from the ACCO to Penn Avenue.

3.      Therefore, the only issue now before the Court is whether the search or seizure exceeded the scope of the Penn Avenue warrant authorizing the seizure of the approximately twenty boxes and contents containing private autopsy files or, stated more specifically, whether the search team's  discovery of 29 boxes in the Wecht Pathology records storage rooms A and B containing files and documents relating to private autopsy business and cases fell reasonably within the scope of the search warrant. . . .  The answer to that question is a resounding yes.

4.      The search team members in this case undertook the search of the Penn Avenue Office with a warrant supported by probable cause particularly describing the boxes of recently moved private autopsy files as they were reasonably known or should have been known to SA Orsini.  The search team dressed and, more significantly, acted professionally in the manner and execution of their search, avoiding the private offices of the Wecht Law Firm, looking only in the boxes in the records storage rooms, and limiting the seizure to those boxes that were collectively determined to substantially match the description of the warrant and affidavit.  That agents took nine more boxes than the "approximately twenty" boxes described in the Penn Avenue search warrant does not render the execution of the search warrant unreasonable, nor does it indicate the team members were rummaging through the office on a general warrant.

5.      **Plain View**.  Moreover, while the agents may not exceed the authority granted by the search warrant in terms of the place to be searched or the things to be seized, evidence not particularly described in a warrant nevertheless may be seized during the course of an otherwise lawful search, if observed in plain view.  *Coolidge v. New Hamphire*, 403 U.S. 443, 465-466 (1971) (plurality opinion).  Assuming, for sake of argument only, that box 20 did not exactly fall within the scope of the authority granted by the Penn Avenue warrant, the box contained evidence of the crimes charged in the indictment, and the team members who lawfully examined the contents of that box, as they were obliged and entitled to do by the Penn Avenue warrant,  observed the evidence in plain view and its evidentiary value was immediately appreciated.

6.      **Good faith**.  As noted in the Memorandum Order of May 31, 2006, the good faith exception applies to seizure of evidence in good faith and reasonable reliance on a search warrant that has been approved by a magistrate judge.  *Massachusetts v. Sheppard*, 468 U.S. 981 (1984) (companion case to *Leon*).  Thus, even if evidence is seized which, in hindsight, should not have been

under the authority of the search warrant, the good faith exception applies and the evidence is admissible if the officer acted in good faith and, objectively, acted reasonably in seizing the evidence. *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989), citing *Kepner*, 843 F.2d at 763-64.  Assuming, again for the sake of argument only, that box 20 did not fall precisely within the scope of the authority granted by the Penn Avenue warrant, or any of the other twenty eight (28) boxes for that matter, the search team members acted reasonably and in good faith in relying on the warrant and affidavit, after discussion with the Special Agents who were the final arbiters, to cull the twenty-nine (29) boxes from the 60 or 70 boxes that were at the Penn Avenue Office on April 8, 2005.

Findings of Fact and Conclusions of Law (doc. no. 220), at 12-16.

Accordingly, the Court denied the remaining portion of defendant's Motion to Suppress.

**D.     United States Court of Appeals for the Third Circuit Decision (Docs. No. 470, 507, 508) - *United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007).**

Relevant to the pending suppression matters, defendant's appeal to the Court of Appeals for the Third Circuit only indirectly challenged this Court's suppression rulings.  The Court of Appeals had no occasion to address the merits of these rulings and did not do so.  However, the Court of Appeals did make certain statements and observations that are relevant to and inform the scope of the hearing and the remaining suppression issues, the most pertinent of which are as follows:[3]

> [T]he process by which the government investigates and prosecutes its citizens is an important matter of public concern. . . . This distinguishes *Brady* materials from traditional civil discovery between private parties. Fourth, there can be little question that the particular documents at issue here are of significant interest to the public. The records concern the conduct of an FBI official who

---

[3] Much water has gone under the suppression bridge already, and this Court does not intend to revisit every detail at this point.  Thus, the summary of procedural events and background is not intended to be exhaustive and assumes the readers' familiarity with the case, as set forth in previous opinions of this Court and of the United States Court of Appeals for the Third Circuit.  If the reader is not familiar with the case, those previous opinions will provide ample background.

played a prominent role in a highly publicized investigation of a well-known defendant accused of abusing his public office. *While the probative value of the documents is open to debate, they are of at least some relevance to Wecht's repeated assertions that Agent Orsini lacks veracity and that his affidavits in support of the search warrants were "infected with his deliberate and reckless falsehoods."* App. 67.

Finally, *we believe the records were relevant to Wecht's suppression motion*. There is little doubt that Wecht would have cited the Orsini records in his papers had he possessed them at the time he filed his suppression motion.FN20 Indeed, the suppression motion discussed Orsini's alleged lack of veracity and previous "involve[ment] in improprieties." App. 68. Further, we take McDevitt at his word that he wanted to use the records to impeach Orsini at the suppression hearing, but that he believed the District Court had prohibited him from doing so. FN21 In fact, the government was "surprised" that defense counsel did not cross-examine Orsini with the records, Tr. 114, and it concedes that the documents would be publicly available had they been attached to the suppression motion or used at a public hearing. We think it likely that the District Court would have permitted Wecht to use the records, but even a ruling prohibiting their use would have constituted yet another important judicial decision that the public would have had an interest in evaluating. For these reasons, we conclude that the public has a common law right to access the Orsini records.

FN20. The suppression motion was filed after the government's application to file an "underlying motion" under seal but before the filing of the motion for in camera review.

FN21. Whether McDevitt could have in fact used the documents at the suppression hearing was hotly disputed by the parties at oral argument. The government has asserted that McDevitt did not even attempt to use the records at the suppression hearing. As discussed at greater length below in Section 3.C of this opinion, we believe the source of this controversy stems from confusion about the scope of Wecht's May 26 application to use the records and the Court's June 2 order denying that application.

\* \* \*

### 3. Rulings and Orders

Wecht has also alleged that a number of rulings in this case demonstrate bias on the part of the District Court Judge. . . . We will not discuss each of the

-15-

rulings Wecht cites other than to note that they are not grounds for recusal.

However, because the ability of defense counsel to use the Orsini records at the suppression hearing has been the source of such fundamental disagreement, we do believe it merits some discussion. This dispute was particularly evident at oral argument where defense counsel stated that the government was "utterly disingenuous" in suggesting that the documents could have been used at the suppression hearing. Tr. 125. On May 26, defense counsel requested permission to file a sealed motion indicating which statements from the records they would like to use in future proceedings relevant to "pending motions, including the right of access issues raised by the media as well as the suppression hearing." JA 371-72. The District Court denied the motion on June 2 stating that "to grant said motion would disclose at the very argument certain information in [the Orsini records] relating to the issue of whether [the records] should be unsealed." JA 93.

At the time of the Court's ruling, there were two hearings pending: the June 5 argument on whether the Orsini records should be unsealed and the June 8 suppression hearing. The language of the June 2 order suggests that the Court was addressing only the first of these hearings; the Judge logically believed it made no sense to unseal portions of the records when that was the exact question before him on June 5. Defense counsel, by contrast, interpreted this order as preventing him from using the records at the suppression hearing as well. Although the Court's lack of specificity presumably created this confusion, defense counsel should have sought clarification either before the suppression hearing or at sidebar during it.

### 4. Examination of Box 20

On May 31, the District Court denied much of Wecht's suppression motion but scheduled a hearing for June 8 to address the seizure of boxes at Wecht's private office, including "Box 20." Wecht argued that the only issue was whether this box's label, "Wecht Law Firm," placed it outside the scope of the warrant. The Judge apparently reviewed the box's contents after the hearing without defendant's knowledge. Wecht asserts that the Judge's examination of the box's contents not only creates an appearance of bias under § 455(a), but also constitutes "personal knowledge of disputed evidentiary facts concerning the proceeding" under § 455(b)(1).

The District Court apparently had access to the contents of the box when the government provided the Court with the electronic database of exhibits on May 15. Wecht may be right that the label on the box, and not its contents, is the only relevant issue when determining whether the agents acted within the scope of the warrant. Perhaps the Judge should have made clear that he intended to review

the actual contents of the box in order to provide defense counsel an opportunity to comment. Wecht may have grounds upon which to appeal the Judge's ruling on his suppression motion, but there is no evidence the Judge was biased. Nor do we believe the Judge's actions create an appearance of bias.

Furthermore, we do not believe the Judge's review of the box's contents requires recusal under § 455(b)(1) because, as the government notes, the Judge's knowledge was not "personal" in nature. The documents had been presented as exhibits and were available to all parties at the time the Judge reviewed them. In other words, the Judge's knowledge about the documents did not derive from a source outside the proceedings.

*Wecht*, 484 F.3d at 210, 218-19.

### E.     Doc. No. 502 - Order of Court Re: Pre-trial Matters and Rulings on Pending Motions (Doc. No. 437, 441, 447, 454, 459 and 460)

By Order of July 11, 2007, this Court ruled on various pending pretrial motions and scheduled the supplemental suppression hearing, the relevant portions of which are set forth above in Section I, Introduction.

### III.    Scope of Supplemental Suppression Hearing - Remaining Issues to Be Determined.

Defendant's Supplemental Motion to Suppress (doc. no. 509) initially reiterates his original request that this Court "suppress evidence, order a *Franks* hearing, and for all other relief requested in Document No. 55 (Defendant's Motion to Suppress) for the reasons given in that document, in this supplemental motion, and in light of the Orsini reprimand records." Defendant's Supplemental Motion to Suppress (doc. no. 509), at 1. To the extent defendant's supplemental motion requests relief previously denied, and attempts to revisit issues that this Court has already determined and which are not implicated by the decision of the United States Court of Appeals for the Third Circuit, it is foreclosed by the law of the case.

-17-

**A.  Law of the Case**.

The law of the case doctrine was explained by the Court of Appeals for the Third Circuit

as follows:

> The law of the case doctrine directs courts to refrain from re-deciding
> issues that were resolved earlier in the litigation.  The doctrine applies "as much to
> the decisions of a coordinate court in the same case as to a court's own decisions."
> *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct.
> 2166, 2177, 100 L.Ed.2d 811 (1988).  Because it prevents courts from entertaining
> endless appeals on the same issue, the doctrine promotes finality and judicial
> economy.  "Law of the case rules have developed to maintain consistency and
> avoid reconsideration of matters once decided during the course of a single
> continuing lawsuit."  18 Charles A. Wright, Arthur R. Miller, Edward Cooper,
> Federal Practice and Procedure § 4478 at 788 (1981).
>
> The law of the case doctrine does not limit a federal court's power; rather,
> it directs its exercise of discretion.  *See Arizona v. California*, 460 U.S. 605, 619,
> 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *Messinger v. Anderson,* 225 U.S.
> 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912).  The Supreme Court [in
> *Christianson*, 486 U.S. at 817] has elaborated on the scope and nature of this
> discretion:
>
>> A court has the power to revisit prior decisions of its own or of a
>> coordinate court in any circumstance, although as a rule courts should be
>> loathe to do so in the absence of extraordinary circumstances such as
>> where the initial decision was "clearly erroneous and would work a
>> manifest injustice."

*P.I.R.G. New Jersey v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

The law of the case doctrine applies in the context of pretrial rulings of the same or

different judges of coordinate jurisdiction in criminal matters.  See generally *United States v.

O'Keefe*, 128 F.3d 885 (5th Cir. 1997) (Under law of the case doctrine and general principles of

comity, successor judge in criminal proceeding has same discretion to reconsider order as would

first judge, but should not overrule earlier judge's order or judgment merely because later judge

might have decided matters differently); *United States v. Wheeler*, 256 F.2d 745 (3d Cir. 1958)

(rulings of previous judge of same court on the defendants' motions to dismiss the indictment, which were identically based, are the "law of the case" and cannot be disturbed);  *United States v. Baynes,* 400 F.Supp. 285, 310 n.3 (E.D.Pa.), *aff'd* 517 F.2d 1399 (3d Cir. 1975) (Becker, J., holding in criminal proceeding that  "the 'law of the case' principle . . .  is the law in this circuit. . . .  Under this principle, judges of coordinate jurisdiction sitting in the same court and in the same case may not ordinarily overrule the decisions of each other.  The most oft advanced rationale of the 'law of the case' principle is one of judicial comity to preserve the orderly functioning of the judicial process.").

As in the civil context, however, this doctrine is discretionary and flexible. *Compare United States v. Alexander,* 106 F.3d 874 (9th Cir. 1997) (error for district court to reconsider ruling on suppression motion following declaration of mistrial by reason of hung jury where suppression ruling constituted law of the case and no extraordinary circumstances existed to warrant disregard of previous ruling), *with United States v. Todd,* 920 F.2d 399 (6th Cir. 1990) (not error for court to reconsider suppression rulings made by court of coordinate jurisdiction following mistrial, and to admit evidence previously excluded; "A court may recognize and enforce prior rulings based on this doctrine, but also retains the power to reconsider previously decided issues as they arise in the context of a new trial.").

**B.  Application of Law of the Case Doctrine**

Defendant proffers no new evidence, new law or other extraordinary reasons why this Court should not follow the law of the case, except with regard to those matters that have been "reopened" by the decision of the Court of Appeals and this Court's *sua sponte* scheduling order. Therefore, the scope of the supplemental suppression hearing is narrow: it is limited to matters

-19-

involving Orsini's credibility viz a viz defendant's "repeated assertions that Agent Orsini lacks veracity and that his affidavits in support of the search warrants were 'infected with his deliberate and reckless falsehoods . . .'", *Wecht*, 484 F.3d at 210, and with regard to the execution of the search warrants at Wecht Pathology and Box 20.   In other words, Special Agent Orsini's credibility is relevant and material to the issues of whether his affidavits of probable cause contained material falsehoods or omissions, and whether the search for the boxes at Wecht Pathology, including Box 20, exceeded the scope of the warrant and was otherwise properly executed.

The Court stated in its scheduling order of July 11, 2007 that if "either party *wishes* to call any other witness, or offer any other evidence, concerning Special Agent Orsini's credibility, said information must be disclosed in the foregoing scheduled moving or opposing papers." (emphasis added).  The Court's instruction to identify witnesses and evidence the parties "wish" to introduce certainly did not suggest or imply that any and all evidence and witnesses would be allowed at the supplemental suppression hearing without regard to materiality and relevancy to the *narrow issues to be decided therein*, nor did it imply that the rules of evidence would be entirely disregarded.  It is true that, except for rules regarding privileges, the Court is not bound by the rules of evidence in making preliminary determinations of admissibility of evidence, Fed.R.Evid. 104(a), but the rules of evidence nevertheless continue to inform the Court's determinations and guide its discretion.  The Court's "invitation" to the parties to disclose in moving or opposing papers what witnesses or evidence they "wished" to introduce at the supplemental suppression hearing was intended to (and did) prompt the parties to state their wishes in advance, so that this Court could decide the scope of the supplemental suppression

hearing should there be disagreement at the appropriate time.  That time has now arrived.

IV.     **Defendant's Motion to Compel (Doc. No. 524) and Government's Motion to Clarify Scope of Supplemental Suppression Hearing and to Quash Subpoenas (Doc. No. 527).**

By these motions, defendant seeks to compel, and the government seeks to quash, certain documentary evidence and witnesses.  Directed by the Court (doc. no. 529) to submit a "separate proffer for each witness and document he seeks to compel setting forth the relevancy and materiality to any of the issues to be raised in the [supplemental] suppression hearing," defendant has submitted the following proffers (doc. no. 533) as to testimonial and documentary evidence.

A.     **Defendant's Testimony Proffers for Witnesses**.

**Witness No. 1. Special Agent Orsini.** Defendant first lists Special Agent Orsini. Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶1.  The government does not object to the subpoena for the appearance and testimony of Special Agent Orsini.

The Court will allow fairly wide latitude with regard to cross-examination of Special Agent Orsini on document no. 60, and with regard to the issues remaining in this suppression proceeding, namely, whether his affidavits of probable cause contained material falsehoods or omissions, and whether the search for the boxes at Wecht Pathology, including Box 20, exceeded the scope of the warrant and was otherwise properly executed.  However, this latitude is not limitless, and the Court will not countenance needless consumption of time on collateral matters or harassment or undue embarrassment of the witness, or repetition of prior testimony.  See Fed.R.Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and

presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").

**Witnesses Nos. 2-3. Special Agents Welsh and Swim.**  Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶¶2-3.  Defendant proffers that he intends to question Special Agents Welsh and Swim with regard to the execution of the search of Wecht Pathology and their communications with Orsini before and during the search.  However, Welsh and Swim have already testified at length about the execution of the search of Wecht Pathology and their communications with Orsini, and defendant had every opportunity to develop these matters at the initial suppression hearing.  The Court will not permit defendant to take a second bite of that same apple or to replow the same ground.

To the extent defendant intends to examine Welsh and Swim about "their knowledge of Orsini's lack of veracity and the OPR reports," the opinions of other agents about Orsini's credibility and any testimony about their knowledge of OPR reports is irrelevant, immaterial and tangential, and will not be permitted.  See discussion of defendant's proffers (doc. no. 533) at paragraphs 9-14, infra.  Other FBI officials' or agents' knowledge or lack of knowledge about Special Agent Orsini's disciplinary reports does not tend "to make the existence of any fact that is of consequence to the determination of the" issues before the Court  -- whether Orsini's affidavits of probable cause contained material falsehoods or omissions and whether the search for the boxes was properly executed -- "more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

The government's motion to quash subpoenas for the appearance and testimony of Special Agents Welsh and Swim will therefore be granted, and defendant's motion to compel

these witnesses to testify will be denied.

**Witness No. 4. Special Agent Schaltenbrand.** Defendant proffers that he would call Special Agent Schaltenbrand to establish that he would not "repeat the allegation of Orsini in the opening warrants that Defendant used 'ACCO funds' for private business matters in the ensuing search warrants that he [Schaltenbrand] submitted." Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶4. Defendant has nothing to go on for this proffer except for speculation that, because this fact was not included in Schaltenbrand's affidavit, he must have concluded that Orsini's inclusion of the fact was false.

Special Agent Schaltenbrand will not be permitted to offer this dubious, inferential "opinion" about Orsini's credibility, which has nothing to do with whether that fact was true or false. Moreover, even assuming there was some material misrepresentation about the statement that "ACCO funds" were being used for private business matters, any such misrepresentation is not material to the probable cause analysis. If the Court eliminates that factual averment from the affidavit of probable cause to search Wecht Pathology, the affidavit continues to set forth adequate facts and sources of those facts for the U.S. Magistrate Judge to have reasonably concluded that probable cause existed, and that particularly described fruits, instrumentalities or evidence of crimes reasonably likely to be found at that place. See May 31, 2006 Memorandum Order Re: Motion to Suppress (doc. no. 55). Doc. no. 193, at 11 ("The Court finds that, even if Orsini made the misstatements and omissions defendant claims, those background "facts" played no role in this Court's determination of probable cause, and is quite certain they played no role in the Magistrate Judge's presumptively correct determination of probable cause. If we delete the

alleged "misstatements" from the affidavits and add the alleged "omissions," the affidavits still recite ample probable cause for the search warrants issued by the U.S. Magistrate Judge. ").

The government's motion to quash subpoenas for the appearance and testimony of Special Agent Schaltenbrand will therefore be granted, and defendant's motion to compel him to testify will be denied.

**Witness No. 5. Special Agent Speranza.**  Defendant proffers that this Special Agent (retired) "is the special agent who executed a probable cause affidavit on April 8, 2005, to obtain Eileen Young's laptop computer" because the laptop was not at her home the previous day, as expected.   Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶5. Defendant wishes to question this witness about "the affidavit that contained paragraphs taken verbatim from the Orsini affidavits from the day before, which contain materially false information" and to question him "as to how he, instead of Orsini, was the affiant on that affidavit and his efforts to confirm the factual averments contained therein including what Orsini told him."   *Id*.  Defendant would offer this proffered testimony to "show dishonesty to a fellow agent, and the FBI's determination that Orsini should not execute affidavits in the above captioned case." *Id.*

The Court will disallow this examination as beyond the scope of the remand and this Court's scheduling order, and will grant the government's motion to quash his subpoenas and deny defendant's motion to compel his testimony.[4]  Whatever the reasons Speranza - and not Orsini - drafted this second affidavit, the fact remains that the averments were taken verbatim

---

[4] Defendant's Supplemental Motion to Compel (doc. no. 535) the government to disclose former Special Agent Speranza's last known address and contact information will be denied for the reasons set forth herein.

from Orsini's affidavit.  Speranza's dubious, inferential "opinion" about Orsini's credibility or the internal decision making of the responsible FBI agents or officials that Speranza should draft the second affidavit are simply not proper subjects of examination for the reasons previously and hereafter stated.

**Witnesses Nos. 6-7.  Hadi Kadhim and Donald Kanai**.  These witnesses are alleged to be ACCO 1 and ACCO 11, respectively, in Orsini's affidavit of probable cause.  Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶¶ 6-7.   Defendant asserts that Orsini's statements in his affidavit about what these ACCO employees stated to him were false and misleading in material ways to the United States Magistrate Judge's probable cause determination.  Defendant proffers that Mr. Kadhim will testify that, contrary to Orsini's statement in his affidavit, he never told Orsini that Dr. Wecht used the ACCO histology lab for private autopsies, and that Mr. Kanai is ACCO 11 whose information provided to Orsini was not, as Orsini states in his affidavit, corroborated or otherwise shown to be reliable.  Defendant indicates that the subject matter of Mr. Kanai's testimony will be related to his statements concerning movement of "other boxes from ACCO."

Kadhim and Kanai may be called to testify at the supplemental suppression hearing, but examination of these witnesses is not for general discovery purposes.  See Fed.R.Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence . . . .").  Their testimony must be focused on the issues before this Court (i.e., whether Orsini's affidavits of probable cause contained material falsehoods or omissions and whether the search for the boxes was properly executed), and confined to defendant's proffers.  Their testimony may or may not contradict Orsini's statements, and may or may not be

material, but at this juncture, it would be premature to make that determination.

The government's motion to quash Kadhim's and Kanai's appearances and testimony will therefore be denied, and defendant's motion to compel will likewise be granted.

**Witness No. 8. Paul Boas, Esquire.** Defendant's proffer on Attorney Paul Boas is that, in another case in this district, Special Agent Orsini was the lead case agent, the government decided not to call him, and defendant Ryan Schneiderlochner, represented by Mr. Boas, was acquitted. Defendant asserts that Mr. Boas' testimony is "relevant to establish the government's view of Orsini's credibility . . . ." Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶8.

The "government's view about Orsini's credibility" with a jury in another case, the prosecutors' subjective beliefs and reasons for not calling him to testify in that case, and the defense attorney's opinion about the prosecutors' beliefs and opinions, are completely irrelevant and immaterial to the only issues before this Court, namely *this Court's view* of Orsini's credibility viz a viz defendant's "repeated assertions that Agent Orsini lacks veracity and that his affidavits in support of the search warrants were 'infected with his deliberate and reckless falsehoods . . . ,'" *Wecht*, 484 F. 3d at 210, and with regard to the execution of the search warrants at Wecht Pathology and Box 20.

Mr. Boas will not be permitted to opine on such a tangential a matter ranging so far afield from the issues before the Court, i.e., his subjective view of "the government's" subjective view about a matter that is strictly for the Court to decide, as the arbiter of credibility. The government's motion to quash subpoenas for the appearance and testimony of Mr. Boas will therefore be granted, and defendant's motion to compel him to testify will be denied.

**Witnesses Nos. 9-14. Special Agent Kevin Donovan (retired), former Special Agent in Charge of the Newark, New Jersey Field Office of the FBI, Deputy Assistant Director Chris Briese, Special Agent in Charge of the Pittsburgh Field Office when Orsini was transferred to Pittsburgh, Michael DeFeo, former Assistant Director of the FBI and of the DOJ's Office of Professional Responsibility ("OPR"), Special Agent in Charge of the Pittsburgh Office Ray Morrow, Special Agent Robert Cooke of New Jersey, and former Special Agent Susan Corrado who was an OPR investigator.**

Regarding these half dozen current or retired FBI agents and officials listed in defendant's proffer, (Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at ¶¶ 9-14), the Court finds that their potential testimony is marginally relevant to the general issue of defendant's character for truthfulness, but clearly the proffers indicate that defendant intends to adduce specific instances of conduct bearing on Orsini's credibility, and extrinsic evidence on specific instances of such conduct is not permitted by Fed.R.Evid. 608(b) which, although it does not bind the Court, informs its decision and guides its discretion.  Rule 608, "Evidence of Character and Conduct of Witness," provides in part:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed.R.Evid. 608(b).

As the commentary to Rule 608 explains, the Rule was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness."  (citations omitted). The commentary further explains:

-27-

By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403. . . .

It should be noted that the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act.  For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness. See *United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999) . . . . See also Stephen A. Saltzburg, Impeaching the Witness: Prior Bad Acts and Extrinsic Evidence, 7 Crim. Just. 28, 31 (Winter 1993) ("counsel should not be permitted to circumvent the no-extrinsic-evidence provision by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act").

The purpose of Rule 608(b)'s ban on extrinsic evidence is "to avoid minitrials on wholly collateral matters which tend to distract and confuse the jury." *Carter v. Hewitt*, 617 F.2d 961, 971 (3d Cir. 1980), citing *United States v. Simmons*, 444 F.Supp. 500, 507 (E.D.Pa. 1978). Where, however, the extrinsic evidence is obtained from the very witness whose credibility is under attack, the reasons behind the extrinsic evidence ban lose some of their force, and should therefore be relaxed.  *Hewitt*, 617 F.2d at 972.

In *United States v. Davis*, 183 F.3d 231 (3d Cir. 1999), which is referenced in the above commentary to Rule 608, the Court of Appeals for the Third Circuit held that, under Federal Rule of Evidence 608(b), specific instances of conduct may be inquired into of defendant police officer on cross-examination, at the discretion of the court, because they were probative of defendant's truthfulness or untruthfulness, but limited the reach of this rule as follows:

This does not suggest that the government may introduce either reports or evidence that Davis was suspended for forty-four days, or documentation of the Internal Affairs determination that Davis lied about the subway-pass incident. Such evidence would not only be hearsay to the extent it contains assertion of fact,

it would be inadmissible extrinsic evidence under Rule 608(b). More precisely, the government cannot make reference to Davis's forty-four day suspension or that Internal Affairs found that he lied about the subway-pass incident. The government needs to limit its cross examination to the facts underlying those events. To impugn Davis's credibility, the government properly can question Davis about misappropriating departmental gasoline for personal use and putting a false name in a gas log, and it may question Davis about lying to an Internal Affairs officer about ripping up an individual's subway pass. If he denies that such events took place, however, the government cannot put before the jury evidence that he was suspended or deemed a liar by Internal Affairs. . . .

*Davis*, 197 F.3d 662, 663, amending opinion at 183 F.3d 231.

As noted above, the Court in its discretion will permit cross examination of Special Agent Orsini by extrinsic evidence, namely, his disciplinary records at document no. 60, and will permit inquiry into the actual discipline meted (at least to a point).  However, presentation of these other six witnesses' remote and extraneous testimony about Orsini's disciplinary history and underlying specific instances of conduct would involve needless consumption of time and resources on a collateral matter, would lead to numerous "mini-trials," and would amount to unnecessary harassment of Special Agent Orsini given that his credibility will be thoroughly and adequately tested on cross examination by questioning him about his disciplinary records at document no. 60 that have previously been supplied to defendant and which are now a matter of public record. See Fed.R.Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").  See also *United States v. Willis*, 43 F.Supp.2d 873 (N.D.Ill. 1999) (government's failure to disclose racist comments allegedly made by DEA supervisor did not constitute *Brady* violation where

-29-

such evidence would have been inadmissible under Fed.R.Evid. 608(a): "this Court would not have let a drug conspiracy trial include a protracted side-show of [one agent] branding his colleagues incompetent, dishonest bigots and the colleagues branding [the agent] a paranoid troublemaker. . . . [I]nterpersonal squabbles between agents cannot be allowed to take center stage in a criminal trial."), citing *United States v. Bari*, 750 F.2d 1169, 1179 (2d Cir. 1984) (noting that "[c]onducting a mini-trial on" the implications of Rule 608(b) evidence "might well have been a time-wasting, confusing digression ultimately degenerating into a battle of [expert] opinions."); *United States v. Ortiz*, 5 F.3d 288, 290-91 (7th Cir. 1993) (stressing the minimal relevance of an agent's having misreported his hours of court attendance).

The Court rejects defendant's unsupported and conclusory statement that this proffered evidence is independently admissible as Rule 404(b) evidence to show "motive and the absence of mistake on the part of Orsini." Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at 5. What six FBI agents and officials have to say about Orsini's underlying conduct years ago in New Jersey on completely unrelated matters has no bearing at all on his possible alleged motives to fabricate in this investigation or to show an absence of mistake in drafting affidavits in 2005 in Pittsburgh.

The Court will not permit the supplemental suppression hearing to become a side show by listening to myriad other agents and officials express their "views" on Orsini's credibility, to testify as to the underlying specific instances of Orsini's conduct that led to his discipline, or to get into other extraneous matters that are too remote from the issues before this Court at this time -- Orsini's credibility in light of defendant's "repeated assertions that Agent Orsini lacks veracity and that his affidavits in support of the search warrants were 'infected with his deliberate and

reckless falsehoods . . . ,'" *Wecht*, 484 F. 3d at 210, and with regard to the execution of the search

warrants at Wecht Pathology and Box 20.  Since the additional testimony defendant seeks is so

remote in time and space, and so far in derogation of the rules of evidence which inform this

Court's decision, this Court will grant the government's motion to quash subpoenas[5] for the

individuals listed in Defendant's Brief in Opposition to Government's Motion (doc. no. 533), at

¶¶9-14, and will deny his motion to compel their testimony.[6]

> **B.**     **Defendant's Proffers for Documents.**

Defendant also seeks to compel and/or to offer into evidence fourteen (14) numbered

documents or groups of documents at the supplemental suppression hearing, which are discussed

*seriatim*.

**Document Request No. 1.   Underlying documents from Orsini disciplinary**

**proceedings.**  The documents listed in paragraphs 1a- 1w, Defendant's Brief in Opposition to

Government's Motion (doc. no. 533), at ¶¶ 1a-1w, are the underlying documents and transcripts

from Special Agent Orsini's disciplinary proceedings which defendant states were referenced in

the actual reprimand reports.  For the reasons set forth above, the subpoenas for all of these

documents will be quashed, and motion to compel their production will be denied.

**Document Request No. 2.  Document No. 60.**  This document, Orsini's disciplinary

---

[5]  Defendant's Supplemental Motion to Compel (doc. no. 535) the government to disclose former Michael DeFeo's last known address and contact information will be denied for the reasons set forth herein.

[6] The Court expresses no opinion on the government's argument that the Privacy Act, 5 U.S.C. § 552(b)(2) and (6) and DOJ regulations require affidavits setting forth adequate cause to obtain testimony from FBI agents and officials and that defendant has not met those requirements.

reports and records, although itself extrinsic evidence of specific instances of conduct bearing on Orsini's credibility, will be admitted at the supplemental suppression hearing.  Such extrinsic evidence of specific instances of conduct bearing on credibility is not admissible at a trial when offered, as here, solely for the purpose of attacking the witness' credibility.  Nevertheless, because this is a preliminary determination on admissibility at a suppression hearing in which the rules of evidence do not strictly apply but only serve to guide the Court's discretion; because the arbiter of credibility at this stage is the Court and not a lay jury; because document no. 60 is a public record; and because both this Court and defendant have had these records to consider for well over a year, the Court will permit defendant to introduce the disciplinary records at the supplemental suppression hearing and to cross examine Orsini with reference to said disciplinary records.

**Document Requests Nos. 3 and 4.  Government's Legal Brief and Motion.**

Defendant seeks to offer into evidence the government's brief for appellant in the Court of Appeals in this case, and the government's motion in limine (doc. no. 343) to preclude argument on document no. 60, for the purpose of showing "that the United States does not believe that its lead agent is credible." Defendant's Brief in Opposition to Government's Motion at 17.  These legal documents are not evidence; instead, they represent argument of counsel[7] and they are not relevant or helpful to this Court's determination on the two issues before it.

**Document Request No. 5.  Verdict slip from _United States v. Schneiderlochner_ at Criminal Action No. 05-268 .**  This verdict slip from another criminal proceeding is not

---

[7] As this Court (and most if not all courts) instruct every civil and criminal jury, "statements, arguments, questions and comments by the lawyers are not evidence."

relevant, material or admissible, for the reasons set forth above.

**Document Requests Nos. 6-10.  Media articles and accounts.** Defendant wishes to introduce various newspaper articles and other media coverage he asserts are relevant to show the government's and the FBI's views about Orsini's credibility, and for various hearsay "admissions" contained therein concerning Special Agent Orsini and his OPR disciplinary reports.  Pretrial publicity does not become evidence in a court of law simply because it has been published, especially where said publicity contains opinions about opinions (or "views") and hearsay related to wholly collateral matters.  Introduction of these items would increase the chances that these legal proceedings could become a media side show and that the jury pool could be corrupted.

Attempts to get such pretrial publicity into the record at the suppression hearing may serve some other strategic purposes for defendant but they have no evidentiary value to the issues remaining for this Court to resolve because said publicity would not have a "tendency to make the existence of any fact that is of consequence to the determination of the" issues before the Court  -- whether Orsini's affidavits of probable cause contained material falsehoods or omissions and whether the search for the boxes was properly executed -- "more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

**Document Requests Nos. 11-12.  Affidavits of probable cause prepared by Special Agents Speranza and Schaltenbrand, and accompanying search warrants.**  For the reasons set forth above regarding the proffered testimony by these witnesses, these affidavits and search warrants are not relevant, material or admissible in the supplemental suppression hearing.

For all of the reasons set forth above,

**AND NOW, this 13ᵗʰ day of September 2007**, IT IS HEREBY ORDERED as follows:

Defendant's Motion to Compel (doc. no. 524) is DENIED in part and GRANTED in part as set forth more fully above;

Government's Motion for Entry of an Order Regarding Scope of September 18, 2007, Hearing and Motion to Quash Subpoenas (doc. no. 527) is DENIED in part and GRANTED in part as set forth more fully above; and

Defendant's Supplemental Motion to Compel (doc. no. 535) is DENIED.

**SO ORDERED** this 13ᵗʰ day of September, 2007.

 **s/ Arthur J. Schwab**
Arthur J. Schwab
United States District Judge

cc:     All counsel of record