IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| CYRIL H. WECHT | ) | |

## ORDER OF COURT

Before the Court is the Government's Motion to Voluntarily Dismiss Certain Counts Without Prejudice (doc. no. 641) ("Motion to Voluntarily Dismiss") pursuant to Fed.R.Crim.P. 48(a), filed along with a Brief in Support on December 28, 2007. After careful consideration of the government's motion and brief and defendant's Brief in Opposition to the Government's Motion to Voluntarily Dismiss Certain Counts Without Prejudice (doc. no. 654) ("Brief in Opposition"), the Court will grant the motion to dismiss in part, but will deny it to the extent the government seeks dismissal without prejudice.

The Court finds that, considering the late stage of the proceedings (jury selection will commence on January 10, 2008) and the government's explanation for voluntarily dismissing 43 of 84 counts, said counts should be dismissed with prejudice in the interests of fundamental fairness to defendant, Dr. Cyril H. Wecht, as well as the public interests.

### Government's Motion to Voluntarily Dismiss

The government moves to voluntarily dismiss counts 25-27, 29, 31, 34, 37, 39, 41-63, 65-70, 72-76, and 79 of the 84 count indictment against defendant, which counts are "related to specific wires and mailings." Generally, the government states that its Motion to Voluntarily Dismiss is made in an effort to "streamline" the proof and timing of the trial by eliminating many witnesses and much documentary evidence, "while keeping wholly intact each and every scheme

to defraud alleged in the indictment." Motion to Voluntarily Dismiss , at 1 and ¶ 1. Specifically, the Motion to Voluntarily Dismiss states as follows:

> 2. The government is not seeking to dismiss any of the four schemes to defraud or reduce the scope or extent of those charged schemes in any way. The government is not seeking to dismiss any of the honest services fraud charges or theft charges set forth [respectively] in counts 1-24 and 80-84. The government has instead elected to voluntarily dismiss certain specific wires and mailings and proceed to trial on representative counts from the mail and wire fraud charges at counts 25-79. The result will be a substantially streamlined set of charges that may be proven more efficiently and with less use of court time and resources, without a diminution of any of the underlying fraud schemes.
>
> 3. From the mail fraud charges at counts 25-32, the government has elected to proceed to trial on representative mailings at counts 28, 30 and 32 in order to streamline the proof required and reduce the trial time necessary to establish the scheme, and in light of recent discoveries that certain individual packages set forth in the mail fraud counts at 25-27, 29, and 31 may have been hand-delivered.
>
> 4. From the wire fraud charges at counts 33-42, the government has elected to proceed to trial on five representative wires at counts 33, 35, 36, 38, and 40, in order to streamline the proof required and reduce the trial time necessary to establish the scheme.
>
> 5. From the mail fraud charges at counts 43-79, the government has elected to proceed to trial on four of the mailings, counts 64, 71, 77, and 78, representing one count for each of four counties [allegedly] falsely billed for mileage reimbursement.

Motion to Voluntarily Dismiss at ¶¶ 2-5.

The Motion to Voluntarily Dismiss also indicates that the government would "submit a revised exhibit list reducing the number and volume of trial exhibits, and a revised witness list substantially reducing the number of prospective trial witnesses." Id. at ¶ 1.

In its brief in support, the government unequivocally states that, because it has not relinquished any of the four fraud schemes charged in the original indictment and will proceed to

2

trial on all four schemes through the non-dismissed counts, "once trial begins, double jeopardy will prevent subsequent prosecution of the defendant on the individual mail and wire fraud counts proposed for dismissal." Brief in Support of Motion to Voluntarily Dismiss at 2. The government further asserts that the public interest favors dismissal, that the result will be a more efficient and expeditious trial, and, again, that defendant will not be prejudiced by dismissal of the 43 counts because "once trial begins, the dismissed counts could not be re-filed because jeopardy will have already attached to the underlying fraudulent schemes." Id.

**Defendant's Motion for Enlargement of Time to Respond**

On December 28, 2007, the Court directed defendant to respond "by noon on Thursday, 1/3/2008." On December 29, 2007, defendant filed a "Motion to Defer the Defendant's Response to Government's Motion to Voluntarily Dismiss Certain Counts Without Prejudice (Doc. 641)" (doc. no. 643), with supporting brief. Defendant asserted in said motion that he was unable to file an informed response to the government's Motion to Voluntarily Dismiss until it filed its revised witness and exhibit lists and provided defendant with exculpatory Brady materials that necessarily had to exist in light of the government's admission that "certain individual packages set forth in the mail fraud counts at 25-27, 29, and 31 may have been hand-delivered."

Defendant was most concerned that the government was seeking, by its Motion to Voluntarily Dismiss and its intention to revise its witness and exhibit lists, somehow to sweep under the rug alleged prosecutorial and judicial misconduct regarding a prospective listed witness, Mr. Gerald Schiller,[1] who lies at the heart of defendant's Emergency Petition for Writ of

---

[1] As this Court stated in its December 21, 2007 "Order of Court Re: Jury Selection, Voir Dire, and Other Pretrial Issues (See Doc. Nos. 598, 599, 604, and 607)" (doc. no. 629), in deciding to empanel an innominate jury, this Court considered neither the arguments made by the

3

Mandamus that was filed on December 28, 2007 in the United States Court of Appeals for the Third Circuit, at 07-4974.[2] "Motion to Defer the Defendant's Response to Government's Motion to Voluntarily Dismiss Certain Counts Without Prejudice (Doc. 641)" (doc. no. 643) at ¶11 ("For example, the defense strongly suspects that, among other things, the reason the government did not tender the new witness and exhibit lists with the motion [to voluntarily dismiss certain counts] is because the Government will now remove Government Exhibit 367, Schiller's documentary evidence, previously admitted by the Court . . . and Schiller himself from its witness list, given the uncorrected misconduct surrounding Schiller" as cited in defendant's Emergency Petition for a Writ of Mandamus filed in the Court of Appeals). See also id. at ¶¶ 4 and 10. For this and other reasons, defendant requested that this Court order the government to first produce its new revised witness and exhibit lists and any Brady materials regarding the to-be-dismissed counts, and then permit him to file his response to the government's Motion to

---

government regarding defendant's alleged witness intimidation viz Mr. Schiller nor a fax letter received by the Court from Gerald and Elise Schiller, which letter was simultaneously filed at (doc. no. 630). See Order of December 21, 2007 (doc. no. 629) at 30, n.9. To the contrary, the Court's decision was made solely on the basis of the intense and unprecedented (for this District) pretrial publicity that has been generated in this case and the other reasons set forth therein.

[2] Filed along with his Emergency Petition for Writ of Mandamus, defendant simultaneously filed with the Court of Appeals, at 07-4794, an Emergency Motion for Permission to File an Expanded Petition for Writ of Mandamus because it "implicates numerous lengthy decisions, including a 64-page opinion . . . as well as dozens of other rulings in the case," an Emergency Motion to Expedite Consideration of Emergency Petition for Writ of Mandamus, and an Emergency Application to Stay District Court Proceedings Pending Disposition of Petition for Writ of Mandamus. On January 2, 2008, without awaiting the response from the government, the Court of Appeals granted the petition for permission to file the expanded mandamus petition and, in a one-paragraph Order (doc. no. 653) without explanation, summarily denied the expanded Petition for Writ of Mandamus by Cyril H. Wecht, stating "District Judge Arthur J. Schwab shall continue to preside over this matter." The Court of Appeals also dismissed as moot the motion to expedite consideration of the petition for writ of mandamus and the motion to stay the proceedings.

Voluntarily Dismiss shortly after he received all of those items.

The Court denied defendant's Motion to Defer his Response by text-only order dated December 31, 2007.

## The Government's Revised Exhibit List and Witness List

Later in the day on December 31, 2007, the government filed its revised witness and exhibit lists (doc. nos. 647-48). Said revised witness list did not remove Schiller as a potential government witness nor did the revised exhibit list eliminate Government Exhibit 367, the correspondence between Schiller and the defendant, see Notice of Filing Revised Exhibit and Witness Lists (doc. no. 649) at notes 2 and 3, which defendant "strongly suspect[ed]" was the government's motive behind the Motion to Voluntarily Dismiss certain counts.

The government's Notice of Filing Revised Exhibit and Witness Lists also indicates that there were "errors in the bates range of exhibits," including that Exhibit G-362 "had an erroneous bates number at the end of the bates range that, upon correction, adds a substantial number of pages to the document." Id. at 1, n. 1.

## Defendants' Brief in Opposition to Motion to Voluntarily Dismiss

Defendants' Brief in Opposition (doc. no. 654) objects to the motion to voluntarily dismiss 43 counts of the indictment without prejudice, and to the government's revised exhibit list, and requests that this Court provide the following relief:

    (i) conduct a hearing into the government's rationale for moving to dismiss the 43 counts without prejudice;

    (ii) dismiss counts 25-27, 29, 31, 34, 37, 39, 41-63, 65-70, 72-76, and 79 of the 84 count indictment with prejudice either before trial or after the jury is empaneled and

jeopardy has attached;

 (iii) deny the government's "request to add 10,000 pages to an exhibit on the eve of trial"; and

 (iv) deny the government's motion to the extent it seeks to withdraw Government Exhibits 1318-1322 regarding the Wecht Institute at Duquesne University or, alternatively, admit such evidence as defense exhibits.

## Discussion

### Federal Rule of Criminal Procedure 48

Rule 48 provides:

> Dismissal
>
> (a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.
>
> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial.

Fed.R.Crim.P. 48.

The primary purpose of the requirement that the prosecutor obtain leave of court is to prevent harassment of a defendant by a prosecutor's charging, dismissing, and recharging the defendant with a crime. United States v. Derr, 726 F.2d 617, 619 (10th Cir. 1984), citing Rinaldi v. United States, 434 U.S. 22, 29 n. 15 (1977) (per curiam) (additional citations omitted). As

explained in Federal Practice & Procedure Criminal (3d ed.), Wright, King, Klein and Henning, 3B Fed. Prac. & Proc. Crim. 3d § 812, at common law, a prosecutor could enter a nolle prosequi without approval of the court, and this was the rule recommended to the Supreme Court by the Advisory Committee on Criminal Rules, but "the Court itself, on promulgating the rules, added the requirement in Rule 48(a) that only by leave of court could the prosecution file a dismissal." While the reasons for the "leave of court" addition is unstated, Rule 48(a) "has been read as an expression by the Court of a belief that entry of a nolle prosequi should be a permissive right only, and as intended to prevent harassment of a defendant by charging, and then dismissing without placing a defendant in jeopardy." Id. (footnotes omitted).

In Rinaldi v. United States, 434 U.S. 22 (1977) (per curiam), the Supreme Court explained:

> The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e. g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection. . . . But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.

434 U.S. at 30, n. 15 (citations omitted).

To effectuate Rule 48(a), "the trial court at the very least must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision." Derr, 726 F.2d at 619, citing United States v. Salinas, 693 F.2d 348, 352 (5th Cir.1982) (additional citations omitted). In In re Richards, 213 F.3d 773 (3d Cir. 2000), Chief Judge

7

Becker of the Court of Appeals for the Third Circuit examined the scope of Rule 48(a) and a similar local rule, LR 128(b), of the Territorial Court of the Virgin Islands, as follows:

> Rule 48(a)'s text does not share the flaw of [the Territorial Court's Local] Rule 128(b) insofar as it does not set forth substantive standards that allow the Territorial Court to apply its judgment for what constitutes the public interest in contravention of the judgment of local prosecutors. Indeed, courts have generally viewed their role in granting leave to dismiss under 48(a) to be a limited one, because "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made or whether to dismiss a proceeding once brought." Newman v. United States, 382 F.2d 479, 480 (D.C.Cir.1967).
>
> Though this Court has not ruled on the standards that should be employed in determining whether a judge abuses his or her discretion in denying a motion under Rule 48(a), other courts have opined on the subject. The Supreme Court has suggested that the rule exists to prevent harassment by prosecutors, though it has been vague on what other circumstances may justify its application. . . . [quoting Rinaldi] . . . .
>
> The jurisprudence in the courts of appeals has not been significantly clearer, save for the proposition that refusal to dismiss is appropriate only in the rarest of cases. As one of our sister courts has summarized:
>
>> Rule 48(a) is primarily intended to protect a defendant from prosecutorial harassment, Rinaldi . . ., but it also permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts. See United States v. Hamm, 659 F.2d 624, 628-29 (5th Cir. 1981); United States v. Cowan, 524 F.2d 504, 512-13 (5th Cir.1975), cert. denied, 425 U.S. 971 (1976); cf. United States v. Derr, 726 F.2d 617, 619 (10th Cir. 1984). A court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is 'clearly contrary to manifest public interest.' Cowan, 524 F.2d at 513; see also [ United States v.] Miller, 722 F.2d [562,] 566 [9th Cir. 1983]; United States v. Salinas, 693 F.2d 348, 352 (5th Cir.1983) . . . .
>
> United States v. Carrigan, 778 F.2d 1454, 1463 (10th Cir. 1985).
>
> The concern of prosecutorial harassment speaks to the danger that a prosecutor will engage in a cycle of levying and dismissing charges against a

8

particular defendant. The other concerns are harder to describe. Courts have equated a dismissal that is clearly contrary to the public interest with one in which the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial. . . .

* * *

Even though a judge's discretion under Rule 48(a) is severely cabined, the rule may serve an important interest as an information- and accountability-producing vehicle. A judge who hears a Rule 48(a) motion has independent responsibilities that may bear on his or her decision on the requested dismissal. In other words, there are independent rights, interests, and duties that a court may protect, see Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941), through using Rule 48(a) as a "sunshine" provision that exposes the reasons for prosecutorial decisions.

As discussed above, one such right is that of the defendant to not be harassed by repeated prosecutions that are dismissed before jeopardy attaches. Another interest that could be served by a hearing is the court's inherent authority to ensure that its processes are not being abused. Cf. Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.") . . . . In holding the hearing that he so long ago scheduled, [Territorial Court] Judge Swan may therefore appropriately inquire into whether there were any improprieties attending the Government's petition to dismiss the Richards's prosecution.

Additionally, the public has a generalized interest in the processes through which prosecutors make decisions about whom to prosecute that a court can serve by inquiring into the reasons for a requested dismissal. See United States v. Cowan, 524 F.2d 504, 512-13 (5th Cir.1975) ("We think [Rule 48(a) ] should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed."). While this interest cannot rise to the substantive ability to compel a prosecution to proceed, it does argue in favor of allowing a court to force prosecutors to publicly reveal their reasons for not proceeding before granting a requested dismissal. Bringing these decisions into the open may, in turn, lead to attempts by the public to influence these decisions through democratic channels.

213 F.3d at 786-89 (parallel and certain other additional citations omitted).

Although the prosecution does not have the burden of proof to show that dismissal is in

the public interest, it is required to provide sufficient reasons to the district court that amount to more than a mere conclusion. United States v. KPMG LLP, 2007 WL 541956, *5 (S.D.N.Y. 2007), citing United States v. Fastow, 300 F.Supp.2d 479, 482 (S.D.Tex. 2004) and United States v. Ammidown, 497 F.2d 615, 620 (D.C.Cir. 1973) ("Mere conclusory statements by the [Government] that dismissal is in the public interest" will not suffice under Rule 48(a)). If the government fails to provide sufficient reasons, a district court may conduct a hearing to determine the reasons behind its decision. In re Richards, 213 F.3d at 788-89.

Ordinarily, a district court's dismissal of an indictment pursuant to a Rule 48(a) government motion to dismiss is without prejudice. United States v. Welborn, 849 F.2d 980 (5th Cir. 1988); United States v. Stoker, 522 F.2d 576 (10th Cir. 1975). However, after considering the government's explanation for its motion to dismiss without prejudice, a district court is authorized to dismiss with prejudice where it finds that dismissal without prejudice is contrary to the public interest or is necessary to protect a defendant against prosecutorial harassment of the sort Rule 48(a) is designed to prevent, e.g., charging, dismissing, and recharging on dismissed counts when the defendant objects to dismissal of an indictment without prejudice. See, e.g., In re United States, 345 F.3d 450 (7th Cir. 2003), citing Derr, 726 F.2d at 619 and United States v. Towill, 548 F.2d 1363, 1369-70 (9th Cir. 1977); United States v. Gatto, 763 F.2d 1040 (9th Cir. 1985); United States v. Flemmi, 283 F.Supp. 2d 400, 407-09 (D.Mass. 2003); United States v. Rossoff, 806 F.Supp. 200 (C.D. Ill. 1992).

### Application

The Court finds that it is appropriate and necessary to dismiss the 43 counts of the indictment against Dr. Wecht with prejudice, to protect him against the possibility of prosecution

(charging, dismissing, and recharging) on the dismissed counts at some undetermined point in the future, after he already has been tried on 41 other counts. Defendant was indicted on all 84 counts almost 2 full years ago, and is now on the eve of trial with jury selection to commence on January 10, 2008.

It simply would not be fair to Dr. Wecht, at this late stage of the proceedings, to allow the specter of future prosecution on the dismissed counts to hang over his head throughout jury selection and trial. Because the government explicitly states that, once the jury is empaneled, double jeopardy will prevent re-indictment and prosecution of defendant on the dismissed charges, the government cannot be heard to complain that this Court deems it in the interest of fairness to the defendant to dismiss the 43 counts <u>with</u> prejudice. Moreover, the public interest in a fair, orderly and expeditious trial, which, as "streamlined," will enure to the benefit of the parties and to the fair administration of criminal justice because the jury will be better able to focus its attention on a much narrower set of charges, defenses and evidence, and which will contribute to the conservation of strained judicial resources, also favor dismissal of counts 25-27, 29, 31, 34, 37, 39, 41-63, 65-70, 72-76, and 79 of the 84 count indictment <u>with</u> prejudice.

**Rulings**

For all of the foregoing reasons, the Court will GRANT the government's Motion to Voluntarily Dismiss Certain Counts Without Prejudice (doc. no. 641) in part, but will DENY said motion to the extent it seeks dismissal without prejudice. IT IS FURTHER ORDERED that counts 25-27, 29, 31, 34, 37, 39, 41-63, 65-70, 72-76, and 79 of the 84 count indictment will be DISMISSED <u>with</u> prejudice after the jury is empaneled and jeopardy has attached. The government shall file a Redacted Indictment with consecutively numbered counts setting forth

11

the remaining counts 1 through 41.

As to defendant's requested relief, the Court HEREBY ORDERS as follows:

(i)  defendant's request that the Court conduct a hearing into the government's rationale for moving to dismiss the 43 counts without prejudice is DENIED as moot, since the Court has sufficient information to dismiss the counts with prejudice;

(ii)  defendant's request that the Court dismiss counts 25-27, 29, 31, 34, 37, 39, 41-63, 65-70, 72-76, and 79 of the 84 count indictment with prejudice is GRANTED, and said counts will be DISMISSED after the jury is empaneled and jeopardy has attached;

(iii)  defendant's request that the Court deny the government's "request to add 10,000 pages to an exhibit on the eve of trial" is GRANTED; and

(iv)  defendant's request that the Court deny the government's motion to the extent it seeks to withdraw Government Exhibits 1318-1322 regarding the Wecht Institute at Duquesne University is GRANTED, and defendant is free to use and refer to said exhibits as is appropriate under the Rules of Evidence and this Court's practices and procedures and previous Orders of Court.

**SO ORDERED** this 4th day of January, 2008.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record