IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| CYRIL H. WECHT | ) | |

**ORDER OF COURT ON GOVERNMENT'S MOTION TO QUASH
DEFENDANT'S TRIAL SUBPOENAS DUCES TECUM (DOC. NO. 688)**

**I. Previous "Trial" Subpoenas and Court's Rulings**

On December 21, 2008, this Court entered an Order (doc. no. 632) addressing, in part, the Government's Motion to Quash (Doc. No. 600) defendant's subpoenas duces tecum directing persons to produce documents prior to trial at defense counsel's office. Because it is important to place the current dispute over subpoenas in context, that Order is repeated herein as follows:

**Government's Motion to Quash Trial Subpoenas (doc. no. 600)**

The government seeks an Order of Court quashing "trial" subpoenas duces tecum directed by defendant to an unknown number of potential trial witnesses, without prior court order, to produce documents on January 23, 2007, before the actual start date of the trial (January 28, 2008), but after the date jury selection is to commence (January 10, 2008). Moreover, the subpoena duces tecum attached to the government's motion directed production of requested documents at defense counsel's law office, <u>not</u> at the trial judge's Courtroom or anywhere else in the United States District Courthouse.

The "Subpoena in a Criminal Case" attached as Exhibit "A" to said Motion (doc. no. 600) is directed to "Stephen A. Zappala, Jr., District Attorney - Allegheny County." The first of seven pages is the Form AO-89 "Subpoena in a Criminal Case," which, by form language included by the Administrative Office of the United States Courts, commands Zappala to "appear in the United States District Court at the place, date and time specified below or any subsequent place, date and time set by the court, to testify in the above referenced case." The "place" typed in the appropriate box is the "United States District Court," specifically, "Courtroom 7-C," and the date and time typed in the appropriate box is "1/23/07 at 9:00 a.m." The box commanding the person subpoenaed to bring documents or other objects with him describes the items to be produced as "SEE ATTACHMENT 'A.'"

The six typed pages attached to Zappala's AO-89 Form Subpoena in a Criminal Case initially gives three pages of definitions (much like a notice of deposition in a civil proceeding might), and lists ten categories of documents to be provided to "Jerry S. McDevitt, Esq." at the law offices of "Kirkpatrick & Lockhart Preston Gates Ellis, LLP," on or before January 23, 2008.

Thus, the attachment to the Zappala trial subpoena requires him to produce documents to counsel for defendant at counsel's office, not at the United States District Courthouse, five days before the start of the trial, and also requests Zappala to appear at the Courthouse five days before the start of the trial. The subpoena is, therefore, more properly characterized as a <u>pretrial</u> subpoena.

Further, the Zappala pretrial subpoena seeks documents relating to matters that the Court has ruled, several times now, are not relevant to any issue that will be before the Court and jury at trial, in the Court's rulings (doc. nos. 193 and 591) denying defendant's two (2) Motions to Suppress (doc. nos. 55 and 509); rulings (doc. no. 264 and 557) denying defendant's two (2) Motions to Dismiss (doc. nos. 180 and 540); the Court's rulings on the admissibility of evidence (doc. no. 593); and rulings on motions in limine (doc. no. 594).

The applicable Rule of Criminal Procedure is Rule 17(c), which states:

**(c) Producing Documents and Objects.**

**(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court <u>before trial or before they are to be offered in evidence</u>. <u>When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them</u>.

Construing Rule 17(c), the United States Supreme Court has stated:

It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. Rule 17 provided for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant. <u>Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials</u>.

<u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 220 (1951). <u>Bowman</u> was followed and explained further in <u>United States v. Nixon</u>, 418 U.S. 683, 698-700

(1974):

> A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise. The leading case in this Court interpreting this standard is <u>Bowman Dairy Co.</u> . . . This case recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, id., at 220, 71 S.Ct. 675; (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials, ibid. As both parties agree, cases decided in the wake of <u>Bowman</u> have generally followed Judge Weinfeld's formulation in <u>United States v. Iozia</u>, 13 F.R.D. 335, 338 (SDNY 1952), as to the required showing. Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' (footnotes omitted.)

The Zappala <u>pretrial</u> subpoena violates the express language of Rule 17(c), and the precedent applying that rule, which plainly require Court approval "to produce the designated items in court before trial <u>or before they are to be offered in evidence</u>," as well as violating the above previous rulings of this Court, in several ways.

First, . . . Zappala's subpoena to appear on January 23, 2008, five days before any evidence will be taken, is not at all a subpoena to appear at a trial to give testimony or present documents; it is what it is, a <u>pretrial</u> subpoena for attendance and production of documents prior to the actual trial, and that requires an order of court. . . . [citations omitted]

Second, it is difficult to imagine how the Court could have been any clearer in its previous rulings that Zappala's former law office, his partnership buyout, any legal services that may have been provided his former law firm by Wecht Pathology, communications between Zappala and Orsini, etc., are irrelevant to the issues properly joined for trial, and the Zappala pretrial subpoena, therefore, fails the first <u>Nixon</u> [relevancy] prong, . . .

Third, . . . the "place" where the Zappala subpoena directs him to produce these irrelevant documents is <u>in defense counsel's law office at Kirkpatrick & Lockhart Preston Gates Ellis, LLP.</u> . . . Defendant does not even attempt to explain how defense counsel's law office could possibly be permitted by this

Court's Rule 17 subpoena commanding a person to appear in the United States District Court, Courtroom 7-C, bringing to that place (the Courthouse) whatever documents are requested.

\* \* \*

Finally, defendant argues . . . that the Court lacks the authority to supervise defendant's use of the Court's subpoena powers.  While third parties who may have been subpoenaed have not yet filed motions to quash, the government has filed a Motion to Quash (doc. no. 600), the matter is properly before the Court, and <u>defective trial subpoenas that abuse the Rule 17 process and alter the terms of this Court's subpoenas are within the inherent authority of the Court to correct</u>. See <u>Bowman</u>, 341 U.S. at 221 (<u>it is the responsibility of the Court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose</u>); <u>Weldon</u>, 2006 WL 905932, \*1 ("With or without standing to move to quash the subpoena duces tecum, the Court has the inherent authority to review the propriety of trial subpoenas issued pursuant to Rule 17."); <u>United States v. Weissman</u>, 2002 WL 31875410, \*5 (S.D.N.Y. 2002) ("Although the Defendant asserts that the Government lacks standing to move to quash, the Court will nonetheless address the Government's objections because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c))," citing <u>Nachamie</u>, 91 F.Supp.2d at 561 (even if government lacks standing, "before a court issues a Rule 17(c) subpoena, it must be satisfied that the subpoena complies with the requirements of the Rule.").

The Court therefore will GRANT the Motion to Quash the Zappala subpoena, and any other subpoenas that specify a date prior to the start of trial or a place other than this Court.  To the extent the government's motion to quash requests the Court to direct defendant to identify all witnesses who have received a similarly defective subpoena duces tecum and produce copies of such subpoenas to the government, the Court will DENY the government's request.  Thus, the Court orders as follows:

   (1)   Defendant shall not serve any additional improper subpoenas duces tecum and shall comply with the requirements of Rule 17 of the Federal Rule of Criminal Procedure.

   (2)   All subpoenas duces tecum issued by defendant that purport to require production of any materials before trial are hereby quashed.

   (3)   All subpoenas duces tecum issued by defendant that purport to require production of any materials to any location other

than the Courtroom, and other than to both the government
and defendant, are hereby quashed.

Further, for the foregoing reasons, defendant's Motion to Immediately
Vacate the Injunction Contained in the December 4, 2007 Order (doc. no. 609) is
DENIED.

Order of Court (doc. no. 32), at 1-7 (emphasis added).

## II. Final Pretrial Conference - January 22, 2008

The Court conducted a final pretrial conference on January 22, 2008. Despite the controversy over the initial set of pretrial subpoenas issued without leave of Court and the Court's rulings quashing the unauthorized pretrial subpoenas, defendant did not raise any issue with regard to the new round of subpoenas now challenged in the government's motion to quash, most of which had been served on the persons named therein prior to the final pretrial conference.[1] See Minute Entry for January 22, 2008 (doc. no. 680).

## III. Defendant's New Trial Subpoenas (Docs. No. 702, 704)

On January 25, 2008, the Friday before the first week of trial, the government filed another motion to quash subpoenas issued for Monday, January 28, 2008, the first day of the trial. Given the imminent trial date and the serious questions raised by the government about defendant's use of the Court's subpoenas, the Court entered the following "stop-gap" Order:

> Before the Court is the government's Motion to Quash Defendant's Trial Subpoenas Duces Tecum (doc. no. 688), which seeks an Order of Court quashing all of defendant's Rule 17 subpoenas for January 28, 2008 and for the first two weeks of trial "as improper efforts to obtain discovery materials for use in questioning other witnesses or impeachment, rather than efforts to obtain relevant and admissible evidence for use while the producing witness testifies." The Court will direct a response by defendant on or before January 25, 2008, at 5:00 p.m.

---

[1] Subpoenas were served on November 29, 2007 (doc. no. 702-05), January 23, 2008 (doc. no. 702-11) and January 28, 2008 (doc. no. 704). The other subpoenas were served from December 28, 2007 through January 8, 2008.

> Without deciding the motion to quash, however, the Court will deny the government's motion with regard to Monday's witnesses to the following extent. Because Monday, January 28, 2008, will commence with the Court's preliminary instructions to the jury, followed by counsels' opening statements, it will be a "short" trial day for testimony, and it is unlikely that more than one or two witnesses will be testifying on the first day of trial. Any potential logistical problems with having numerous witnesses appear with documents should be manageable.
>
> Thus, the Court will DENY the government's motion to quash subpoenas duces tecum for the witnesses it will call on Monday, January 28, 2008, but will direct the government to inform defense counsel on or before 4:00 p.m. today the names of those witnesses. The Court will GRANT the motion to quash defense subpoenas for any other witnesses scheduled for January 28, 2008, only.
>
> As to the motion to quash subpoenas for other witnesses who have been subpoenaed to appear during the "first two weeks of trial," the Court will hold the issue in abeyance pending defendant's response to the government's motion, and will permit oral argument on the motion following opening statements or at the close of the day (the timing to be decided on Monday after discussion with counsel), with each side having five minutes to argue their respective position.

Order of Court (doc. no. 690).

Defendant filed his Brief in Opposition to Government's Motion to Quash (doc. no. 693) on January 25, 2008. A number of defendant's subpoenaed "witnesses" arrived at the Courthouse on January 28, 2008, and a dispute arose among counsel as to how to handle the documents produced pursuant to defendant's Rule 17(c) subpoenas. (The Court places "witnesses" in quotes because many of the "Custodians" subpoenaed to produce documents are not listed as witnesses for either the government or the defendant.) As an interim measure, by agreement of counsel, the Court took possession of the documents produced in Court pending the Court's resolution of the subpoena dispute, and at the end of the day, the Court entered the following Order:

> ORDER as to CYRIL H. WECHT directing that on or before 8:00 a.m., January 29, 2008, defense counsel shall file the subpoenas duces tecum issued by defendant and returnable January 28, 2008, so that there will be a record upon which this Court will assess whether said subpoenas were properly issued

pursuant to Rule 17(c) and the standards enunciated by the United States Supreme Court in Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) and United States v. Nixon, 418 U.S. 683, 698-700 (1974), and by the United States Court of Appeals for the Third Circuit in, inter alia, United States v. Cuthbertson,630 F.2d 139, 146 (3d Cir. 1980). Signed by Judge Arthur J. Schwab on 1/28/08. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter.

Text-only Order, January 28, 2008.

Pursuant to this Order, defendant submitted his Notice of Filing of Subpoenas Duces Tecum in Compliance with the Court's January 28, 2008 Text Order (doc. no. 702), attaching 12 subpoenas, and a Supplemental Notice (doc. no. 704) attaching a thirteenth. The government filed a Bench Brief Regarding Defendant's Trial Subpoena Duces Tecum (doc. no. 703). The Court heard argument from counsel during the morning of the second day of trial, January 29, 2008, primarily directed to the subpoena directed to the government's first witness, Mr. Edward Strimlan.

Because Mr. Strimlan was already on the stand from the previous day of trial, the Court first reviewed the subpoena directed to that witness, see Defendant's Notice of Filing of Subpoenas (doc. no. 702-7), considered the argument of counsel (which included defense counsel's proffer) and the written filings, considered the scope of the cross examination on the morning of January 29, 2008, and, although the Court considered the subpoena to be "untimely" in the sense that defendant should have filed a motion for production prior to trial, see Bowman Dairy Co., 341 U.S. at 220 ("Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."), the Court reviewed in camera the documents produced by Mr. Strimlan in response to the subpoena.

The Court thereafter directed that copies of Mr. Strimlan's CV (Court Exhibit No. 1) and

Certificate of Medical Degree from the University of the Carribean (Court Exhibit No. 2) be produced to all counsel, but that the financial information produced (Wage Statements/ W-2 forms) was not relevant or admissible. See Minute Entry January 29, 2008 (doc. no. 708). Despite the Court's Order directing production of Court Exhibits 1 and 2 to counsel, counsel did not refer to these documents in cross examination of Mr. Strimlan. Mr. Strimlan indicated he had no other documents in response to defendant's Document Requests Nos. 1-10. Thus, the Court implicitly DENIED the motion to quash the subpoena duces tecum for Mr. Strimlan.

### IV. Subpoenas Directed to Custodians of Records Concerning Mr. Strimlan

Certain subpoenas are directed to the Custodians of Records from Point Park University and from LaRoche College, concerning Mr. Strimlan's salary, his applications for employment, all documents he received by facsimile, all course curricula he generated, and many other Strimlan- related documents, and the word "document" is defined and construed in the broadest possible, most all encompassing terms. Defendant's Notice of Filing of Subpoenas (doc. no. 702-2, 702-3, respectively). These are not subpoenas directing a "witness" to produce documents, but rather, are first class tickets for a classic discovery expedition.

A Rule 17(c) subpoena duces tecum is issued on this Court's authority, which <u>obligates</u> this Court to review the propriety of subpoenas ostensibly issued pursuant to this Court's authority where, as here, there is reason to believe the subpoena process is not being used in the manner or spirit in which it was intended.[2] Rule 17(c) provides that the Court "<u>may direct the witness to produce the designated items in court</u> before trial or <u>before they are to be offered in</u>

---

[2] In addition to the standing/ inherent authority cases cited in this Court's Order of December 21, 2007 (doc. no. 632), see also <u>United States v. Ail</u>, 2007 WL 1229415, *4-*6 (D. Ore. 2007) (collecting cases) and <u>United States v. Nektalov</u>, 2004 WL 1574721, *1 (S.D.N.Y. 2004) (collecting cases).

evidence [and when] the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."

Defendant plainly is attempting to use the Rule 17(c) subpoenas directed to custodians of records from various entities as a general discovery device to locate documents from third party entities about a witness that might possibly be useful for cross examination. This should have been done by formal motion prior to trial, but that would have required defendant to make a showing of relevance, admissibility and specificity.

As our Court of Appeals stated in an unpublished opinion:

> Decisions regarding the quashing or modification of Rule 17 subpoenas are committed to the district court's discretion. United States v. Cuthbertson, 630 F.2d 139, 145 (3d Cir. 1980). Thus, absent an abuse of discretion, we will not disturb the district court's exercise of its discretion on appeal. In order to sustain the validity of trial subpoena, the defendant "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Furthermore, it is well settled that trial subpoenas may not be used merely as a means for obtaining discovery in criminal cases. Id. at 698. Indeed, "courts must be careful that [a] Rule 17(c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed.R.Crim.P. 16." Cuthbertson, 630 F.2d at 146.
>
> Thus, although a defendant's subpoena may be motivated only by the venerable principle of "nothing ventured, nothing gained," more is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters. Id.
>
> The district court concluded that the subpoena was not aimed at relevant information, and that it raised sensitive privacy issues for other members of the Credit Union. Eisenhart was given the opportunity to conduct discovery in the fifteen months prior to his sentencing, yet he was neither able to identify relevant evidence to be subpoenaed, nor provide a sufficient foundation to allow the district court to conclude that the Credit Union subpoena targeted relevant evidence. Accordingly, we cannot say that the district court abused its discretion in quashing it.

United States v. Eisenhart, 43 Fed.Appx. 500, 505 (3d Cir. 2002).

Had defendant filed a motion pretrial, so that these issues could have been dealt with in an orderly and effective fashion at the final pretrial conference or earlier, defendant would have had the burden of showing that (1) the requested documents were evidentiary and relevant; (2) the documents were not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) defendant could not properly prepare for trial without such production and inspection in advance of trial, and that the failure to obtain such inspection might unreasonably delay the trial; and (4) the application is made in good faith and is not a general "fishing expedition." By waiting until trial to have thirteen "witnesses" appear with documents, defendant is not relieved of all of these obligations nor is he given carte blanche to have witnesses (and third party non witnesses) produce documents for whatever reason.[3]

Even if the fishing expedition would have made a catch, the documents about Mr. Strimlan in the hands of records custodians regarding his applications for employments, income, academic credentials, etc, are simply not proper impeachment material subject to a Rule 17(c) subpoena, Cuthberston (II), 630 F.2d at 144-45, nor has defendant made a showing that they are admissible and relevant, nor has he identified the documents subject to the subpoena with requisite specificity.

---

[3] Defendant suggests that the government relies on precedent dealing only with pretrial subpoenas, and that Wilson v. United States, 221 U.S. 361 (1911) authorizes the trial subpoenas he has issued, over the Court's seal, in this case. Defendant's reliance on the Wilson case is misplaced. The Supreme Court held in Wilson that a subpoena duces tecum is not invalid because it contains no ad testificandum clause, but simply directs a corporation, which could not give oral testimony, to produce books, and that a corporation cannot resist, upon the ground of the constitutional protection against self-incrimination, the compulsory production of its books and papers before a grand jury under a subpoena duces tecum. The Wilson case offers no support for defendant's use of Rule 17(c) to command production of documents for trial, nor can it trump the Supreme Court's subsequent Nixon and Bowman Dairy Co. cases which speak more precisely to the use and misuse of Rule 17(c) subpoenas.

For the foregoing reasons, the subpoenas directed to the Custodians of Records from Point Park University and from LaRoche College are QUASHED. Defense counsel shall inform these custodians of the Court's ruling and direct said custodians to contact the Court on or before 2:00 p.m. on February 6, 2008, to retrieve any documents produced, which are currently in the Court's possession. If the Court is not contacted by that date, the Court will discard such documents.

## V. Remaining Subpoenas

Including Strimlan, five subpoenas are for individuals who appear on witness lists, and the rest of the subpoenas are for custodians of records of various public and private entities, some of whom are listed on defendant's witness list. Many of these remaining subpoenas seem to be of the fishing expedition variety, i.e., designed to obtain information that might be helpful to the defendant in examining other witnesses. See for example, Subpoenas for Custodian of Records of Allegheny County Medical Examiner's Office and University of Pittsburgh School of Medicine, and many of the document requests in the Subpoena for Bennet I. Omalu, M.D. (docs. no. 702-5, 702-06 and 702-13and 704). Others are more focused and request production of specific documents. See for example Subpoena for Custodian of Records of MCS Group, Inc. (doc. no. 702-10).

Defendant could have filed a motion pretrial to produce documents in advance of trial, and the Court would have ordered responses and ruled on them at the final pretrial conference, according to the governing standards. Even now, defendant may request the Court to exercise its discretion to "direct the witness to produce the designated items in court . . . before they are to be offered in evidence," as is provided by Rule 17(c), but at this point in the proceedings, in the midst of trial, the Court is not going to wade in the waters to get caught up in defendant's tangled

fishing lines.

Under all of the circumstances, and in light of defendant's questionable use of Rule 17(c) to date, if he wishes to obtain documents pursuant to this Court's Rule 17(c) subpoenas, defendant will be required to file an appropriate motion setting forth, with requisite particularity, the specific documents or categories of documents to be produced by witnesses, with proffers as to relevancy and admissibility, and showing that the application is made in good faith and is not intended as a general fishing expedition. The government will be ordered to respond promptly, in writing to the extent feasible, and this Court will make rulings based on the motion and response, rather than have people show up in the halls with boxes of documents for this Court's staff to secure and maintain custody over in chambers until we figure out what to do with them.

Having had the opportunity to review these subpoenas, the Court will GRANT the government's Motion to Quash Defendant's Trial Subpoenas Duces Tecum (doc. no. 688), but without prejudice to defendant to file appropriate motions for issuance of Rule 17(c) subpoenas duces tecum pertaining to listed witnesses, setting forth specific proffers as to relevancy, admissibility and other matters described above. For all of the foregoing reasons, defendant's remaining subpoenas (docs. no. 702 and 704) are QUASHED, without prejudice, as set forth more fully above. Defense counsel is directed to notify any subpoenaed person who brought documents to Court on January 29 and 30, 2008, to retrieve them on or before February 6, 2008 at 2:00 p.m.. Otherwise, the Court will dispose of any such documents.

**SO ORDERED** this 30th day of January, 2008.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record