IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| **CYRIL H. WECHT** | ) | |

### ADDITIONAL ORDER RE: "ORDER OF COURT ON GOVERNMENT'S MOTION TO QUASH DEFENDANT'S TRIAL SUBPOENAS DUCES TECUM (DOC. NO. 688)"

On January 31, 2008, this Court entered an Order (doc. no. 710) granting the government's motion to quash defendant's trial subpoenas duces tecum. In most salient part, said Order provides as follows:

> Defendant plainly is attempting to use the Rule 17(c) subpoenas directed to custodians of records from various entities as a general discovery device to locate documents from third party entities <u>about</u> a witness that might possibly be useful for cross examination. This should have been done by formal motion prior to trial, but that would have required defendant to make a showing of relevance, admissibility and specificity.
>
> * * *
>
> Had defendant filed a motion pretrial, so that these issues could have been dealt with in an orderly and effective fashion at the final pretrial conference or earlier, defendant would have had the burden of showing that (1) the requested documents were evidentiary and relevant; (2) the documents were not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) defendant could not properly prepare for trial without such production and inspection in advance of trial, and that the failure to obtain such inspection might unreasonably delay the trial; and (4) the application is made in good faith and is not a general "fishing expedition." By waiting until trial to have thirteen "witnesses" appear with documents, defendant is not relieved of all of these obligations nor is he given carte blanche to have witnesses (and third party non witnesses) produce documents for whatever reason. [footnote omitted]
>
> Even if the fishing expedition would have made a catch, the documents <u>about</u> Mr. Strimlan in the hands of records custodians regarding his applications for employments, income, academic credentials, etc, are simply not proper impeachment material subject to a Rule 17(c) subpoena, <u>Cuthberston (II)</u>, 630

F.2d at 144-45, nor has defendant made a showing that they are admissible and relevant, nor has he identified the documents subject to the subpoena with requisite specificity.

For the foregoing reasons, the subpoenas directed to the Custodians of Records from Point Park University and from LaRoche College are QUASHED. Defense counsel shall inform these custodians of the Court's ruling and direct said custodians to contact the Court on or before 2:00 p.m. on February 6, 2008, to retrieve any documents produced, which are currently in the Court's possession. If the Court is not contacted by that date, the Court will discard such documents.

### V. Remaining Subpoenas

Including Strimlan, five subpoenas are for individuals who appear on witness lists, and the rest of the subpoenas are for custodians of records of various public and private entities, some of whom are listed on defendant's witness list. Many of these remaining subpoenas seem to be of the fishing expedition variety, i.e., designed to obtain information that might be helpful to the defendant in examining other witnesses. See for example, Subpoenas for Custodian of Records of Allegheny County Medical Examiner's Office and University of Pittsburgh School of Medicine, and many of the document requests in the Subpoena for Bennet I. Omalu, M.D. (docs. no. 702-5, 702-06 and 702-13and 704). Others are more focused and request production of specific documents. See for example Subpoena for Custodian of Records of MCS Group, Inc. (doc. no. 702-10).

Defendant could have filed a motion pretrial to produce documents in advance of trial, and the Court would have ordered responses and ruled on them at the final pretrial conference, according to the governing standards. Even now, defendant may request the Court to exercise its discretion to "direct the witness to produce the designated items in court . . . before they are to be offered in evidence," as is provided by Rule 17(c), but at this point in the proceedings, in the midst of trial, the Court is not going to wade in the waters to get caught up in defendant's tangled fishing lines.

Under all of the circumstances, and in light of defendant's questionable use of Rule 17(c) to date, if he wishes to obtain documents pursuant to this Court's Rule 17(c) subpoenas, defendant will be required to file an appropriate motion setting forth, with requisite particularity, the specific documents or categories of documents to be produced by witnesses, with proffers as to relevancy and admissibility, and showing that the application is made in good faith and is not intended as a general fishing expedition. The government will be ordered to respond promptly, in writing to the extent feasible, and this Court will make rulings based on the motion and response, rather than have people show up

> in the halls with boxes of documents for this Court's staff to secure and maintain custody over in chambers until we figure out what to do with them.
>
> Having had the opportunity to review these subpoenas, the Court will GRANT the government's Motion to Quash Defendant's Trial Subpoenas Duces Tecum (doc. no. 688), but without prejudice to defendant to file appropriate motions for issuance of Rule 17(c) subpoenas duces tecum pertaining to listed witnesses, setting forth specific proffers as to relevancy, admissibility and other matters described above. For all of the foregoing reasons, defendant's remaining subpoenas (docs. no. 702 and 704) are QUASHED, without prejudice, as set forth more fully above. Defense counsel is directed to notify any subpoenaed person who brought documents to Court on January 29 and 30, 2008, to retrieve them on or before February 6, 2008 at 2:00 p.m.. Otherwise, the Court will dispose of any such documents.

Order of Court (doc. no. 710) on Government's Motion to Quash Defendant's Trial Subpoenas Duces Tecum (doc. no. 688), at 10-12.

The following day, February 1, 2008, the fourth day of testimony in the trial, defense counsel orally objected to the Court's order as infringing defendant's constitutional rights to compulsory process at trial, due process and possibly his right to counsel, by requiring him to file motions to obtain subpoenas for production of documents setting forth proffers as to relevancy, admissibility and specificity, and stating that the application is made in good faith and not in service of a fishing expedition.

After careful consideration of defendant's arguments and of the Court's two prior rulings, the Court deems it appropriate to issue additional rulings regarding defendant's use of subpoenas duces tecum pursuant to Rule 17(c) going forward throughout the trial. Accordingly, the Court issues the following additional rulings relating to the Court's previous rulings at documents no. 632 and 710.

3

1. **"In Advance" Production Subpoenas and Rulings**.

The Court's prior rulings should be read in the context in which they arose. The rulings were generated by the government's objections to defendant's specific uses and misuses of Rule 17(c) subpoenas, first to secure production of documents by third parties prior to trial, see Order of Court re: Government's Motion to Quash (Doc. No. 600); etc. (doc. no. 632), and second, to secure production of documents by third parties and by listed witnesses "before [such documents] are to be offered in evidence," Fed.R.Crim. P. 17(c), without filing a motion to obtain production of documents prior to trial or before the witness who is subpoenaed to come to trial with the documents would testify and the moving party would offer said documents into evidence. See Order of Court (doc. no. 710) on Government's Motion to Quash Defendant's Trial Subpoenas Duces Tecum (Doc. No. 688).

Thus, the Court's prior rulings were directed at defendant's attempts to obtain documents in advance of trial or after commencement of trial but in advance of a given witness' testimony or before the documents sought from a non-witness third party would be offered into evidence, and the Court held that Rule 17(c) could not be used to obtain documents in advance in the absence of a motion and a showing that the <u>Nixon</u> factors had been met. The Court's rulings on "in advance" production delineated the showing that the moving party would have to make.

2. **Trial subpoenas to listed witness**.

A motion by either party is not necessary for a Rule 17(c) trial subpoena which merely directs a witness to bring specified documents with him/ her to trial on a specific date, when he or she testifies. If the subpoenaed person did not file a motion to quash, such subpoena ordinarily would not come to the Court's attention until trial, and any disputes as the legitimacy

4

of the subpoena or as to disclosure of documents to all counsel necessarily would await the unfolding of events at trial.

The problem in a lengthy trial is that a party is not sure when a listed witness will be called by the other side, if at all, making production in advance of the actual date of testimony desirable or, alternatively, making the actual date more important so that the subpoena could be specific. In any event, Rule 17(c) is not a general discovery device, and advance production in the absence of a motion is not contemplated by the rule. However, the problem could be ameliorated by issuing a subpoena stating an "on or after" date, and directing the witness that the exact date of production will be the date on which the person is instructed to come to Court to testify.

To facilitate the presentation of evidence, the parties remain free to agree to a time and place in advance of testimony at which <u>both sides</u>, with or without this Court's in camera review, could examine the documents produced, but if such agreement is not reached, then we will have to take the witnesses one at a time as they are called, as the Court did with Mr. Strimlan on the first and second days of testimony.[1] See Order of Court (doc. no. 710) on Government's Motion to Quash Defendant's Trial Subpoenas Duces Tecum (Doc. No. 688), at 7-8; Text Order, January 25, 2008 (doc. no. 690). The Court continues to encourage counsel to work out a method to minimize any trial disruption that would be necessitated by continuances if counsel are

---

[1] After reviewing in camera the documents Mr. Strimlan brought with him on the first and second days of trial, the Court found that some documents should be turned over to counsel, but that other personal financial documents were not relevant. See Minute Entry, Day Two of Trial, (doc. no. 708) (indicating that copies of Strimlan's CV and medical diploma, produced by Strimlan pursuant to defendant's subpoena duces tecum and reviewed in camera, and marked as Court Exhibits 1 and 2, were handed to both parties at approximately 12:15pm ). Neither party used these exhibits in their examination of Strimlan.

unable to agree to a more effective procedure.

3. **Ex Parte Motions to Obtain Documents from a Witness in Advance**.

The Court understands defendant's reluctance to file motions to obtain documents in advance of a witness' testimony so as not to reveal trial strategy, but his options are limited by Rule 17(c) and by the preference for on the record motions and rulings espoused by the United States Court of Appeals. United States v. Wecht, 484 F.3d 194, 209, 211-12 (3d Cir. 2007). It will be recalled that on April 7, 2006, the government filed an ex parte motion (doc. no. 60) seeking a ruling that it did not have to disclose Special Agent Bradley Orsini's disciplinary records, which the government recognized would be potential Brady impeachment evidence, because it did not intend to call him as a witness. Even though the Court immediately denied the government's motion, ruled in defendant's favor without requiring a response, and directed the government to disclose Orsini's disciplinary records at the time other Brady materials were to be disclosed, defendant complained quite vociferously and repeatedly about this ex parte procedure.

Defendant continued to complain about this Court's "ex parte procedure" to the United States Court of Appeals for the Third Circuit in his first writ of mandamus to have this Court disqualified on the grounds of alleged bias evidenced by this and other pretrial rulings. The Court of Appeals rejected this argument, and in doing so, although it did not flatly prohibit ex parte motions and practice in this case, nevertheless expressed its preference that all motions and communications in this case be on the record, in the absence of good cause shown, stating as follows:

B. Unsealing the Orsini Records

Our judicial process is generally an open one that permits the public to attend trials and view judicial records. This openness "promotes public confidence in the judicial system," "diminishes possibilities for injustice, incompetence, perjury, and fraud," and "provide[s] the public with a more complete understanding of the judicial system. " Littlejohn v. BIC Corp., 851 F.2d 673, 678 (3d Cir. 1988). Under certain limited circumstances, however, courts may restrict or altogether close judicial processes to the public.

In this case, the District Court allowed the government to submit a motion under seal regarding its potential obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

\* \* \*

2. The Discretion of District Courts To Amend Protective and Sealing Orders

We also believe it would have been proper for the District Court to unseal the records pursuant to its general discretionary powers. Generally, documents filed with a trial court are available for both the opposing party and the public to view. Because the government's motion concerned its obligation to turn over certain materials to the defense, it asked for permission to file its papers under seal. This meant that although the motion would be noted on the docket, the defense and public would not be able to view the filed papers or learn their contents.

The Court ultimately ordered the government to turn over copies of the materials to the defense but allowed it first to move for a protective order; otherwise, Wecht could have disseminated the information to the public. After briefing, the Court issued a protective order prohibiting the defense from reproducing or disseminating the records, or from disclosing their contents in open court. Upon intervention by the media outlets, the Court reconsidered the various interests at stake, and determined that the [disciplinary] records should be unsealed and the protective order modified. The District Court determined that there was not "good cause" for keeping the records sealed or for preventing their dissemination. We believe the District Court acted well within its authority, and that it certainly did not abuse its discretion.

Courts may issue protective orders "for good cause" under Rule 16 of the Federal Rules of Criminal Procedure. See also Pansy, 23 F.3d at 786 (noting in the civil context that "it is well-established that a party wishing to obtain an order of

7

protection over discovery material must demonstrate that `good cause' exists for the order of protection") (quoting Fed.R.Civ.P. 26(c)). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. (citation and internal quotation marks omitted). The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause. Id. at 787-91.

Wecht, 484 F.3d at 206-07, 211-12.

This Court finds that the Court of Appeals discourages ex parte motions,[2] but will permit the trial court to entertain such motions where the movant shows good cause. Therefore, if defendant wishes to secure documents in advance of a witness' testimony but, because he fears that filing the motion required by Rule 17(c) will require him to divulge trial strategy to the detriment of his defense or in violation of his constitutional rights, he may file his motion ex parte, but he will be required to make a showing of good cause for keeping the motion ex parte.[3] See doc. no. 710 at 10-12.

---

[2] "Some courts have construed Rule 17(c) as not providing for the issuance of a pretrial subpoena duces tecum upon an ex parte application under any circumstance. . . . Other courts have held that ex parte applications under Rule 17(c) may be appropriate in limited circumstances. . . . Finally, a few courts have held that ex parte applications under Rule 17(c) may be granted routinely, provided that the relevancy, admissibility, and specificity standards of . . . Nixon . . . are satisfied." United States v. Fox, 275 F.Supp. 2d 1006, 1010-11 (D. Neb. 2003) (collecting cases). The United States District Court for the Northern District of California has a Local Rule permitting issuance of a Rule 17(c) subpoena obtained by ex parte motions supported by a declaration setting forth facts showing good cause. See United States v. Johnson, 2008 WL 62281 (N.D. Ca. 2008).

[3] Without the Court of Appeals' guidance, this Court would have considered a procedure permitting a movant to file an ex parte motion to obtain a ruling on subpoenas to produce documents in advance of trial or before the witness is to testify, so as not to divulge trial strategy. However, the Court considers its options in this regard to have been severely limited, but not entirely foreclosed, by the ruling of the Court of Appeals in a directly analogous situation regarding defendant's vigorous challenge to the government's discovery related motion.

8

**SO ORDERED** this 4th day of February, 2008.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record