IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**    )
    )
    **v.**    )        **Criminal No. 06-0026**
    )        **Electronically Filed**
**CYRIL H. WECHT**    )

**ORDER OF COURT DENYING DEFENDANT'S
MOTIONS IN LIMINE (DOCS. NO. 803 AND 808)**

Defendant has filed two motions in limine seeking to preclude the testimony of certain

government witnesses and to have stricken the testimony of certain other government witnesses

who already have testified regarding the government's allegations that, as part of the scheme to

deprive the citizens of Allegheny County of the intangible right of honest services, "from in and

around June 2003 through in and around December 2005, defendant Cyril H. Wecht caused

Allegheny County cadavers to be provided to Carlow College for use by students in cases where

autopsies were not permitted by 16 P.S. § 4237" and that "from in and around June 2003 through

in and around December 2005, defendant Cyril H. Wecht caused Allegheny County cadavers to

be provided to Carlow College pursuant to an agreement whereby in exchange for those cadavers

and other consideration, he obtained the use of a laboratory at Carlow College at which he could

engage in his private work . . . ." Revised Indictment (doc. no. 656-2), at ¶ 27(h) and (i).

Defendant's motions in limine are based upon the following syllogism:

(i) the above quoted language of the indictment charge that defendant "agreed to supply

cadavers for free lab space beginning in June 2003, and that cadavers began to be sent in June

2003 pursuant to this alleged agreement, Defendant's Brief in Support of Motion in Limine (doc.

no. 804), at 5;

(ii) the above quoted language of the indictment can <u>only</u> be interpreted as charging that

there was agreement explicitly stating that defendant will provide cadavers to Carlow College (now Carlow University) in exchange for the use of Carlow's laboratory and as alleging that cadavers actually began to be supplied to Carlow in June 2003;

(iii) Sister Grace Ann Geibel, former President of Carlow College and architect of the agreement between defendant and Carlow, testified unequivocally that there was never an agreement to exchange cadavers for lab space, but rather, only an agreement by which defendant would develop the Biology/Autopsy Technician program at Carlow and provide professional educational services to Carlow; and

(iv) even though Sister Grace Ann Geibel also testified, and other documentary and testimonial evidence confirmed that, as part of the agreement which commenced on or about June 2003, defendant had an agreement in and around June 2003 through in and around December 2005 to provide cadavers to Carlow for use in its educational training program by which defendant received rent free use of its laboratory facilities, and in fact, cadavers were provided during the charged period, defendant's agreement with Carlow does not, as a matter of law, support an inference that it involved exchanging cadavers for the use of the laboratory training because Sister Grace Ann Geibel would never characterize that agreement as one to exchange cadavers for lab space.

Defendant's syllogism is fundamentally flawed. First, the allegations of the indictment are not as constricted as defendant maintains, and do not require the government to prove an agreement explicitly stating that cadavers would be traded for free lab space, or that cadavers actually must have been supplied in June 2003.

Second, the agreement charged in the indictment has not "now been shown not to have

existed" as defendant claims. Defendant's Motion in Limine (doc. no. 803) at ¶ 2. What has been shown is that Sister Grace Ann Geibel does not and never would have <u>characterized</u> defendant's agreement with Carlow as an agreement to exchange cadavers for lab space, only as an agreement by which defendant would develop the Biology/Autopsy Technician program at Carlow and provide professional educational services to Carlow to educate Carlow students.

Although Sister Grace Ann Geibel was one of the architects of the agreement, her <u>characterization</u> of defendant's agreement with Carlow does not establish, as a matter of law, that there was no agreement including, as part of that agreement, that defendant would supply Allegheny County cadavers to Carlow, and he would receive the free use of the laboratory facilities for educational purposes and for his own private work.

After careful consideration of defendant's Motions in Limine and supporting briefs, the government's briefs in opposition thereto, and in light of the testimony and evidence adduced to date, the Court finds that there is sufficient evidence from which a jury might reasonably conclude that "from in and around June 2003 through in and around December 2005, defendant Cyril H. Wecht caused Allegheny County cadavers to be provided to Carlow College for use by students in cases where autopsies were not permitted by 16 P.S. § 4237" and that "from in and around June 2003 through in and around December 2005, defendant Cyril H. Wecht caused Allegheny County cadavers to be provided to Carlow College pursuant to an agreement whereby in exchange for those cadavers and other consideration, he obtained the use of a laboratory at Carlow College at which he could engage in his private work . . . ," as charged in the Revised Indictment, notwithstanding Sister Grace Ann Geibel's interpretation of the agreement and her difference of opinion about the nature of the agreement charged in the indictment.

For the foregoing reasons,

Defendant's Motions in Limine (docs. no. 803 and 808) are HEREBY DENIED.


                                        **SO ORDERED** this 11th day of March, 2008.
                                         s/ Arthur J. Schwab
                                        Arthur J. Schwab
                                        United States District Judge

cc:    All counsel of record