IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| **CYRIL H. WECHT** | ) | |

### ORDER OF COURT DENYING DEFENDANT'S
### OBJECTION AND EMERGENCY MOTION TO VACATE
### ORDER DISMISSING JUROR NO. 1 (DOC. NO. 845)

Defendant objected to this Court's oral Order on April 2, 2008, excusing juror no. 1 for good cause, and directing the remaining eleven jurors to continue their deliberations, pursuant to Fed.R.Crim.P. 23(b)(3), and the Court overruled the objection. Transcript, April 2, 2008, at 8. Defendant has now incorporated his objection in Defendant's Objection and Emergency Motion To Vacate Order Dismissing Juror No. 1 (doc. no. 845).

After careful consideration of defendant's motion and brief in support and the government's response thereto, the Court will deny the motion. Rule 23(b)(3) explicitly expresses a strong preference for continuing on-going jury deliberations with eleven jurors, *with or without* agreement of counsel, where, as here, a juror had to be excused for good cause. Under all of the circumstances, it is not a close question.

At about 1:30 pm on April 1, 2008, the Court staff was notified that juror no. 1 had some medical issues, which included chest pains and tingling in his left arm. The transcript of proceedings on the morning of April 2, 2008, the eighth day of jury deliberations following a months long trial that commenced on January 28, 2008, shows that the following events transpired on the preceding day of jury deliberations.

The Nurse who is stationed in this Courthouse immediately came to the jury room,

evaluated juror no. 1's condition and, thereafter, juror no. 1"was transported with court staff to the hospital and has been receiving tests throughout that afternoon and into the evening and has a series of tests scheduled for this morning." Transcript, April 2, 2008, at 2. Consistent with his doctor's medical recommendation, juror no. 1 clearly conveyed his and his doctor's wishes to be excused from further deliberations in light of his medical condition, the continued stress of deliberation, and the additional testing that was scheduled for that day. Id. Out of respect for the juror's privacy, the Court did not disclose the exact nature of his medical condition or his exact whereabouts. *Id*. at 3.

Rule 23(b)(3) provides, in no uncertain terms: "Court Order for a Jury of 11. After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." Fed.R.Crim.P. 23(b)(3). The United States Supreme Court Advisory Committee's Commentary to Rule 23 explains that, not only is it constitutionally permissible to proceed to jury verdict with less than 12 jurors, *Williams v. Florida*, 399 U.S. 78 (1970), it is the *strongly preferred procedure* for district courts to follow when faced with the situation where a juror becomes seriously incapacitated or otherwise found to be unable to continue service upon the jury, particularly so "when the trial has been a lengthy one and . . . the remedy of mistrial would necessitate a second expenditure of substantial prosecution . . ." with the attendant expenditure of defense, prosecution and judicial resources. Thus, Rule 23 was *explicitly* amended in 1983 by the United States Supreme Court, based upon its Advisory Committee's recommendation that "it is far better to permit the deliberations to continue with a jury of 11 than to make a substitution at that point," which position is "in accord with that of most commentators and many courts." *Id*.

Given the *explicit* and *unambiguous* language of Rule 23(b)(3), the Court indicated that it had researched the matter since the problem arose the previous day at 1:30 pm, and that, since it was clear that the recommended procedure is to go with a jury of eleven persons, asked the parties if they would stipulate to continuation of deliberations with eleven jurors. Transcript, April 2, 2008, at 3. The Court then recessed for about five to ten minutes while the parties discussed the Court's request, noting that the jury was obviously not permitted to deliberate while the matter was being discussed and resolved. Transcript, April 2, 2008, at 3-4.

After the brief recess, the parties reconvened and informed the Court of their respective positions. Neither the government nor defense counsel requested additional time to consider the matter or suggested, in any way, that they had insufficient time to consider the matter. Even though all parties and the Court had from early afternoon the previous day to research the law and learn the parameters and options available, the Court would gladly have granted additional time to either party, had any counsel simply requested it, as the Court generally has done throughout trial and jury deliberations. In the absence of such request, the Court presumed that counsel were ready to voice their positions, and they proceeded to do just that.

The government agreed with the Court's proposal to continue with eleven jurors as provided by Rule 23(b)(3), stating that it believed the record was clear there was good cause to excuse the juror, because "[b]oth he and his physician, according to the record before us, have said that continued deliberations endangers his medical condition and his health." *Id*. at 4. The government also correctly noted that excusing an ill juror and continuing with eleven is "actually an encouraged method of proceeding," *id.*, according to *United States v. Gambino*, 788 F.2d 938, (3d Cir. 1986), which held that the district court did not abuse its discretion in opting for an

3

eleven member panel after one juror was excused for cause after jury deliberations had commenced.

The United States Court of Appeals for the Third Circuit explained in *Gambino* that the Supreme Court itself had indicated to the Advisory Committee on the Criminal Rules that it preferred this procedure, and the "Committee concluded that the better alternative was to amend Rule 23(b) to permit the judge, on his own motion, to proceed with a jury of eleven." *Id*. at 949. Moreover, the Court of Appeals found that the district court "was under no obligation to consider the feasibility of any other options . . . ." *Id*.

Counsel then presented defendant's position. First, he asked whether the juror in question was the foreman, because it might help defendant make an informed decision. Transcript, April 2, 2008, at 5. The Court overruled the government's objection to this request, and informed defendant that, as evidenced by written questions signed by the foreman and the likely secretary, the ill juror was not the foreman or the secretary. *Id*. at 5-6. Defendant then stated his position, and asked the Court to delay making a decision until we had more information about juror no. 1's medical condition, following whatever additional testing was to be done, and juror no. 1's treating physicians had rendered some sort of report or opinion to the Court in a form acceptable to defense counsel. Counsel also minimized the seriousness of juror no. 1's medical condition by speculating that any juror might be "to some degree, stressed by deliberations. I guess that it is probably stressful for everybody in a jury room, as well as everybody involved in a criminal trial like this." *Id*. at 6.

Contrary to counsel's argument that juror no. 1 was simply experiencing the normal stress of deliberations, juror no. 1 had, in fact, been experiencing serious symptoms of potentially life

4

threatening illness. Not " everybody in [the] jury room, [nor] . . everybody involved" in this criminal trial had been experiencing serious medical symptoms the previous day, nor had any other juror been examined by a nurse, advised to go to the hospital for testing by the nurse and his physician, transported to the emergency room by court personnel, kept overnight for testing with more testing scheduled for later that day at some undetermined time, nor advised by his or her doctor that he or she should not return for jury deliberations at least until further testing and evaluation were completed and he or she had been cleared by a physician.

Accordingly, the Court declined counsel's invitation to halt jury deliberations for at least one day, and possibly longer, depending on how long it took to complete testing, receive a physician's and/or the juror's report, place it on the record or possibly conduct a hearing, and confer with counsel and decide about whether juror no. 1 would remain on the jury. See Hearing Memo (doc. no. 847) April 2, 2008. Jury deliberations would have been stalled for at least a day, and quite possibly longer, depending on circumstances beyond the Court's control, as outlined above.

Under all of those circumstances, the Court found no reason to halt on-going deliberations for an indefinite period, given the clear and explicit preferences expressed in Fed.R.Crim.P. 23(b)(3) and *Gambino*. See also *United States v. Smith*, 789 F.2d 196, 204-05 (3d Cir. 1986) ("Rule 23(b) was amended in 1983 to give judges the discretion to allow eleven person juries to continue deliberation if one juror became unavailable. . . . Rule 23(b) does not allow a less than unanimous verdict. Rule 23(b) was amended to deal with those situations in which a juror became unavailable after a lengthy trial and a mistrial would be extremely burdensome. Rule 23(b) provides a better solution than the technique used in the past of

substituting an alternate juror even after deliberations had begun.").

Later that day, at the time the jury was scheduled to and did cease its deliberations for the day, defendant filed his Objection and Emergency Motion To Vacate Order Dismissing Juror No. 1 (doc. no. 845) and supporting brief (doc. no. 846), neither of which address *Gambino*, *Smith* or any other precedent from the United States Court of Appeals for the Third Circuit. The government filed its Brief in Opposition (doc. no. 848) before 8:00 am the next day, as directed by the Court.

After careful consideration, the Court denies defendant's objections and motion to vacate as without merit, for the reasons stated.[1]

The Court will file a separate document, under seal, attaching the following:

1. A Field Report by United States Deputy Marshal Tad Thompson, with Deputy Thompson's narrative description of the events of April 1, 2008, including that he was summoned to Courtroom 7C after being informed that a juror was experiencing serious chest pains, that he was present when the building nurse examined the juror in the closed area outside

---

[1] Defendant argues in his motion that because this Court delayed the *trial* for one day because one juror was experiencing flu-like symptoms and had to go see a physician, and that juror returned after the one day hiatus, the Court must follow the same procedure for juror no. 1 at this deliberation stage of proceedings. However, the situations of these two jurors are distinctly different, both in timing and in severity of medical conditions, and defendant's reliance on the juror with flu-like symptoms mid-trial is inapposite, as the following factual summary demonstrates.
On April 1, 2008, seven days into jury deliberations, juror no. 1 began to experience serious symptoms of possibly life threatening illness, and was admitted overnight to a local hospital for testing and evaluation that evening and the following day, April 2, 2008. He was advised at the hospital not to return for deliberations until he had been thoroughly tested. At 7:00 pm on April 2, 2008, after his final test at the hospital, he was released from the hospital with a scheduled appointment the next afternoon with his personal physician on April 3, 2008. Moreover, Fed.R.Crim.P. 23(b)(3) specifically applies to jury deliberations, not to the trial.

6

of the jury room, accompanied by court staff and security personnel and outside of the presence of other jurors, that the nurse advised juror no. 1 to seek immediate medical attention after consulting with the juror's doctor, and that the juror agreed to go to the emergency room. The Deputy and Michael Lydon, this Court's senior law clerk, accompanied juror no. 1 to a government vehicle, whereupon he was transported to his car; Mr. Lydon accompanied juror no. 1 in the juror's car to the emergency room of a local hospital, followed by the Deputy in the other vehicle, both of whom accompanied juror no. 1 into the hospital emergency room upon arrival and remained until a nurse began triage.

  2. A facsimile transmission from juror no. 1 advising the Court of his condition and treatment at the local hospital on April 2 and 3, 2008, and that the emergency room doctor would not release him until he had undergone testing and examination and been released by a physician, unless he signed out against medical advice. Due to a mix- up with his breakfast, the morning stress test was postponed until later in the day. At about 3:30 pm, juror no. 1 took the stress test, and at about 7:00 pm on April 2, 2008, he was released from the hospital with an appointment with his personal physician scheduled for the next day.

  3. A facsimile transmission from juror no. 1's personal physician at 14:52 April 3, 2008, after the jury had gone home for the day after its second full day of deliberations following the Court's decision to continue with an eleven person jury. The physician cleared him, at that point, to return to jury duty, and noted that on April 1, 2008, juror no. 1's symptoms were quite serious and potentially a sign of deadly illness.

  These items are under seal out of respect for and to protect juror no. 1's privacy, but are made available for appellate review. Items 1, 2 and 3 must be placed under seal because several

members of the media somehow managed to obtain the juror's name and cell phone number and contacted him in his hospital bed, some quite persistently, and his name has been involuntarily thrust into the public domain. If the medical information contained in Items 1, 2 and 3 were published on the record, it would also, no doubt, find its way into the public domain without regard for juror no. 1's privacy or appreciation for his dedication and stalwart service to the Court, the parties and the criminal justice system.

Copies of Items 1, 2 and 3 are available for counsel in this case, who may call and make arrangements to retrieve same from chambers on April 7, 2008. The information contained therein shall not be disseminated or conveyed in any manner to any other persons, other than counsel and defendant, and no copies shall be made of these items.

Defendant's Objection and Emergency Motion To Vacate Order Dismissing Juror No. 1 (doc. no. 845) is without merit, and is therefore **DENIED**.

                                           **IT IS SO ORDERED**

                                        s/ Arthur J. Schwab
                                        Arthur J. Schwab
                                        United States District Judge

cc:    All counsel of record