IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| CYRIL H. WECHT | ) | |

**ORDER OF COURT DENYING DEFENDANT'S MOTION
FOR CONTINUANCE, ADJOURNMENT OF TRIAL DATE,
AND SCHEDULING CONFERENCE WITH COURT (DOC. NO. 865)**

Pending before this Court is yet another effort by defendant to halt the orderly judicial process of the above criminal matter; to revisit and reconsider numerous pre-trial and trial rulings of this Court (including rulings on motions to suppress, motions to dismiss and a Rule 29 motion for judgment of acquittal) prematurely, instead of following the Rules of Criminal and Appellate Procedure and the established appellate process; and to attempt, for an unprecedented third time, to remove the independent United States District Judge appointed pursuant to Article III of the United States Constitution who has been randomly assigned to the case.

Defendant's Motion for Continuance is based upon numerous misleading and false premises, including the following:

First, this case was independently and randomly assigned to this United States District Court Judge. It was not this Judge's decision as to whether this action should have been brought in the first place - - whether it should have been a state or federal matter - - whether it should have been civil or criminal in nature - -or, whether it should be retried following the indisputably dead locked jury which created the manifest necessity for the declaration of a mistrial. Those decisions belong exclusively to the executive branch of our federal government, not to our

independent federal judiciary or to the legislature.

Second, defense counsel seeks continually, in open court, in court filings, and by a carefully orchestrated and massive media campaign, to portray the decisions and rulings of this Court as unprecedented, unconstitutional and biased. As stated at the last day of trial, when this Court declared the mistrial that defendant vigorously and repeatedly requested (see doc. no. 858), this Court was blessed with the wise and prudent advice from federal district judges within this District and from elsewhere in the Nation, before and throughout this case. The jury questionnaire was based upon submissions of the parties and review of several jury questionnaires used in this District and from other recent high-profile white collar criminal cases in this Nation; the jury selection process was patterned after a recent criminal case in this District, in consultation with our jury administrator; the voir dire preliminary statement by this Court to the final jury pool was almost word-for-word from a statement used at a recent white collar criminal trial in federal district court in Texas; and the preliminary and final jury instructions were based in large part on the Model Criminal Jury Instructions of the Court of Appeals for the Third Circuit.

The record belies defendant's unfounded and exaggerated accusations, as the United States Court of Appeals for the Third Circuit has twice now held. This Court's research has failed to disclose a single instance wherein a litigant has sought three times for a federal judge to recuse himself or herself, or filed multiple applications for writs of mandamus with a United States Court of Appeals seeking to disqualify the district judge, let alone any occasion where the Court of Appeals had previously disposed of the first such application after full briefing and oral argument, United States v. Wecht, 484 F.3d 194 (3d Cir. 2007), and then summarily rejected

defendant's second writ of mandamus, as did the United States Court of Appeals for the Third Circuit in this case on January 2, 2008 (doc. no. 653) ("ORDER of USCA; The motion for permission to file expanded mandamus petition is granted. The petition for writ of mandamus by Cyril H. Wecht is denied and District Judge Arthur J. Schwab shall continue to preside over this matter. The motion to expedite consideration of the petition for writ of mandamus is dismissed as moot. The motion to stay district court proceedings pending disposition of the Petition for Writ of Mandamus is dismissed as moot.").

Regarding the events subsequent to the summary rejection by the United States Court of Appeals for the Third Circuit of defendant's second writ of mandamus, the record will show evidentiary and other trial rulings, many of which were in favor of defendant, made with careful consideration and dedication to the scrupulous protection of defendant's constitutional rights to a fair trial before an unbiased jury of his peers, with close adherence to the Federal Rules of Criminal Procedure and Evidence, governing precedent, and guidance from the United States Court of Appeals for the Third Circuit in its model jury instructions.

In short, while no trial is perfect, this Court has endeavored throughout to provide, and, the record will show, has in fact provided, fair and even-handed administration of justice to the parties in this case, and that the Court's trial rulings, instructions and jury selection procedures were "mainstream" for a high-profile case. While this Court bears full responsibility for all its decisions, this Court's decisions fortunately were heavily influenced by the work-product and advice of many well-regarded members of the federal judiciary, for which this Court is deeply appreciative.

Third, defendant's premise throughout his Motion for Continuance is that a deadlocked

jury on all counts and resultant declaration of a mistrial is somehow equivalent to a not-guilty verdict on all 41 counts. As the Court stated on the last day of jury deliberations at the first trial, the jury did not find defendant guilty of any of the 41 counts, nor did it find the defendant not-guilty of any of the 41 counts. See Transcript, April 15, 2008 (doc. no. 874) at 2-3. Thus, defendant remains charged with 41 counts, and remains cloaked with the constitutional presumption of innocence as to each of the 41 counts. Id. at 9-11. Defendant's premise that the legal result of the mistrial in this case is tantamount to a verdict of not guilty on all counts, and thus no retrial should occur, is legally incorrect - - as is defendant's premise that the prompt scheduling of the retrial (which, of course, is required by the Speedy Trial Act to occur within 70 days of the declaration of a mistrial, 18 U.S.C. § 3161(e)) somehow demonstrates bias and prejudice.

Relatedly, it has been this Court's experience and observations, as experienced criminal defense attorneys know, that in the overwhelming majority of deadlocked jury mistrial cases in state and federal courts, the prosecution immediately announces that it will retry the defendant, as it did in this case. The prosecution, defendant, the Court, and any reasonable observer of this case, knew that a deadlocked jury was probable since at least the Thursday (April 3, 2008; see Minute Entry (doc. no. 849)) preceding the declaration of a mistrial on the following Tuesday (April 8, 2008; see Minute Entry (doc. no. 858)), and would have reasonably suspected it was a distinct possibility much earlier than that. In fact, defendant made an oral motion for mistrial on Thursday (April 2, 2008), and filed a "Cross Motion to Discharge the Jury" (doc. no. 852) embedded in objections to the government's proposed "partial verdict" jury instruction on Friday (April 4, 2008), vigorously asserting that the jury was hopelessly deadlocked. Thus, the

government's announcement on Tuesday, April 8th, that it intended to retry defendant was made after having four or more days to deliberate, consult, consider and decide after the jury first announced that it had reached an impasse.

Fourth, defendant's counsel claims that starting the retrial within approximately 7 weeks of the declaration of the mistrial (with jury selection occurring earlier) denies counsel adequate time to prepare. This premise is belied by defense counsel's own words in his Motion for Continuance and by his contemporaneous and subsequent conduct. Said Motion clearly establishes that the five defense attorneys of record believe that they have adequate time to prepare "substantial motions and briefings to the Court seeking dismissal of the Indictment on various grounds" (doc. no. 865 at ¶ 19), including a third round of motions to suppress and motions to dismiss and another Rule 29 motion based upon the government's closing argument, and examinations of alleged "deliberate Brady violations"; coupled with a third motion to recuse and appeal to the Court of Appeals following defendant's professed belief that the motion to recuse will be denied ( "the defense will be moving this Court to recuse itself from further proceedings and intends to seek review by the Third Circuit Court of Appeals if the Court declines, as expected, to recuse itself.") (Doc. no. 865 at ¶ 20). It would surely take less time to prepare and re-try this case than to engage in a third round of motions, largely draping old objections in new clothes, and intensive efforts to again attempt to disrupt and halt this case.

Further, the significant expenditure of attorney and the defendant's own time in interviews with local newspapers, radio and television broadcasts, and late night talk shows demonstrates that the defense team has more than sufficient time to plan and implement their relentless media activities, time which certainly could be spent preparing for retrial. (See. e.g.,

Government's Brief in Response to Defendant's Motion for Continuance at Docket No. 865 (doc. no. 873), at 2, n.1, and Exhibit C, for a representative smattering of the defendant's public comments, and those of his attorneys, since declaration of the retrial on April 8, 2008, which comments arguably were made in disregard of Local Rule 83.1, as modified by the United States Court of Appeals for the Third Circuit in Wecht, 484 F.3d at 201-206, regarding extrajudicial comments by parties and litigants to proceedings before the United States District Court for the Western District of Pennsylvania.)

Additionally, preparation for retrial should be straightforward. The jury questionnaire, jury selection procedure, voir dire examination, preliminary jury instructions, and final jury instructions have been extensively briefed and rulings made thereon. Defense counsel also is now in a substantially more informed position, having heard the direct testimony of the government's 41 witnesses once, and having already extensively cross-examined said witnesses with grand jury testimony and FBI 302 statements previously turned over by the government prior to trial (often at greater lengths than the direct-examination).

Finally, as defendant's threatened, and unprecedented, third motion to recuse, the assignment of a new district court trial judge would be a waste of judicial resources and inconsistent with orderly judicial process. As this Court explained in its previous opinion denying defendant's first motion to recuse:

> Because granting a motion to recuse "necessarily results in a waste of the judicial resources which have already been invested in the proceeding," *In re Int'l Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), a judge is "as much obliged not to recuse himself when it is not called for as he is obligated to when it is." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988), *cert. denied sub nom. Milken v. SEC*, 490 U.S. 1102 (1989); *United States v. Bray*, 546 F2d 851, 857 (10th Cir. 1976); *City of Cleveland v. Cleveland Elec.*

>   *Illuminating Co.*, 503 F.Supp. 368, 370 (N.D. Ohio 1980). It is "vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation," *McCann v. Communic. Design Corp.*, 775 F.Supp. 1506, 1523 (D. Conn. 1991), *citing Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987), and the judge has an "affirmative duty not to recuse himself if the movant fails to establish a reasonable doubt concerning his impartiality." *Grand Entertainment Group Ltd. v. Arazy*, 676 F. Supp. 616, 619 (E.D. Pa. 1987).
>
>   Moreover, recusal motions must not be permitted to be used as "strategic devices to judge shop." *United States v. El-Gabrowny*, 844 F.Supp. 955, 959 (S.D.N.Y. 1994), *quoting Lamborn v. Dittmer*, 726 F.Supp. 510, 515 (S.D.N.Y. 1989); *see also Cooney*, 262 F.Supp. 2d at 508 ("although, at times, it may seem appealing or even wise to yield to another court, on the premise that the allegations of impartiality are a distraction to the main event, to do so, while a short term expedient, will reward the culprit, punish the other parties to the litigation and encourage the tactic of Judge shopping.") Although section 455(a) is designed to foster the public's confidence in the integrity of the judiciary which could be irreparably harmed if a case proceeded where there exits a reasonable factual basis for doubting the judge's impartiality, *In re School Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992), Congress also recognized that the challenged judge "must be alert to avoid the possibility that those who question [the judge's] impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality [therefore,] must have a *reasonable* basis." *Pungiatore*, 2003 WL 22657087 at *4 (emphasis in original), *quoting* H.R. Rep. No. 93-1453, 93rd Cong., 2d Sess. 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355.

Memorandum Opinion and Order of Court dated July 20, 2006 (doc. no. 302), at 50-52.

The foregoing principles compel this Court to resist and reject defendant's repeated and improper attempts at judge-shopping and disruption of the proceedings. First, in light of the potential recusals among the other judges in this District for various reasons, a recusal might require the assignment by the Court of Appeals of an out-of-district judge for the retrial, with the related costs thereof.

Second, the docket now consists of almost 900 docket entries (excluding text orders and notices), the highest number of filings in a single defendant case in the history of the United

States District Court for the Western District of Pennsylvania. The exhibits database upon which this Court has ruled consists of approximately 260,000 pages, of which approximately 5,000 pages were referred to at trial and approximately 10,600 pages were admitted into evidence and were before the first jury. The granting of the threatened motion to recuse would undoubtedly lead to efforts to revisit the countless rulings of this Court, including on the motions to suppress, motions to dismiss, evidentiary matters, and preliminary and final jury instructions.

Third, the unprecedented third motion to recuse constitutes a continued, frontal assault on the independent and random judge selection process, so fundamental and critical to our federal judicial system. If any party in any case, through pervasive, misleading and continual attacks on the Court and its rulings in the local and national media and in court filings, can successfully circumvent the independent selection process by convincing a federal trial judge to walk from a case, instead of that party seeking review of the actual rulings of that judge through the normal, orderly appellate review process after trial and verdict, our independent federal judicial role would be greatly diminished.

For the foregoing reasons, defendant's Motion for Continuance (doc. no. 865) is DENIED.

**SO ORDERED** this 16th day of April, 2008.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record