IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| **CYRIL H. WECHT** | ) | |

**ORDER OF COURT DENYING DEFENDANT'S MOTION TO DISMISS
THE INDICTMENT AND TO PRECLUDE THE GOVERNMENT FROM
FURTHER PROSECUTION IN VIOLATION OF THE PROHIBITION
AGAINST DOUBLE JEOPARDY (DOC. NO. 868)**

Before the Court is Defendant's Motion to Dismiss the Indictment and to Preclude the

Government from Further Prosecution in Violation of the Prohibition Against Double Jeopardy

(doc. no. 868). After giving due consideration to defendant's motion, his brief in support (doc.

no. 869), and the government's brief in response thereto (doc. no. 915), Defendant's Motion to

Dismiss the Indictment and to Preclude the Government from Further Prosecution in Violation of

the Prohibition Against Double Jeopardy has no factual basis or any legal authority that arguably

supports his position, and, therefore, the motion is denied.

Where, as here, a defendant moves a trial court to declare a mistrial, the Double Jeopardy

Clause is simply not implicated. Defendant *twice* moved the Court to declare a mistrial and

discharge the jury in this case, arguing that the jury already had unambiguously announced that it

was hopelessly deadlocked on all counts, which the Court confirmed by individual polling of

each juror.

Further, it is black letter Double Jeopardy law that the government may retry a defendant

following a mistrial where the record shows, as it does beyond any shadow of a doubt in this

case, that there is manifest necessity for declaration of the mistrial. Nowhere is manifest

necessity more obvious than in this case -- one that the United States Supreme Court describes as the "classic" manifest necessity situation. After two additional days of deliberation following this Court's standard "deadlocked jury" instructions to return to the jury room and continue to deliberate after it initially indicated it had reached an impasse, the jury unequivocally declared: "Pursuant to court instructions the jury contends we have exhausted all further deliberation efforts. We agree unanimously that we are unable to reach a unanimous verdict on all 41 counts and are essentially deadlocked in the case of United States of America vs. Cyril H. Wecht." See Court Exhibit C-13; Minute Entry for April 8, 2008 (doc. no. 858), and Transcript for April 8, 2008 (doc. no. 874).

Thus, under basic, well-established and *entirely non-controversial* Double Jeopardy principles, Defendant's Motion to Dismiss the Indictment and to Preclude the Government from Further Prosecution in Violation of the Prohibition Against Double Jeopardy (doc. no. 868) must be denied.

**Background.**

**1. March 27, 2008.**

On the fifth full day of jury deliberations, on March 27, 2008, the Court received, through the bailiff, a written message from the jury, marked as Court Exhibit 5, stating that "out of the 41 counts if any one or more count the jury can not come to unanimous agreement on - does that constitute a hung jury"? Although its message suggested that the jury had been able to reach verdict on some but not all counts, the message was ambiguous. After hearing from counsel as to their respective positions, the Court declined the government's request to give a "partial verdict"

instruction at that time,[1] and instead gave the supplemental instruction that was suggested by defense counsel, and agreed to by the government, that the jury should continue its deliberations, using the language approved by the United States Court of Appeals for the Third Circuit in *United States v. Fioravanti*, 412 F.2d 407, 419-20 (3d Cir. 1969).

**2. April 3, 2008.**

About one week later, on April 3, 2008, the jury sent another written note through the bailiff to the Court, marked as Court Exhibit C-12, stating that it unanimously agreed it had reached an "impasse" and agreed that "additional deliberations would not be helpful." The Court conferred with counsel again, indicating it intended to poll the jurors individually and then deliver an additional charge to the jury and return it to the jury room for further deliberations. The Court gave the parties and counsel additional time to consider this suggestion.

The government's position was that the Court render the partial jury instruction set forth in the Model Jury Instructions at Section 9.08. Defendant agreed with the Court that the individual jurors should be polled, but requested the Court to declare a mistrial and discharge the jury immediately if polling confirmed that the jury was hopelessly deadlocked. Transcript,

---

[1] Section 9.08 of the Model Jury Instructions in Criminal Cases, as recently recommended by the Third Circuit Committee on Model Criminal Jury Instructions, provides:

> Members of the jury, you do not have to reach unanimous agreement on all the charges before returning a verdict on some of them. If you have reached unanimous agreement on some of the charges, you may return a verdict on those charges, and then continue deliberating on the others. You do not have to do this, but you can if you wish. You should understand that if you choose to return a verdict on some of the charges now, that verdict will be final. You will not be able to change your minds about it later on. Your other option is to wait until the end of your deliberations, and return all your verdicts then. The choice is yours. I would ask that you now return to the jury room and resume your deliberations.

March 27, 2008 (doc. no. 910), at 14-15.  See also "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury" (doc. no. 852) at 5.

This Court denied both alternatives requested by counsel, i.e., the government's requested partial verdict instruction and defendant's oral motion for a mistrial.  As is the customary practice in the United States District Court for the Western District of Pennsylvania to instruct the jury to return to further deliberate *at least once* after being advised that it has been unable to reach a verdict, the Court brought the jury to the Courtroom and instructed it, following the Supplemental Instruction at Section 9.05 of the Model Jury Instructions for Criminal Trials recommended by the Committee for the United States Court of Appeals for the Third Circuit on Model Criminal Jury Instructions, that it should continue its deliberations, and returned the jury to deliberate for as long as the jury deemed appropriate. Defendant requested the Court to set a deadline or time table on additional jury deliberations, which the Court declined to do.

The jury informed the Court, through the bailiff, that it agreed to return on Monday, April 7, 2008, to continue its deliberations at 8:00 am.  The Court excused the jury for the day, shortly after 2:00 pm, at the jury's previously requested departure time.  Later that same day, the government filed a written request that the Court give the supplemental "Partial Verdict Instruction" before deliberations resumed, advising the jury that it could return verdicts on some, but not all, of the counts of the indictment, if it was able to reach unanimous verdict on some counts but not others, based on the jury's previous message of March 27, 2008.  The Court "text-only" ordered a response to the government's proposed supplemental "Partial Verdict Instruction" by the following day.

**3. April 4, 2008.**

On April 4, 2008, defendant filed "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury." (doc. no. 852). In strenuously opposing the government's request for a partial verdict instruction and zealously advocating for an immediate declaration of mistrial and discharge of the jury before it returned to deliberate on April 7, 2008, defendant argued, in most pertinent part, as follows:

> There is no basis to now instruct the jury on a partial verdict or to give Model Instruction 9.08 as requested for the third time by the prosecution. *In fact, for reasons stated yesterday and as set forth herein, the defense moves this Court for the discharge of the jury in light of the fact that all jurors confirmed the existence of a hopeless deadlock and that further deliberation would not lead to a unanimous verdict.*
>
> Instead, the *defense submits that the procedure followed yesterday by the polling of the jury, after the prior instruction given on March 27, 2008, were the equivalent under the circumstances of the deadlocked jury procedures of Model Instruction 9.06.* Those instructions specifically counsel the Court to ask each juror: Do you agree that there is a hopeless deadlock which cannot be resolved by further deliberation. *That is exactly what the Court asked* each juror by the two questions posed to each juror. *Model Instruction 9.06 further advises as to the procedure to be used if the jury confirms a hopeless deadlock and those procedures specify that the Court should obtain the defense position on whether to declare a mistrial, which the defense did provide the Court yesterday.*
>
> \*   \*   \*
>
> *. . . the jury squarely indicated that it considered all counts in a variety of ways, had followed the prior supplemental instruction to consider all individual opinions and thereafter each juror agreed they were hopelessly deadlocked and that further deliberations would not lead to unanimous verdicts.*
>
> To now give a partial verdict instruction in a supplemental charge under these circumstances clearly is the usual ominous context by which it could operate as a dynamite charge to blast a hung jury into a verdict. United States v. Fioravanti, 412 F.2d 407, 419 (3d Cir. 1969). Indeed, to provide such an instruction on Monday could hardly be seen as anything other than the Court

providing the jury a way out of the *hopeless deadlock each juror has attested to on the record.* . . .

. . . [T]he Court properly declined to give the requested supplemental instruction twice before and should do so again. Moreover, and as set forth herein, *the defense respectfully moves for the discharge of the jury and declaration of a mistrial in light of the jury's unqualified individual declarations that they are hopelessly deadlocked and that further deliberations would not lead to unanimous verdicts.* Indeed, requiring a jury to continue deliberations despite genuine and irreconcilable disagreement more often than not defeats the ends of public justice; not only will such compulsion needlessly *waste valuable judicial resources*, it may coerce erroneous verdicts. <u>United States v. See</u>, 505 F.2d 845 (9th Cir. 1975).

"Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury." (doc. no. 852), at 4-6.

### 4. April 7, 2008.

On April 7, 2008, this Court entered its "Order of Court Denying Defendant's Motion for Reconsideration of Denial of Motion for Mistrial Embedded in Document No. 845" (doc. no. 855). This Order sets forth the procedural and factual background necessary to place in context defendant's pending motion to dismiss on double jeopardy grounds -- a motion that *diametrically contradicts* his stated position that the jury's collective and "unqualified individual declarations that they are hopelessly deadlocked and that further deliberations would not lead to unanimous verdicts" required declaration of a mistrial and discharge of the jury. The Court's Order of April 7, 2008, is repeated below:

Before the Court is "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury." (doc. no. 852). Although called a "Cross Motion," there are no pending motions to which this one can be reasonably be considered to be "crossed," and the relief sought is obviously in the nature of a motion to reconsider the Court's

ruling of April [3][2], 2008, denying defendant's oral motion to declare a mistrial and discharge the jury. The background for defendant's motion to reconsider is as follows:

A previous message from the jury, on March 27, 2008, Court Exhibit 5, stated that "out of the 41 counts if any one or more count the jury can not come to unanimous agreement on - does that constitute a hung jury"? Although that message suggested that the jury had been able to reach verdict on some but not all counts, the message was ambiguous, and, therefore, the Court declined to give a partial verdict instruction at that time, after hearing from counsel, and instead gave the supplemental instruction suggested by defense counsel, and agreed to by the government, that the jury should continue deliberations. The Court used the language approved by the United States Court of Appeals for the Third Circuit in *United States v. Fioravanti*, 412 F.2d 407, 419-20 (3d Cir. 1969). [FN 1 omitted]

The Court did not hear from the jury again about the status of its deliberations until April 3, 2008, when it sent a written message through the bailiffs that it unanimously agreed it had reached an "impasse" and agreed that "additional deliberations would not be helpful." Court Exhibit C-12. The government suggested the Court render the partial jury instruction set forth in the Model Jury Instructions at Section 9.08, and defendant requested the Court to declare a mistrial and discharge the jury immediately, based on his belief that the jury was hopelessly deadlocked. See "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury" (doc. no. 852) at 5.

This Court denied both the government's requested partial verdict instruction and defendant's oral motion for a mistrial. As is the customary practice in the United States District Court for the Western District of Pennsylvania to instruct the jury to return to further deliberate *at least once* after being advised that it has been unable to reach a verdict, the Court brought the jury to the Courtroom and instructed the jury, pursuant to Supplemental Instruction at section 9.05 of the Model Jury Instructions for Criminal Trials recommended by the Committee for the United States Court of Appeals for the Third Circuit on Model Criminal Jury Instructions, that it should continue its deliberations, and returned the jury to deliberate for as long as the jury deemed appropriate, over defendant's objections that the Court should impose some arbitrary time table on the jury.

The jury informed the Court, through the bailiff, that it agreed to return on

---

[2] Some of the dates in this Order were inadvertently stated as one day earlier than the event described, but the substance of the Order remains unaffected by this error. The correct dates have been inserted in brackets.

Monday, April 7, 2008, to continue its deliberations at 8:00 am. The Court excused the jury for the day . . . shortly after 2:00 pm, at the jury's previous requested time. At 3:45 pm that same day, the government filed a written request that the Court give a supplemental "Partial Verdict Instruction" advising the jury that it could return verdicts on some, but not all, of the counts of the indictment, if it was able to reach unanimous verdict on some counts but not others, based on the jury's previous message of March 27, 2008. The Court "text-only" ordered a response by 1:00 pm, the next day, Friday, April [4] 2008.

Defendant filed a motion requesting an enlargement of time to file its response (doc. no. 851) until 4:00 pm, which the Court granted in part, directing the response by 3:00 pm. There is no suggestion or hint in his motion to enlarge the time to respond to the government's requested supplemental jury instruction, that defendant would also move the Court to reconsider its ruling denying his oral motion for a mistrial, nor for that matter, that he intended to request any other affirmative relief or ruling from the Court.

The Court denied the government's requested supplemental instruction by text-only order at 4:37 pm, April [4], 2008, and went home for the weekend. On Saturday, April [5], 2008, at 12:28 pm, despite all counsel having previously been ordered, more than once, not to communicate with the Court's staff by e-mail and instead to file requests on ECF docketing system, Mr. McDevitt e-mailed the Court's law clerks to their Court Lotus accounts, which they do not usually check on the weekends, as counsel has been advised more than once, with the following message:

> Mickey and Nicole,
>
> *Yesterday we filed a cross motion , supporting brief and proposed order requesting the jury be discharged and a mistrial declared.* The relief requested seeks an order before jury deliberations begin on Monday.
>
> The Court has not ordered the Government to respond or otherwise indicated it intends to adjudicate our motion in timely fashion. *We respectfully request that the Court issue a briefing schedule and adjudicate our motion prior to Monday's resumption of jury deliberations.*

(Attached hereto).

Defense counsel appears to be philosophically opposed to filing actual *motions* on the ECF docketing system *as motions* when he seeks some affirmative relief from the Court, as he has been repeatedly ordered to do. Filing motions as motions ensures that the Court will order a prompt response from the opposing party, and that said motion will be promptly addressed; [FN 2 omitted] conversely, not

8

filing a motion as a motion, but instead as some part of some other document, such as a response to a requested jury instruction, will not be docketed as a motion on ECF.

Indeed, defendant's "cross motion" is not a "cross" to any pending motion, as it incorrectly but, the Court finds, purposefully implies, and ECF did not pick this item up as a motion because it was deliberately, as this Court finds, not filed as such. See Clerk's Office Quality Control Message of April 7, 2008, at 8:44 am ("CLERK'S OFFICE QUALITY CONTROL MESSAGE re 852 Response to (other). ERROR: Document should have been filed as two separate documents. CORRECTION: Attorney advised in future that documents of that nature are to be filed as separate documents. Clerk of Court docketed Motion to Discharge the Jury. This message is for informational purposes only. (plh) (Entered: 04/07/2008)").

The jury resumed its deliberations this morning at 8:00 am, at its request to begin early.

The Court **HEREBY DENIES** "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury" (doc. no. 852), for two reasons.

First, the Court finds that the so-called "cross motion" is nothing of the kind. It is, rather, a motion to reconsider the ruling of April 2, 2008, denying his motion for a mistrial, and the failure to docket this motion to reconsider as a motion, and to call it what it is, obviously renders the motion procedurally flawed and the relief requested therein quite moot. While the motion to reconsider was technically filed on April 3, 2008, it was designed, for reasons known only to defense counsel, to ensure that no decision would be reached prior to resumption of jury deliberations this morning.

Second, defendant's motion to reconsider is without merit, as *the Court's supplemental instruction to the jury after being advised by it for the first time that it had reached an "impasse" followed standard operating procedure in the United States District Court for the Western District of Pennsylvania and followed the comments and instruction suggested by the Committee for the United States Court of Appeals for the Third Circuit on Model Criminal Jury Instructions*.

**IT IS FURTHER ORDERED** that any motion or request for affirmative relief from this Court must be docketed as a motion on the ECF docketing system; failing that, there will be no response ordered and any relief requested therein shall be deemed denied.

April 7, 2008 "Order of Court Denying Defendant's Motion for Reconsideration of Denial of

Motion for Mistrial Embedded in Document No. 845," (doc. no. 855) (some emphasis added).

**5. April 7- 8, 2008**

The record shows that the jury thereafter deliberated from 8:00 am until 11:55 pm on April 7, 2008, and again from 8:00 am until approximately 8:30 am on April 8, 2008, when it again advised the Court, by letter presumably signed by the foreman and the secretary, that it was unable to reach a unanimous verdict on any count.

After telephoning counsel and summoning all parties and counsel to the Courtroom at 9:15 am on April 8, 2008 (by ECF text-only notice sent at 8:53 am), this Court discharged the deadlocked jury after first reading the written note, sent through the bailiffs to the Court, stating:

> Pursuant to court instructions the jury contends we have exhausted all further deliberation efforts. We agree unanimously that we are unable to reach a unanimous verdict on all 41 counts and are essentially deadlocked in the case of United States of America vs. Cyril H. Wecht.

See Court Exhibit C-13; Minute Entry for April 8, 2008 (doc. no. 858), and Transcript for April 8, 2008 (doc. no. 874).

A more unambiguous, irrevocably deadlocked jury, and a more compelling demonstration of manifest necessity for a mistrial, is hard to imagine. Nevertheless, despite defendant's expressed concern about "needlessly wast[ing] valuable judicial resources," see Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury (doc. no. 852), at 6, defendant now proceeds to waste scarce legal and judicial resources on this motion to dismiss the indictment before retrial, based upon the unreasonable assertion that the Double Jeopardy Clause somehow prevents retrial.

**Defendant Twice Demanded that the Court Declare a Mistrial
and Discharge the Jury Because It Was Hopelessly Deadlocked**

The Double Jeopardy Clause protects criminal defendants from later prosecutions for the same offense.  See U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.").  Under the Double Jeopardy Clause, a defendant has a "valued right to have his trial completed by a particular tribunal. . . . "  Wade v. Hunter, 336 U.S. 684 (1949).  This Double Jeopardy right is held by the individual and is independent of the public interest in conducting "fair trials designed to end in just judgments . . . ."  Arizona v. Washington, 434 U.S. 497, 503 n. 11 (1978) (internal quotation and citation omitted).

However, the Double Jeopardy Clause does not bar successive prosecutions for the same offense where a mistrial is required by "manifest necessity."  United States v. Rivera, 384 F.3d 49, 53 (3d Cir. 1991).  Manifest necessity exists where the circumstances leave the trial judge with "no alternative to the declaration of a mistrial," after considering and exhausting all other possibilities.  Love v. Morton, 112 F.3d 131, 137 (3d Cir. 1997), citing United States v. McKoy, 591 F.2d 218, 222 (3d Cir. 1979).

A mistrial "may be granted upon the initiative of either party or upon the court's own initiative."  United States v. Scott, 437 U.S. 82, 92 (1978).  Ordinarily, where the defendant seeks a mistrial, "[n]o interest protected by the Double Jeopardy Clause is invaded." Id. at 100.  Oregon v. Kennedy, 456 U.S. 667, 672 (1982) ("in the case of a mistrial declared at the behest of the defendant, . . . the defendant himself has elected to terminate the proceedings against him, and the "manifest necessity" standard has no place in the application of the Double Jeopardy

Clause.") (citations omitted).[3] The Government may bring a subsequent reprosecution in such circumstances without offending the Constitution. Love, 112 F.3d at 133. See also Sattazahn v. Pennsylvania, 537 U.S. 101 (2003) ("Retrial is . . . permissible where 'a defendant successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial,' . . . unless the motion is intentionally provoked by the government's actions . . . Ordinarily, '[s]uch a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.'") (citations omitted); Arizona v. Washington, 434 U.S. 497, 509 (1978) ( "[P]erhaps the clearest example of a situation in which manifest necessity exists for a mistrial is when a jury is unable to reach a verdict." ); United States v. Coleman, 862 F.2d 455, 460 (3d Cir. 1988) (recognizing manifest necessity for mistrial following a hung jury).

As recently summarized by the United States Court of Appeals for the Third Circuit, albeit in an unpublished opinion, if there is manifest necessity for a mistrial, retrial is permitted without defendant's consent; or, if defendant requests or explicitly or implicitly consents to a mistrial, retrial is generally permitted even in the absence of manifest necessity. United States v. Allick, 2008 WL 1745150 (3d Cir. 2008) (because, unlike in this case, the record lacked sufficient information to determine whether the trial judge consulted with counsel and canvassed alternatives to mistrial, as required by Federal Rule of Criminal Procedure 26.3, whether defendant had consented to the mistrial, and whether there was manifest necessity for mistrial,

---

[3] There is a very narrow exception to this rule, where the prosecutor's actions giving rise to defendant's motion for mistrial were intentionally done "in order to goad the [defendant] into requesting a mistrial." Oregon, 456 U.S. at 673, quoting United States v. Dinitz, 424 U.S. 600, 611 (1976). This narrow exception is not presented by this hung jury mistrial herein, and defendant cannot and does not suggest that the Dinitz exception is applicable.

Court of Appeals remands for further development of record and evidentiary hearing). This case obviously presents *both* defendant's consent *and* manifest necessity.

Defendant explicitly moved this Court to declare a mistrial, twice, in unambiguous oral and written motions. Moreover, defendant did not object when this Court read the jury's final written note (C-13), which restated and reinforced what the Court, the parties, counsel, and any reasonable observer were well aware was highly likely, for at least five days -- that the jury remained at an impasse, despite two additional days of deliberation, and had not changed its unanimous view that it was hopelessly deadlocked.

With the foregoing background, defendant's claim that he was surprised by this announcement is not credible, nor is his contention that this Court's general instructions to everyone in the courtroom (to remain quietly in their seats and not move about to prevent what had happened when the jury was dismissed the preceding week, for security purposes) somehow precluded counsel from objecting.

First, the record will show that defense counsel have *repeatedly* ignored and disregarded Orders of Court regarding the placing of objections on the record, among other Orders, and have shown themselves to be anything but bashful. Second, the Court's courtroom decorum procedures upon discharge of the jury, designed to prevent the previous week's chaos and to ensure the security and privacy of the jurors and the safety of all persons in the crowded courtroom, did not prohibit any legal objection by counsel, who had ample opportunity to object.

Third, defense counsel *did* speak at the hearing, *before* the Court formally declared the mistrial and discharged the jury, and did *not* raise any objection to the pending declaration of mistrial. The transcript of April 8, 2008 (doc. no. 874) reveals the following:

THE COURT:  Does the government have a decision today whether the government will retry the defendant?

MR. STALLINGS:  We do, You Honor, and we will.

THE COURT:  I would ask that by Friday at noon, that the government file a notice as to which of the counts, which could be as few as one or as many as the 41, which of the counts will be tried in the retrial.

Is the government prepared to proceed immediately to retry the case?

MR. STALLINGS: We are, Your Honor.

THE COURT:  Is the defense prepared to immediately retry the case?

MR. McDEVITT: We will have several motions to make before that happens.

THE COURT:  Okay.  Just for everyone's scheduling purpose, I will set the trial for May 7th - - excuse me - - May 27th, which is the day after Memorial Day, May 27, 2008, at nine a.m.

That should give defense and the government sufficient time to file whatever motions they wish to respectively file.

One behalf of the defendant, when would you like to file any motions you wish to file, sir?

MR. McDEVITT: I will need some time to think about that.  This is quite a surprise.

THE COURT: Okay.  I know everyone needs a little rest, so I appreciate that matter.

I would ask the defense, if you would kindly for me, please file any motions you have by noon on April 18, 2008.

If you find after reflection that date doesn't work for you, then just file an appropriate motion, and I will work with you in that regard.

I will send out a scheduling order as to the May 27th, 2008 date without prejudice to whatever defendant's motions will come before me.

Before I declare a mistrial and discharge the jury, . . . . <u>Id</u>. at 3-4.

\* \* \*

I declare a mistrial. I discharge the jury and the alternate jury, and, ladies and gentlemen of the jury, if you would come and join me, I would appreciate that very much. <u>Id</u>. at 8.

Declaration of a mistrial and discharge of the jury is exactly the remedy defendant himself pursued for days before the jury delivered its final "deadlocked" letter to the Court, and the jury's last written note on April 8, 2008, only *bolstered* defendant's stated position that the jury was hopelessly deadlocked and should be discharged without further adieu. ("Pursuant to court instructions the jury contends we have exhausted all further deliberation efforts. We agree unanimously that we are unable to reach a unanimous verdict on all 41 counts and are essentially deadlocked in the case of United States of America vs. Cyril H. Wecht." See Court Exhibit C-13; Minute Entry for April 8, 2008 (doc. no. 858), and Transcript for April 8, 2008 (doc. no. 874).)

Because defendant twice moved for the declaration of mistrial, and explicitly and implicitly consented thereto, Double Jeopardy is not implicated and does not prohibit retrial at the prerogative of the government.

**No Reasonable Person Can Dispute That the Jury Was Hopelessly Deadlocked, and That Manifest Necessity Therefore Existed for the Retrial**

"A hung jury, the [Supreme] Court has long recognized, meets the 'manifest necessity' criterion, i.e., it justifies a trial court's declaration of a mistrial and the defendant's subsequent reprosecution.'" <u>Sattazahn v. Pennsylvania</u>, 537 U.S. at121, quoting <u>Arizona v. Washington</u>, 434

U.S. at 509.  See also United States v. Sanford, 429 U.S. 14 (1976) (where the District Court properly declared a mistrial *sua sponte* by reason of a hung jury, double jeopardy did not bar retrial); Crawford v. Fenton, 646 F.2d 810 (3d Cir. 1981) (on federal habeas petition from state sentence, where District Court found no manifest necessity for state trial court's *sua sponte* declaration of mistrial and discharge of the jury without considering other alternatives, Court of Appeals reversed, holding: "[T]he particular circumstances of this case require, on review, that we grant broad deference to the trial judge's determination. The record not only discloses the exercise of that discretion, but it furnishes ample support for the trial judge's ruling that manifest necessity existed for the declaration of a mistrial. Accordingly, we hold that the trial judge did not abuse his discretion in ordering an end to Crawford's trial.  In so doing he did not trench upon Crawford's Fifth Amendment right to be free from double jeopardy.");  United States v. Williams, 2004 WL 1472793, *1 (E.D.Pa. 2004) ("Regarding Defendant's contention that this Court excused the jury absent manifest necessity, reference to precedent clearly supports this Court's actions after the jury announced its inability to reach a verdict.  It has been established for 160 years, since the opinion of Justice Story in United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824), that a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.' Id. at 580.").

On the record before the Court, it cannot be seriously disputed that the jury was hopelessly deadlocked, and that, therefore, manifest necessity required declaration of a mistrial and discharge of the jury.

**Defendant's Authority Does Not Support His Position**

Defendant relies extensively on United States v. Rivera, 384 F.3d 49 (3d Cir. 2004), but it is obvious that Rivera offers no support for defendant's position.  In the words of the Honorable Judge Brooks Smith for the United States Court of Appeals for the Third Circuit, Rivera "involves the application of the Double Jeopardy Clause where a District Judge has *sua sponte* declared a mistrial *over a defense objection,*" based on the government's inability to produce one of its key witnesses who had injured his leg and was unable to appear in court when scheduled to testify.  This *sua sponte* declaration of mistrial over defense objection based on the unavailability of a witness is not even remotely related to the classic manifest necessity situation presented herein, i.e., declaration of a mistrial requested by defendant after consultation with counsel and solicitation of their respective views about alternatives, based upon the jury's persistent and unambiguous statements that it had reached an impasse and was hopelessly deadlocked despite ten days of deliberations and two deadlocked jury instructions.

Rivera stated (in that drastically different context) that "a mistrial must not be declared without prudent consideration of reasonable alternatives" and that Federal Rule of Criminal Procedure 26.3 requires, among other things, that before ordering a mistrial, "the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives."  Rivera, 384 F.3d at 56. Rivera also stated that "dialogue fostered by Rule 26.3 ensures that only those mistrials that are truly necessary are ultimately granted."  Id.

There can be *no doubt*, on the record before this Court, that over a five day period, this Court fully and faithfully complied with Fed.R.Crim.P. 26.3 in letter and in spirit, and gave the defendant and the government more than ample opportunity to comment on the propriety of a

mistrial declaration, sought their advice as to alternatives, rejected the government's alternative, which was to give the jury a partial verdict instruction, and conducted that dialogue, orally and in writing, and that the mistrial in this case was *absolutely necessary*, as defendant himself argued in requesting a mistrial on April 3, 2008 and again on April 7, 2008. See "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury." (doc. no. 852), at 4-5.

Defendant has demonstrated a habit of distorting the record and the law in his motions and briefs in this Court and in the United States Court of Appeals for the Third Circuit.[4] So too as to this Motion, defendant attempts to distance himself from the position he so vigorously advanced just a few days earlier, before the Court declared the mistrial, but the record prevents him from disavowing his twice stated position to the contrary. Similarly, defendant's assertion that this Court did not conduct the dialogue that Rule 26.3 was designed to foster, and somehow prevented counsel from expressing his position on the matter or from proposing alternatives to the declaration of a mistrial, is a distortion of the actual record.

Moreover, defendant has offered not one citation to any authority that granted Double Jeopardy or other relief based *solely* on a district court's non-compliance with Rule 26.3, because there is none. The closest defendant comes to offering any actual legal authority on this issue is

_____

[4] See, e.g., United States v. Wecht, 484 F.3d at 214, 219-20 ("Wecht is correct that, in general, ex parte proceedings are disfavored. However, there are a number of circumstances where ex parte applications to the court are appropriate, and Wecht appears to overlook our previous statements [in prior published opinions] endorsing the in camera inspection of materials that may need to be turned over to the defense;" "Wecht's claim that the Judge has 'threaten[ed] counsel with criminal contempt on five occasions' distorts the record. Wecht Pet. at 47;" "The claim that the District Court Judge accused counsel of 'impugning Judge Cohill' represents a skewed and unfair reading of the record;" "We also do not credit defense counsel's claim that the Judge 'chastised' counsel for filing dispositive motions earlier than required. Wecht Pet. at 48.")

in a footnote wherein he states:

> The Supreme Court added Rule 26.3 in 1993 in response to cases such as <u>United States v. Dixon</u>, 913 F.2d 1305 (8th Cir. 1990) (mistrial improper where district judge failed to consult with counsel), and <u>United States v. Bates</u>, 917 F.2d 388 (9th Cir. 1990) (same). See Advisory Committee Notes to Fed. R. Crim. P. 26.3. The advisory committee propounded the rule, and it described its purpose as providing both sides an opportunity to place on the record their views about the proposed mistrial order. In particular, the court must give each side an opportunity to state whether it objects or consents to the order. <u>Id</u>. (emphasis added).

Defendant's Brief in Support of Motion to Dismiss the Indictment and to Preclude the Government From Further Prosecution in Violation of the Prohibition Against Double Jeopardy (doc. no. 869), at 9, n.8.

Neither <u>Dixon</u> nor <u>Bates</u>, non-binding decisions from other Courts of Appeals beyond the Third Circuit, held that the failure of the district court to consult with counsel or otherwise comply with rules of procedure violated Double Jeopardy or required relief, only that, in the absence of a record demonstrating manifest necessity for the mistrial, relief was appropriate under the Double Jeopardy Clause.

But <u>Arizona v. Washington</u> explicitly held, contrary to defendant's barren proposition, that where the basis for the trial court's mistrial order was adequately disclosed on the record, the absence of any explicit finding of "manifest necessity" and the failure to explain the mistrial ruling more completely did not render it constitutionally defective as a violation of Double Jeopardy. 434 U.S. at 497. The United States Supreme Court further explained in <u>Arizona</u>:

> . . . [T]he mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has] long [been] considered the classic basis for a proper mistrial. The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country. Instead, *without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the*

*defendant to submit to a second trial.* This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

434 U.S. at 509 (footnote omitted; emphasis added).

As the government correctly points out, the only reported decision discussing the effect of a violation of Fed.R.Crim.P. 26.3 wherein the record shows manifest necessity for a mistrial is United States v. Berroa, 374 F.3d 1053 (11th Cir. 2004). In Berroa, the Court of Appeals for the Eleventh Circuit announced it was deciding an issue of first impression amongst the United States Circuit Courts of Appeals. The Berroa case held that the District Court's violation of Fed.R.Crim.P. 26.3, requiring that parties have an opportunity to comment prior to declaring a mistrial, was but one factor to be considered in determining whether the trial judge exercised sound discretion in ordering a mistrial, and that, although the district court erred in failing to consult the parties prior to declaring a mistrial, its finding of manifest necessity for the declaration of mistrial was supported on the record and was not an abuse of discretion.

**Conclusion.**

The necessity of denying defendant's motion to dismiss the indictment on Double Jeopardy grounds flows unerringly from his own words: "[T]he defense moves this Court for the discharge of the jury in light of the fact that all jurors confirmed the existence of a hopeless deadlock and that further deliberation would not lead to a unanimous verdict." "Defendant's Objections to Government's Proposed Jury Instructions Regarding Partial Verdict (Document No. 850) and Cross Motion to Discharge the Jury." (doc. no. 852), at 4. Despite defendant's abrupt about-face, the record before the Court establishes that defendant himself insisted that the

Court declare a mistrial, twice, that the jury was hopelessly deadlocked, and that manifest necessity dictated that the jury be discharged.

Accordingly, for all of the foregoing reasons,

Defendant's Motion to Dismiss the Indictment and to Preclude the Government from Further Prosecution in Violation of the Prohibition Against Double Jeopardy (doc. no. 868) is **THEREFORE DENIED.**[5]


**SO ORDERED** this 29th day of April, 2008.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record

---

[5] The Court further finds that, because Defendant's Motion to Dismiss the Indictment and to Preclude the Government from Further Prosecution in Violation of the Prohibition Against Double Jeopardy is frivolous, having no factual support on the record and no legal authority that might plausibly justify dismissal of the indictment on Double Jeopardy grounds, any interlocutory appeal of this Order would not divest this Court of jurisdiction to continue with the pretrial and trial proceedings.  United States v. Leppo, 634 F.2d 101 (3d Cir. 1980) (per Aldisert, J.; holding that appeal from denial of defendant's double jeopardy motion to dismiss did not divest District Court of jurisdiction to proceed with trial where district court found the motion to have been frivolous and supported its conclusions by written findings).