IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 06-0026** |
| | ) | **Electronically Filed** |
| **CYRIL H. WECHT** | ) | |

**ORDER OF COURT DENYING DEFENDANT'S RENEWED
MOTION FOR JUDGMENT OF ACQUITTAL (DOC. NO. 912) AND
DEFENDANT'S MOTION TO DISMISS AND RENEWED
MOTION TO SUPPRESS EVIDENCE (DOC. NO. 920)**

## I. INTRODUCTION

Before the Court are Defendant's Renewed Motion for Judgment of Acquittal (doc. no. 912) and Defendant's Motion to Dismiss and Renewed Motion to Suppress Evidence (doc. no. 920). After careful consideration of Defendant's Renewed Motion for Judgment of Acquittal, Brief in Support and the Government's Brief in Opposition (doc. no. 925), the Court finds that, with one notable exception, said motion merely repackages previously raised and resolved issues, and raises no matters that were not previously considered and decided against him, and that defendant proffers no justification that would warrant a Judgment of Acquittal. The Court will not, therefore, enter a Judgment of Acquittal. The Court's analysis and resolution of Defendant's Renewed Motion for Judgment of Acquittal is dispositive of his Motion to Dismiss and Renewed Motion to Suppress Evidence, which also will be denied.

1

## A. Previous Order Denying Judgment of Acquittal

On March 12, 2008, the Court denied defendant's Motion for Judgment of Acquittal, having considered the issues raised in his Brief in Support of Motion for Judgment of Acquittal (many of which had been previously raised, briefed, addressed and resolved by prior Orders of Court), and the respective briefs in support and in opposition. See Order of Court Denying Defendant's Motion for a Judgment of Acquittal (Doc. No. 815) Pursuant to Fed. R. Crim. P. 29(a) (doc. no. 822). Said Order states as follows:

### ORDER OF COURT DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL (DOC. NO. 815) PURSUANT TO FED. R. CRIM. P. 29(a)

The Court has given careful consideration to Defendant's Motion for a Judgment of Acquittal (doc. no. 815) pursuant to Fed.R.Crim.P. 29(a), Defendants' Brief in Support of Motion for a Judgment of Acquittal (doc. no. 816), and the Government's Brief in Opposition to Defendant's Motion Pursuant to Rule 29 at Docket No. 815 (doc. no. 818), in light of the testimony and documentary evidence produced in 23 days of the government's case-in-chief.

The Court has also reviewed its previous opinions and rulings regarding the elements of the offenses set forth in the Revised Indictment and its Jury Instructions, including but not limited to those set forth at Documents No. 264, 629, 671, 672, 678, 679, 800 and 812.

A motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure may only be granted where the evidence is insufficient to sustain a conviction. United States v. Gonzales, 918 F.2d 1129, 1132 (3d Cir. 1990). "In ruling on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence.'" United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005), quoting United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002). The Court finds that sufficient evidence has been adduced, as to each count of the indictment, upon which a rational trier of fact could find that all of the elements of the respective offenses have been proven beyond a reasonable doubt. Accordingly,

AND NOW, this 12th day of March, 2008, defendant's Motion for a Judgment of Acquittal (doc. no. 815) is DENIED.

Order of Court Denying Defendant's Motion for a Judgment of Acquittal (Doc. No. 815) Pursuant to Fed. R. Crim. P. 29(a) (doc. no. 822).

## B. Pending Renewed Motion for Judgment of Acquittal

In his Brief in Support of Renewed Motion for Judgment of Acquittal, defendant states that he "filed a written 37 page brief [(doc. no. 816)] on March 11, 2008," and expressly "incorporates and restates by reference all of the arguments made in [said] Motion for Judgment of Acquittal and Brief in Support filed on March 11, 2008. (Docs. 815 and 816)."  Brief in Support of Renewed Motion for Judgment of Acquittal (doc. no. 913), at 1, 3.  Although the Court's resolution of the issues raised in defendant's initial motion for Judgment of Acquittal stands as the law of the case, see, e.g., Memorandum and Order of Court Regarding Pending Motions (Docs. No.  524, 527, 535) Relating to Supplemental Suppression Hearing (doc. no. 537, at 18-19), the law of the case doctrine does not strictly limit a federal court's power but, rather, informs the exercise of its discretion.  The doctrine is not inflexible and, in the sound exercise of discretion, may yield for extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice," where new evidence has been discovered, or perhaps where intervening and controlling precedent has been established. *Id*.

The Court will exercise its discretion to reconsider all of the arguments initially made in defendant's Motion for Judgment of Acquittal and Brief in Support (docs. no. 815 and 816), which have been revived and incorporated in the pending Renewed Motion for Judgment of

Acquittal.  Initially, however, the Court will consider the one issue raised in defendant's renewed

motion that is arguably a new issue.

### C.   Alleged Failure to Prove Element of Honest Services Fraud - Deliberate Concealment of Material Fact

The one issue raised in Defendant's Brief in Support of Renewed Motion for Judgment of

Acquittal (doc. no. 913), at 4-8, that arguably was not specifically raised in his initial Brief in

Support of Motion for Judgment of Acquittal (doc. no. 816), is that the government failed to

prove an essential element -- deliberate concealment of a *particular* material fact.  Defendant

argues that the government's own evidence affirmatively established that he did not and could

not have concealed the alleged fraudulent scheme to deprive the citizens of Allegheny County of

their right to his honest services as coroner of Allegheny County.[1]

Defendant's Brief in Support of Renewed Motion for Judgment of Acquittal (doc. no.

913) states the issue as follows:

> Having incorporated and restated by reference the issues raised in his
> previous motion, Dr. Wecht will, in this brief, principally highlight specific and
> more notable failures of proof in addition to those earlier, now-incorporated
> arguments.  Finally, in light of a clear failure of proof which became manifest
> during closing argument after the Court decided the Defendant's Motion for
> Judgment of Acquittal (Doc. 816), [2] the defense first points out below additional

---

[1] To be sure, defendant raised the government's asserted failure to prove deliberate
concealment of a material fact as an element of the honest services fraud charges in his initial
Motion for Judgment of Acquittal, see Brief in Support at 6-17, but did not focus upon the
*particular* factual foundation he now posits as his chief ground for acquittal in his Brief in
Support of Renewed Motion for Judgment of Acquittal, as well as in his Brief in Support of
Motion to Dismiss and Renewed Motion to Suppress Evidence.

[2]  The argument that the government's closing argument was deficient may also be
considered "new" since closing arguments were made subsequent to resolution of the initial
Motion for Judgment of Acquittal, but it has no merit.  As the Court instructed the jury in this
case, as it does in every case, argument of counsel is not evidence, and the jury must follow the

reasons why the Government failed to produce sufficient evidence to support any finding of guilt on Counts 1-27.

## II. JUDGMENT OF ACQUITTAL MUST BE GRANTED ON COUNTS 1-27 BECAUSE NO REASONABLE JUROR COULD FIND THAT THE GOVERNMENT PROVED A MISREPRESENTATION OR CONCEALMENT OF A MATERIAL FACT BEYOND A REASONABLE DOUBT

The Supreme Court unquestionably held in *Neder v. United States*, 527 U.S. 1, 25 (1999), that materiality, defined as the misrepresentation or concealment of a material fact, is a distinct element of mail and wire fraud that must be proven beyond a reasonable doubt in all mail and wire fraud cases. See also, *United States v. Antico*, 275 F.3d 245, 263-64 (3d Cir. 2001). This Court has agreed that *Neder* so held and, notwithstanding that the Court would not separately charge materiality as an element because of its view that the instructions included that concept, there can be no serious issue that it is a distinct element of the crime. . . .

The Government completely failed to prove any misrepresentation or concealment of a material fact by Dr. Wecht as to the honest services mail and wire fraud counts. In fact, all of the evidence proved the opposite, as discussed previously in Doc. 815. Analytically, the Government never even alleged, let alone proved, an affirmative misrepresentation sufficient to support these counts. Thus, to determine if the Government presented sufficient evidence to prove this element of the crime, the issue is whether the Government produced competent evidence of deliberate concealment by Dr. Wecht within the meaning of the mail fraud statutes. In opening statements, the Government promised to prove concealment by two pieces of evidence, specifically (1) the Night Talk segment that was not ultimately admitted into evidence, and (2) the *entirely false, and knowingly false, notion that Dr. Wecht ordered boxes of private files moved from ACCO to his private office in response to the February 12, 2005, article in which District Attorney Stephen Zappala called for a federal investigation (the Zappala article* ). (Ex. A, p. 71) By closing argument, however, the Government completely abandoned any argument that it had proven concealment of any material fact.

---

Court's instructions as to the elements of the charged offenses and determine whether the facts support the elements beyond a reasonable doubt. Defendant cites no authority for the proposition that the government's failure to address an element of an offense in its closing argument is grounds for granting a judgment of acquittal. The government need not address every element of every offense in its closing argument, but obviously, it acts at its peril if it chooses or neglects to do so.

* * *

AUSA Stallings failed on both of his promises to the jury that the Government would discharge its burden of proving the element of concealment. The Court properly excluded the Night Talk video and, in any event, it never was the kind of concealment evidence necessary to sustain a conviction for honest service fraud. (Doc. 792) *More importantly, the Government was not able to prove that the movement of the boxes was in response to the Zappala article.* . . .

Specifically, on April 5, 2005, FBI Agent Bradley Orsini contemporaneously memorialized his interview with Donald Kanai, the man who moved the boxes: On Friday, February 11, 2005, Kanai loaded boxes in his vehicle. [Footnote omitted] This statement, recorded in an FBI 302 by Agent Orsini and SA John Steiner, clearly negates that boxes were moved in response to an article on February 12, 2005. . . .

[I]t had to be established on cross examination of Eileen Young that the moving occurred prior to the Zappala article and that she had consistently told the Government that fact. (Ex. E, p. 110) Moreover, when asked, [s]o this [Zappala] article had absolutely nothing to do with the decision to move those boxes, did it? she responded, No. (Ex. E, p. 115) In fact, she testified she did not even see the February 12, 2005 article until February 13, 2005.

. . . The Government, presumably recognizing its lack of proof as to this element of honest services mail and wire fraud, then made no argument in closing regarding how the Government proved concealment despite the promise it made in its opening. Thus, because the Government failed to prove any fraudulent concealment or misrepresentation whatsoever on the part of Dr. Wecht as required by Neder, Dr. Wecht is entitled to this Court's judgment of acquittal on Counts 1-27. Acquittal is especially appropriate here, since the prosecution knowingly tried to satisfy its burden by the presentation of false evidence -- the epitome of acute prosecutorial misconduct.

Defendant's Brief in Support of Renewed Motion for Judgment of Acquittal (doc. no. 913), at 3-8 (emphasis added).

### D. Defendant's Motion to Dismiss and Renewed Motion to Suppress Evidence

The factual averments and legal analysis set forth in support of defendant's Renewed Motion for a Judgment of Acquittal on the honest services fraud counts also form the foundation

upon which Defendant's Motion to Dismiss and Renewed Motion to Suppress Evidence (doc. no.

920) is built.  The argument is stated more succinctly in Defendant's Brief in Support of Motion

for Dismissal of the Indictment Due to Prosecutorial Misconduct and Renewed Motion to

Suppress Evidence (doc. no. 921) as follows:

> This motion consolidates two arguments of a case dispositive nature due to the commonality of a *central factual pattern* involved in both motions. Regrettably, it is now crystal clear, as a result of Jencks disclosures made shortly before trial and the events at trial, that pretrial proceedings and the trial itself were infected with a deliberate falsification known to the Government for years. Specifically, the Government has known for years that a *central tenet of its case* one essential to the opening search warrants and also an element of the honest services fraud charges leveled at Dr. Wecht was simply false. *That tenet was that Dr. Wecht caused boxes of his private files to be removed from ACCO as an act of concealment following publication of an article on February 12, 2005, in which the district attorney of Allegheny County, Stephen Zappala ( Zappala ) called for a federal investigation. That false tenet was central to the search warrant obtained to search Dr. Wecht's private place of business and central to the materiality element of the honest services charges made against Dr. Wecht.* The falsity of that contention was concealed by the Government for years and during the entirety of prior  suppression hearings established specifically to determine if Special Agent Bradley Orsini ( Orsini ) had, consistent with his past, deliberately falsified evidence. Moreover, as set forth herein, despite knowledge of the falsity of this key allegation, AUSA Stallings overstepped the bounds of proper prosecutorial ethics and zealousness at trial by injecting this false theme into the trial of the case -- one of several acts of prosecutorial misconduct prior to and at trial.

> Accordingly, the defense brings this motion to dismiss the indictment on the authority of <u>Government of Virgin Islands v. Fahie</u>, 419 F.3d 249, 254-255 (3d Cir. 2005), which held that dismissal of an indictment with prejudice is a remedy for Brady violations, Rule 16 violations and is within the trial court's supervisory powers under certain circumstances. Under <u>Fahie</u>, dismissal is appropriate where there has been both prejudice to the defendant and willful misconduct by government agents.  . . .

Defendant's Brief in Support of Motion for Dismissal of the Indictment Due to Prosecutorial

Misconduct, Renewed Motion to Suppress Evidence thereof (doc. no. 921) at 1-2 (emphasis

added).

## II. DEFENDANT'S RENEWED MOTION FOR
## JUDGMENT OF ACQUITTAL (DOC. NO. 912)

### A.    Deliberate Falsification about Movement of Boxes

Defendant's Renewed Motion for Judgment of Acquittal is premised upon an unlikely

inference he gathers from the timing and movement of the boxes from ACCO to Wecht

Pathology which, he emphatically argues, is the only inference one can make from the record

evidence, leading to a strained legal conclusion that the trial was "infected with a deliberate

falsification known to the Government for years," *id*., and that the government has failed to prove

an element of its charges of honest services fraud.  The Court finds that defendant's factual

recitation is inaccurate, the inference he draws therefrom is not a reasonable one, and there is no

evidence that the government falsified anything regarding the movement of boxes in February,

2005 or withheld exculpatory evidence from the suppression hearing or the trial, let alone

deliberately.

### B.    *Neder* Materiality

Defendant's view of the law regarding the elements of honest services fraud and how

"*Neder* materiality" fits into the elements is far too narrow, as this Court has explained on

numerous occasions.  See, e.g., Memorandum Opinion and Order of Court Denying

Supplemental Motion to Dismiss (Doc. No. 540) Honest Services Fraud Counts 1 Through 32 for

Failure to Allege Materiality (doc. no. 557).  That entire discussion is incorporated herein by

reference, but in most relevant part, said Memorandum Opinion and Order states as follows:

> Recently the Court of Appeals for the Third Circuit summarized the
> elements of honest services mail and wire fraud as follows:

8

To prove mail fraud, the government must establish "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails . . . in furtherance of the scheme." *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001). Congress has clarified that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Honest services fraud, in turn, typically occurs in either of two situations: "(1) bribery, where a [public official] was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain." *Antico*, 275 F.3d at 262-63.

*United States v. Kemp*, [500 F.3d 257], 2007 WL 2410132, *15 (3d Cir. 2007).

Of course, materiality is an implicit element of honest services fraud under 18 U.S.C. §§1341, 1343 and 1346, but the failure of an indictment to allege materiality as an explicit element is not fatal to the indictment. . . . *United States v. Sonneberg*, 2003 WL 1798982 (3d Cir. 2003) (upholding conviction for mail and wire fraud on habeas corpus petition; Court of Appeals holds that "duty to disclose is not always a required element of common- law fraud when there has been a material non- disclosure. . . . "[B]oth before and after the *Neder* decision, duty to disclose is not a required element of the common- law fraud offenses when there have been material non-disclosures."), quoting *United States v. Colton*, 231 F.3d 890, 898-900 (4th Cir. 2000) ("Supreme Court [in *Neder*] has recently articulated an outer boundary for the interpretation of the federal fraud statutes," [but nonetheless found that] "at common law, no fiduciary relationship, no statute, no other independent legal duty to disclose is necessary to make active concealment actionable fraud - simple 'good faith' imposes an obligation not to purposefully conceal material facts with intent to deceive."); *United States v. Fernandez*, 282 F.3d 500 (7th Cir. 2002) (. . . "false and fraudulent pretenses, representations, and promises and material omissions" intended to cause victim to lose money and property [right of the public to honest services was not involved in this case, but section 1346 places right of public to honest services on par with money or property] . . . adequately encompassed the *Neder* element of materiality); . . . .

The Court of Appeals in [*United States v. Panarella*, 277 F.3d 678, 696 (3d Cir. 2002)] reiterated that "[h]onest services fraud typically occurs in two scenarios: (1) bribery, where a legislator was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain." *Id.* at 690, quoting *Antico*, 275 F.3d at 262. Like this case, *Panarella* involved the second scenario, the alleged failure to disclose a conflict of interest resulting in personal gain, and the Court of Appeals in *Panarella* posed the question "under

9

what circumstances nondisclosure of a conflict of interest rises to the level of honest services fraud."

Answering that question, the Court of Appeals made it clear that the materiality element of honest services fraud is satisfied where the indictment charges the official with taking "discretionary action that he knows directly benefits a financial interest that the official concealed in violation of state criminal law . . ." *Id.* at 695. Much of what the Court of Appeals stated in *Panarella* bears repeating herein, as it clarifies the materiality element of mail and wire fraud in the honest services context, as follows:

> Rather than limiting honest services fraud to misuse of office for personal gain, we hold that a public official who conceals a financial interest in violation of state criminal law while taking discretionary action that the official knows will directly benefit that interest commits honest services fraud. See *United States v. Woodward*, 149 F.3d 46, 62 (1st Cir. 1998) ("A public official has an affirmative duty to disclose material information to the public employer. When an official fails to disclose a personal interest in a matter over which she has decision-making power, the public is deprived of its right either to disinterested decision making itself or, as the case may be, to full disclosure as to the official's motivation behind an official act." . . .; see also *United States v. Silvano*, 812 F.2d 754, 759 (1st Cir. 1987) ("[A]n employee's breach of a fiduciary duty falls within the strictures of the statute when it encompasses the breach of a duty to disclose material information to the employer.").

> . . . As a doctrinal matter, a public official's nondisclosure of a financial interest while taking discretionary action that the official knows will directly benefit that interest falls squarely within the classical definition of fraud. "*Fraud in its elementary common law sense of deceit . . . includes the deliberate concealment of material information in a setting of fiduciary obligation.*" *United States v. Holzer*, 816 F.2d 304, 307 (7th Cir.1987), vacated and remanded for consideration in light of *McNally*, 484 U.S. 807 (1987); see also *United States v. Dial*, 757 F.2d 163, 168 (7th Cir.1985) ("Fraud in the common law sense of deceit is committed *by deliberately misleading another by words, by acts, or, in some instances - notably where there is a fiduciary relationship, which creates a duty to disclose all material facts - by silence.*"). . .

> Both at common law and under Pennsylvania criminal law, [a public official has] a duty to disclose to the public material information. "*A public official is a fiduciary toward the public, . . . and if he deliberately conceals material information from them he is guilty of*

*fraud.*" *Holzer*, 816 F.2d at 307; see also *United States v. deVegter*, 198 F.3d 1324, 1328 (11th Cir. 1999) ("Public officials inherently owe a fiduciary duty to the public. . . ."); *United States v. Sawyer*, 85 F.3d 713, 733 n. 17 (1st Cir. 1996) ("[T]he obligation to disclose material information inheres in the legislator's general fiduciary duty to the public."). This common law duty to disclose is codified by Pennsylvania statute, which requires public officials to file annual Statements of Financial Interest and criminalizes intentional misrepresentations in these statements. See 65 Pa.C.S.A. §§ 1104(a), 1105 & 1109(b).

\* \* \*

As a matter of policy, we believe this result is justified by the central role of disclosure in a well- functioning representative democracy. *Critical to the health of the electoral process is the voters' ability to judge whether their representatives are acting to further their own financial self-interest instead of the public interest.* As noted in the margin, the requirement under Pennsylvania law that elected representatives disclose their sources of income serves a purpose analogous to that served by federal laws requiring candidates for federal office to disclose the source of their campaign contributions.

*Panarella*, 247 F.3d at 694-97 (emphasis added).

*United States v. Gordon* further clarified the state of honest services fraud in the Third Circuit as set forth in *Antico, Panarella* and *Murphy*, from which it is seen that *the failure to disclose the conflicts of interest prohibited by state and local laws is at the heart of such fraud*, and that discretionary decision making that benefits someone other than the defendant is not required to sustain a conviction, or an indictment. See (doc. no. 264), June 29, 2006 Memorandum Opinion and Order of Court Denying Motion to Dismiss (Doc. No. 180), at 10-16, quoting *United States v. Gordon*, 183 Fed. Appx. 202 (3d Cir. 2006). The essence of honest services fraud is, rather, the "deliberate concealment of material information in a setting of fiduciary obligation . . ." *Gordon*, 183 Fed.Appx. at 210-11, quoting *Panarella*, 277 Fed. 3d at 695; see also *Antico*, 275 F.3d at 262, 264.

Applying those principles (as discussed fully in this Court's previous opinion denying defendant's initial motion to dismiss), *the Indictment sufficiently states facts upon which, if proven, the jury could find (with proper instructions) that defendant's concealment or failure to disclose private gain and/or conflicts of interest prohibited by state and local ethics laws, in a setting of fiduciary obligation, was material.* In particular, materiality of the honest services scheme

> or artifice to defraud herein is more than sufficiently alleged in the text of the
> Indictment by the numerous allegations of substantial amount of private work,
> performed for the personal financial benefit of defendant, using county
> employees, county property, and county resources, over a period of numerous
> years, in violation of state and local laws regarding conflicts of interest, and
> willful concealment or failure to disclose said conflicts of interest. . . . The
> Indictment does not, therefore, "fall beyond the scope of the relevant criminal
> statute, as a matter of statutory interpretation," *Panarella*, 277 F.3d at 685, as the
> mail and wire fraud statutes in the context of honest services fraud have been
> interpreted by the United States Court of Appeals for the Third Circuit in *Gordon*,
> *Antico*, *Panarella* and *Murphy*.

Memorandum Opinion and Order of Court Denying Supplemental Motion to Dismiss (Doc. No.

540) Honest Services Fraud Counts 1 Through 32 for Failure to Allege Materiality (doc. no.

557), at 6-16 (certain emphasis added; numerous additional citations omitted).

Thus, it is not only "deliberate concealment" of the sort urged by defendant in his

Renewed Motion for Judgment of Acquittal (i.e., deliberate concealment of evidence of fraud)

that may satisfy the *Neder* materiality requirement for honest services fraud, as the Court's

instructions to the jury, following the recommendation of the Third Circuit Committee on Model

Criminal Jury Instructions, accurately informed the jury.

### C. Jury Instructions on Materiality

The Final Jury Instructions explained materiality as part of the instruction on "Scheme to

Defraud" as follows:

> MAIL AND WIRE FRAUD AS CHARGED IN COUNTS 1-36
> SCHEME TO DEFRAUD
>
> The first element that the government must prove beyond a reasonable doubt for
> either mail or wire fraud is that Dr. Wecht knowingly devised or wilfully
> participated in a scheme to defraud victims of money or property, or of the
> intangible right of honest services, by materially false or fraudulent pretenses,
> representations or promises.

A "scheme" is merely a plan for accomplishing an object.

"Fraud" is a general term which embraces all the various means by which one person can gain an advantage over another by false representations, suppression of the truth, or deliberate disregard for the truth. Thus, a "scheme to defraud" is any plan, device, or course of action to deprive another of money or property, or of the intangible right of honest services, by means of false or fraudulent pretenses, representations or promises reasonably calculated to deceive persons of average prudence.

The details of and representations which the government charges were made as part of the schemes to defraud are set forth in the indictment, copies of which I have provided to each of you. The government is not required to prove every detail and misrepresentation charged in the indictment. It is sufficient if the government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud. However, you cannot convict the defendant unless all of you agree as to at least one of the material misrepresentations.

A statement, representation, claim or document is false if it is untrue when made and if the person making the statement, representation, claim or document or causing it to be made knew it was untrue at the time it was made. A representation or statement is fraudulent if it was falsely made with the intention to deceive.

In addition, deceitful statements of half truths or the concealment of material facts or the expression of an opinion not honestly entertained may constitute false or fraudulent statements. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance. The deception need not be premised upon spoken or written words alone. If there is deception, the manner in which it is accomplished is immaterial.

The failure to disclose information may constitute a fraudulent representation if the defendant was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure ought to be made, and the defendant failed to make such disclosure with the intent to defraud.

The false or fraudulent representation or failure to disclose must relate to a material fact or matter. A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.

This means that if you find that a particular statement of fact was false, you must determine whether that statement was one that a reasonable person might have

considered important in making his or her decision. The same principle applies to fraudulent half truths or omissions of material facts. In order to establish a scheme to defraud, the government must also prove that the alleged scheme contemplated depriving another of money or property or of the intangible right of honest services. . . .

Final Jury Instructions (doc. no. 842), at 24-25.

The government introduced sufficient evidence upon which the jury could find beyond a reasonable doubt, with appropriate instructions based on the elements of honest services fraud, including *Neder* materiality, that defendant's concealment or failure to disclose private gain and/or conflicts of interest prohibited by state and local ethics laws, in a setting of fiduciary obligation, was material to each count of mail and wire honest services fraud.

### C. The "Central Tenant"

Defendant's factual predicate -- that the "central tenet" of the government's honest services fraud charges "was that Dr. Wecht caused boxes of his private files to be removed from ACCO as an act of concealment" in response to the "publication of an article on February 12, 2005, in which the District Attorney of Allegheny County . . . called for a federal investigation" -- mischaracterizes the government's theory on the honest services fraud counts.

The "central tenant" of the government's honest services fraud counts actually is that defendant devised a scheme or artifice to "(a) obtain money, property, services and other things of value; (b) violate the fiduciary and ethical duties of defendant . . . as Coroner of Allegheny County to Allegheny County and its citizens; and (c) deprive Allegheny County and its citizens of the intangible right to the honest services . . . ."  Revised Indictment (doc. no. 656-2, at ¶ 26.) The movement of boxes from ACCO to Wecht Pathology as "deliberate concealment" was evidence for the jury to consider, but concealment of evidence is not a necessary element of the

offense and it was not charged in the indictment explicitly or implicitly, nor did AUSA Stallings'

opening remarks transform the movement of boxes to Wecht Pathology or the timing thereof a

"central tenant" of the government's case.

### E.    The Indictment

More fully, the Revised Indictment includes the following allegations:

Purpose of the Scheme

26. It was the purpose of the scheme, among other things, to (a) obtain money, property, services and other things of value; (b) violate the fiduciary and ethical duties of defendant CYRIL H. WECHT as Coroner of Allegheny County to Allegheny County and its citizens; and (c) deprive Allegheny County and its citizens of the intangible right to the honest services of defendant CYRIL H. WECHT as Coroner of Allegheny County and other employees of the Allegheny County Coroner's Office.

The Scheme

27. It was part of the scheme that, from 1996 through 2005, the defendant, CYRIL H. WECHT, used the position, authority, and resources of the Allegheny County Coroner's Office to assist with Wecht Pathology's business activities and thus generate income for Wecht Pathology and himself:

g) defendant CYRIL H. WECHT's transportation to and from Pittsburgh International Airport for private business trips was routinely provided by on-duty Deputy Coroners using county-owned vehicles, yet he billed his clients an "airport limousine charge" in connection with these private business trips; Allegheny County paid for the gas and maintenance on the countyowned vehicle used for these trips; nevertheless, defendant CYRIL H. WECHT did not remit the proceeds of his fraudulent "airport limousine charges" to Allegheny County, but retained the proceeds for his own benefit;

28. It was further part of the scheme that when defendant CYRIL H. WECHT traveled for private business, he routinely sought and obtained reimbursement for the costs of his travel from his clients; he routinely asked his clients to make the expense reimbursement checks payable to him personally; he routinely asked that the fee checks be made payable to his business; and he routinely cashed the expense reimbursement checks without depositing the

15

proceeds in his Wecht Pathology account or reporting the reimbursement in the Wecht Pathology books and records. In this manner, he retained the expense reimbursement proceeds for his use as "pocket money," and the expense reimbursement proceeds were concealed from Wecht Pathology's books and records, and thus were also concealed from Wecht Pathology's accountants.

29. It was further part of the scheme that defendant CYRIL H. WECHT routinely submitted false expense reimbursement invoices to his clients. He directed that fake travel agency bills and fake limousine receipts be created to support fraudulent and inflated expense invoices. The travel agency bills were in the name of a defunct travel agency, and they were submitted as support for fraudulently inflated airfare amounts. Defendant submitted the fake limousine receipts to his clients in cases where Deputy Coroners employed by Allegheny County actually provided his transportation in vehicles owned by Allegheny County. The checks defendant CYRIL H. WECHT received as a result of these fake and fraudulent billings were cashed in the manner described in paragraph 28 above, and thereby concealed from Wecht Pathology's books and records, and thus were also concealed from Wecht Pathology's accountants.

* * *

33. It was further part of the scheme that defendant CYRIL H. WECHT did not remit the said mileage reimbursements to Allegheny County, but rather retained the payments for his private financial gain.

34. It was further part of the scheme that defendant CYRIL H. WECHT made false public statements to conceal his use of the position, authority, and resources of the Allegheny County Coroner's Office for his own financial benefit, including . . . false statements made on the television program "Night Talk" on or about February 17, 2005 . . . :

Revised Indictment (doc. no. 656-2).

These paragraphs delineating the manner and means by which the alleged fraud was perpetrated make allegations of misrepresentations, concealment or failure to disclose conflicts of interest arising from defendant's fiduciary duties to the citizens of Allegheny County. The government adduced sufficient evidence upon which a reasonable jury could have found that the government met its burden of proving these allegations of material misrepresentations,

concealment or failure to disclose conflicts of interest arising from defendant's fiduciary duties, beyond a reasonable doubt.

The movement and timing of the movement of boxes to Wecht Pathology may have had evidentiary value for the finder of fact to consider, but this matter was not even *charged* in the indictment, much less made a "central tenant" thereof. The February 12, 2005 article about the Zappala probe has no direct bearing on the elements of the offenses charged in the indictment, and the "failure" of the government to establish that the boxes were moved as a result of the February 12th article is of no moment to the Court's determination of the sufficiency of the evidence to sustain the honest services fraud charges.

### F.    The Search Warrant and Affidavit

As to defendant's claim that the "false tenet was central to the search warrant obtained to search Dr. Wecht's private place of business," Defendant's Brief in Support of Motion for Dismissal of the Indictment Due to Prosecutorial Misconduct, Renewed Motion to Suppress Evidence thereof (doc. no. 921) at 2, the affidavits supporting the search for the Penn Avenue offices of Wecht Pathology do not rely, as defendant insists, on "the entirely false, and knowingly false, notion that Dr. Wecht ordered boxes of private files moved from ACCO to his private office in response to the February 12, 2005, article in which District Attorney Stephen Zappala called for a federal investigation (the Zappala article ). (Ex. A, p. 71)." Defendant's Brief in Support of Renewed Motion for Judgment of Acquittal (doc. no. 913), at 4-5.

Attachment "B" to the search warrant for "boxes" at Wecht Pathology identifies the "Property to be Seized" as "Boxes (approximately twenty) and contents containing private autopsy files," and the Orsini affidavit of probable cause accompanying the application with

regard to the averments that defendant attempted to conceal or remove evidence offers the following two paragraphs:

9. Attempted Concealment and Removal of Evidence.

19. *In early February of 2005, a criminal probe* of WECHT's use of county resources for private work *became public.* According to ACCO 11, sometime during the week of February 6, 2005, [Eileen] Young asked ACCO 11 to obtain boxes for the purpose of moving large numbers of files from her office at the ACCO. ACCO 11 provided Young with boxes into which Young loaded files reflecting WECHT's private autopsy work. ACCO 11 moved those boxes from the ACCO to WECHT's private pathology office at 1119 Penn Avenue, suite 4001, Pittsburgh, Pennsylvania after business hours. Flo Johnson provided the key to the space at 1119 Penn Avenue into which ACCO 11 helped move the boxes. WECHT's wife told ACCO 11 where the boxes were to be placed within the office space at 1119 Penn Avenue. According to ACCO 11, the boxes were placed in a records room on the right-hand side of the office suite's hallway.

20. According to ACCO 11, Young was very rushed and upset about having to move the boxes quickly. According to ACCO 11, the materials he helped move consisted of approximately 20 boxes of files reflecting private autopsy work for the financial benefit of WECHT. The boxes are labeled on the outside with computer printed labels identifying the names of the decedents.

\* \* \*

## Items to be Seized

24. This application seeks issuance of warrant to seize approximately twenty boxes of private autopsy files located at the office of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B".

32. [there is a numerical gap here, and paragraph 32 immediately follows paragraph 24 in this affidavit]. Based upon the foregoing information, there is probable cause to believe that in the premises described in Attachment "A", there are approximately twenty boxes of private autopsy files located at the offices of Dr. Cyril H. Wecht Pathology and Associates, 1119 Penn Avenue, Ste. 4001, Pittsburgh, Pennsylvania, as described in Attachment "B" related to the above described evidence, which are fruits, instruments and evidence of the crimes of Embezzlement and Theft, in violation of Title 18, United States Code, Section 66, and a Scheme to Defraud of Intangible Right to Honest Services, in violation of Title 18, United States Code, Section 1341, 1343, and 1346.

Application and Affidavit for Search Warrant, attached to Motion to Suppress (doc. no. 55), at 8-10 (emphasis added).

The affidavit of probable cause neither states nor implies that the boxes were moved "as an act of concealment following publication of an article on February 12, 2005, in which the district attorney of Allegheny County . . . called for a federal investigation," and as a result thereof, which "false tenet was central to the search warrant" for Wecht Pathology. Defendant's Brief in Support of Motion for Dismissal of the Indictment Due to Prosecutorial Misconduct, Renewed Motion to Suppress Evidence thereof (doc. no. 921) at 1-2. Because the affidavit makes the much different statement that a criminal probe of the defendant's use of county resources "became public" in early February 2005, defendant's premise is fundamentally flawed.

### G. The Article

The Pittsburgh Post-Gazette article of February 12, 2005, "Zappala probing payment to Wecht" (hereafter "the Article") (see Attachment 1), does however, necessarily support Orsini's assertion in the affidavit that a criminal probe of defendant's alleged use of county resources for private work became public in early February of 2005, sometime *prior to* publication of the Article.[3] The Article strongly suggests that the District Attorney's investigation of the defendant had been "public" for days or weeks prior to its publication, and contains within it the *certainty* that the public (and the defendant) were aware of the investigation by February 11, 2005, the

---

[3] In its Brief in Opposition to the Renewed Motion for Judgment of Acquittal, the government offers another article dated February 11, 2008, to show that there was public knowledge of the investigation prior to February 12th. Defendant challenges the government's reliance on an article which, he asserts, is not part of the record before the Court. The Court disregards the government's article of February 11th in its resolution of the Renewed Motion for Judgment of Acquittal, as the dispute over whether or not it is of record is immaterial.

undisputed date that the boxes were actually moved.

The Article stated that the District Attorney announced "yesterday" (i.e., February 11, 2005) that "the coroner is using his public office for personal, pecuniary gain," and that "the DA's investigation" was triggered by defendant's expert report as to the cause of death in a civil lawsuit. Plaintiffs' lawyer who privately hired defendant in that case was quoted in the Article, and said he had been subpoenaed in January by the District Attorney's office but saw no conflict of interest in defendant's participation as an expert. The Article also indicated that in "recent days," forensic accountants for the District Attorney had contacted other counties that hire the defendant privately to perform autopsies. Defendant's clients therefore knew of the investigation for some time prior to the Article's publication, and it is logical and reasonable to infer that defendant was advised by his clients of the investigation, although that is only a plausible inference, not a necessary one.

The Article also stated that the investigation came "during a time of public turmoil between the district attorney and Wecht" and that judicial proceedings regarding this public conflict between public officials had been taking place in the Court of Common Pleas of Allegheny County, including a hearing on February 11, 2005 before a Judge of that Court.

Defendant was interviewed on February 11, 2005, according to the Article, and stated emphatically that "[n]o county resources or county time are used at all. The only county people are people who do things on their own time . . . . Not one single test is done at the Allegheny County coroner's office. . . . Zero, zero, zero, zero."

It is certainly a reasonable inference to draw that, if defendant's clients knew in January and early February of 2005, the "public" and defendant himself knew of the investigation, and

the Article referred to the "time of public turmoil" between the public officials, including

proceedings in open, public court. The compelling inference that arises from the above passages

is that the public -- and the defendant -- had been aware for days, if not weeks, of the existence

and the nature of the Zappala investigation.

The Article leaves no doubt, however, that the public -- and defendant -- knew about the

District Attorney's investigation *no later than* February 11, 2005, i.e., the day the boxes were

moved. That is *entirely consistent* with the Orsini affidavit and with Don Kanai's FBI 302s and

his grand jury testimony, as well as Eileen Young's.

Defendant's claim that the government has "for years" relied on and promulgated the

"knowingly false notion" that defendant ordered boxes of private files moved from ACCO to

Wecht Pathology offices "*in response to* the February 12, 2005, article" is simply not supported

on the record. To the contrary, the Article upon which defendant relies to show prosecutorial

misconduct and grounds for acquittal, dismissal and suppression of the boxes instead shows that

the public and defendant were aware no later than February 11, 2005, the date the boxes were

moved, and most likely were aware days or weeks earlier than that, of the District Attorney's

investigation. The Article offered by defendant actually supports, therefore, the statement in the

affidavit of probable cause that in early February of 2005, a criminal probe of defendant's use of

county resources for private work "became public."

Based on all of the foregoing, the Court rejects defendant's argument that the government

failed to prove an essential element of the honest services fraud counts (deliberate concealment)

when it failed to prove that boxes were moved from ACCO to Wecht Pathology in response to

the Article of February 12, 2005.

## H.      Issues Previously Raised in Initial Motion for a Judgment of Acquittal

As to the numerous other issues raised in defendant's Brief in Support of Renewed Motion for Judgment of Acquittal, the Court has reconsidered them in light of the evidence adduced at trial, and finds that said motion repackages previously raised and resolved issues, and raises no matters that were not previously considered and decided against him. While defendant embellishes some of the issues with a few additional inferences and particulars, the issues raised therein were in fact considered and rejected by the Court on March 12, 2008, when the Court found "that sufficient evidence has been adduced, as to each count of the indictment, upon which a rational trier of fact could find that all of the elements of the respective offenses have been proven beyond a reasonable doubt."  Order of Court Denying Defendant's 815 Motion for a Judgment of Acquittal Pursuant to Fed. R. Crim. p. 29(a), March 12, 2008 (doc. no. 822), at 1-2.

Defendant's arguments for Judgment of Acquittal rely on his narrow interpretations of the law, and the inferences and characterizations he somehow gleans from the government's evidence which are not supported by the record.  Viewed in the light most favorable to the prosecution, as the Court must view the record on a Rule 29 Motion for Judgment of Acquittal, the Court finds that a rational trier of fact could have found proof of guilt beyond a reasonable doubt on all of the charges, based on the available evidence.

Obviously, the jury did not unanimously agree that the government proved beyond a reasonable doubt all of the elements of any of the counts of the indictment.  Just as obviously, the jury did not unanimously agree that the government did not prove beyond a reasonable doubt all of the elements of any of the counts of the indictment.  The jury was unable to unanimously agree that the government had not proven the elements of any of the offenses charged, and this Court is

unable to state that the evidence was insufficient, as a matter of law, to sustain the government's burden of proof.

For all of the foregoing reasons, Defendant's Renewed Motion for Judgment of Acquittal (doc. no. 912) is DENIED.

### III. DEFENDANT'S MOTION TO DISMISS AND RENEWED MOTION TO SUPPRESS EVIDENCE (DOC. NO. 920)

Because defendant's "central tenant" argument also undergirds Defendants' Motion to Dismiss and Renewed Motion to Suppress Evidence (doc. no. 920), the motion to dismiss and to suppress must be denied for the same reasons the Court rejected that argument in denying the Renewed Motion for Judgment of Acquittal. Any evidence showing that the boxes were moved on February 11, 2005, does not contradict the government's case, does not call into question the veracity of the affidavit or this Court's rulings that the affidavits were supported by probable cause, and is not exculpatory Brady evidence.

Defendant's Motion to Dismiss and Renewed Motion to Suppress Evidence (doc. no. 920) is therefore DENIED.

### IV. MISCELLANEOUS

Defendant filed a Motion for Oral Argument (doc. no. 961) seeking oral argument to place before the Court issues relating to defendant's Renewed Motion for Judgment on Acquittal (doc. no. 912) "to fully advise the Court of the unique Double Jeopardy issues associated with" that Motion. See Defendant's Brief in Support of Motion for Oral Argument (doc. no. 962) at 1. The Court declined to allow oral argument, but entered an Order stating: "Since defendant believes these issues require 'resolution of important questions regarding the elements of the

offense, and an examination of the Government's theory of the case,' *id.* at 4, presumably not previously advanced by defendant in the extensive prior motion and briefing process, the Court believes that this matter should be addressed in writing by the parties on supplemental briefs. Since the Court will place no page limit on these supplemental briefs, oral argument will not be necessary." Order of Court Granting in Part and Denying in Part Defendant's Motion for Oral Argument (Doc. No. 961) on Renewed Motion for Judgment of Acquittal (Doc. No. 912).

On May 15, 2008, defendant filed a Notice (doc. no. 965) stating his intention not to file a brief to address these "unique Double Jeopardy issues." Defendant's Notice states that the previously unstated, real reason for requesting oral argument was so that the "the problems with the Government's case could be addressed in principled fashion, and that the Court might even require the Government to state on the record where it adduced evidence to satisfy its burden of proving each element of each crime in response to the issues raised by the defense." Notice (doc. no. 965) at 2.

Defendant certainly was capable of addressing the "problems with the Government's case in principled fashion" by means of a supplemental brief without page restrictions, but chose not to do so. Accordingly, the "unique Double Jeopardy issues" to which he alluded have now been abandoned.


**SO ORDERED** this 23rd day of May, 2008.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record

24